```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK

----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :   23-CR-146 (DG)
        v.                  :
                            :   June 13, 2023
NICOLE DAEDONE,              :
                            :   Brooklyn, New York
            Defendant.       :
                            :
----------------------------X


       TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
           BEFORE THE HONORABLE LOIS BLOOM
           UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:         BREON PEACE, ESQ.
                            U.S. ATTORNEY
                            BY: GILLIAN KASSNER, ESQ.
                            ASSISTANT U.S. ATTORNEY
                            271 Cadman Plaza East
                            Brooklyn, New York  11201


For the Defendant:          JULIA GATTO, ESQ.
                            Steptoe & Johnson
                            1114 Avenue of the Americas
                            New York, NY 10036




Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            274 Hovey Road
                            Milo, ME 04463
                            Aria@leinen.net



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1          THE CLERK:  Criminal cause for arraignment

2   on an indictment, U.S.A. v. Nicole Daedone, case number

3   23-CR-146.

4          Counsel, state your names for the record.

5   For the government?

6          MS. KASSNER:  Good afternoon, your Honor.

7   Gillian Kassner for the United States.  I'm joined by

8   paralegal specialist Anna November.

9          THE COURT:  Thank you.

10         THE CLERK:  Appearing for Ms. Daedone?

11         MS. GATTO:  Good afternoon, your Honor.

12   Steptoe & Johnson by Julia Gatto and Reid Weingarten

13   for Ms. Daedone.

14         THE CLERK:  Thank you.

15         THE COURT:  Good afternoon, Ms. Daedone.

16         THE DEFENDANT:  Hello.

17         THE COURT:  The purpose of today's

18   proceeding is to make sure that you understand that the

19   grand jury has returned an indictment against you, to

20   make sure that you understand the charges in the

21   indictment, and to make sure that you know that you

22   have certain constitutional rights.

23         First, you have the right to be represented

24   by an attorney at today's proceeding and at all future

25   proceedings.  And if you're unable to afford counsel,

1  you may make an application to the Court.  You have

2  hired your lawyers.  You're entitled to counsel of your

3  choice, so I'm just advising you that you have the

4  right to counsel.

5            You have the right to remain silent.  If

6  you've started to make a statement, you may stop.  Any

7  statement you make to anyone other than your attorneys

8  can be used against you.

9            Do you understand you have the right to

10  counsel and the right to remain silent?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Have you had the chance to

13  review the indictment with your attorneys?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Do you understand the charges

16  that are being made against you?

17            THE DEFENDANT:  Yes.

18            THE COURT:  Ms. Gatto, have you had the

19  chance to review the indictment with your client?

20            MS. GATTO:  Yes, your Honor, and we'd waive

21  its public reading.

22            THE COURT:  Okay.  I was going to ask, do

23  you believe she understands the charges?

24            MS. GATTO:  Yes, your Honor.

25            THE COURT:  And have you advised her of her

1  constitutional rights?

2          MS. GATTO:  We have, your Honor.

3          THE COURT:  Now I'll ask, do you want me to

4  read the indictment out loud?

5          MS. GATTO:  No, your Honor.

6          THE COURT:  Is your client prepared to enter

7  a plea?  You're not done yet.  You should stay

8  standing.

9          MS. GATTO:  She is, your Honor.

10          THE COURT:  And the plea is?

11          MS. GATTO:  Not guilty.

12          THE COURT:  Not guilty pleas shall be

13  entered on behalf of Nicole Daedone to the charges in

14  the indictment.

15          What is the government's position with

16  respect to detention or bail?

17          MS. KASSNER:  Your Honor, the parties have

18  agreed to a proposed list of conditions pursuant to

19  which the defendant would be released today on bond.

20          THE COURT:  Let the record first reflect

21  that the government did file a memo, which I'm just

22  making sure counsel has received, a memo regarding

23  detention.

24          MS. GATTO:  We saw the letter, your Honor,

25  and it proposes bail conditions within it.

```
1              THE COURT:  Yes.  So I believe the consent

2    to the order that you're proposing incorporates all of

3    those conditions.  Is that correct?

4              MS. KASSNER:  Yes, your Honor, with slight

5    modifications to the language contained in the memo.

6    In addition to the standard conditions of release, and

7    this is reflected in the bond, there would be a one-

8    million-dollar bond secured with property that's listed

9    in the bond, a signature of two sureties, who I believe

10   are on the phone --

11             THE COURT:  And there's one more who owns

12   property who is in the courtroom.

13             MS. KASSNER:  That's correct, your Honor.

14             THE COURT:  And that is Marcus Ratnathicam.

15   I'm sorry if I'm mispronouncing your name, sir.  Since

16   you're the only one that's in the courtroom, I'll ask

17   you to come to this podium.  You just push the doors in

18   the middle forward, and just stand there.  We're going

19   to get everybody sworn in a moment, sir.  How do you

20   pronounce your last name?

21             MR. RATNATHICAM:  You did it right,

22   Ratnathicam.

23             THE COURT:  Okay.  I didn't put the accents

24   in the right places.  Thank you for that.  Okay, thank

25   you.
```

1          And?

2          MS. KASSNER:  A travel restriction limiting

3   the defendant's travel to New York City and the

4   Northern District of California, a no-contact provision

5   providing that the defendant shall not have contact

6   with her codefendant, known coconspirators, or any

7   known alleged victims of the offenses charged in the

8   indictment outside of the presence of her attorneys.

9   In the event that there's confusion regarding whether

10  somebody falls into these categories, the defendant

11  shall seek permission from her Pretrial Services

12  officer to have contact with that individual.  The

13  defendant will also refrain from speaking about any

14  person's potential testimony in this pending criminal

15  case with any current or former employee, contractor,

16  consultant, or member of One Taste, Inc., except in the

17  presence of counsel.

18          THE COURT:  So I'm going to go through all

19  the conditions but can we first find out who's on the

20  phone?  I believe it's Ms. Daedone's mom and partner,

21  is that correct?

22          THE CLERK:  Ms. Beverly Daedone, Judge Bloom

23  is addressing the suretors on the phone right now.

24          THE COURT:  You have to take yourself off of

25  mute, ma'am.

```
 1              MS. DAEDONE:  Hello?

 2              THE CLERK:  Is this Ms. Beverly Daedone?

 3              MS. DAEDONE:  Yes.

 4              THE CLERK:  Okay.  And what about Mr. David

 5    Ephron, is he on the phone?

 6              MS. DAEDONE:  He's right here.

 7              THE CLERK:  Okay.  So Judge Bloom --

 8              THE COURT:  I'm going to ask my deputy to

 9    swear all three of the suretors in.  Mr. Ephron, Ms.

10    Daedone, I don't see you.

11              Mr. Ratnathicam, I can see you.  Please

12    raise your right hand and my deputy will swear you to

13    the truth of your testimony.

14              (Suretors are sworn.)

15              THE COURT:  So as you've heard, Ms. Daedone

16    has been indicted in this Court on a serious federal

17    charge.  And in order for her to be released pending

18    her trial on these charges, she's asked you to come

19    forward.

20              Ms. Daedone and Mr. Ephron, you're appearing

21    by telephone.  Mr. Ratnathicam is appearing in court.

22    And it's my job to make sure that you understand the

23    conditions of the bond.  So even though the U.S.

24    Attorney read some of the conditions into the record,

25    I'm saying this for the benefit of the suretors but
```

1  most important for Ms. Daedone.

2          These are the conditions under which the

3  Court will allow you to remain at liberty pending your

4  trial on these charges.  You must appear in court as

5  required and surrender as directed for service of any

6  sentence imposed.  You must not commit a federal,

7  state, or local crime while on release.  You must

8  cooperate in the collection of DNA sample if it's

9  authorized by law.  You must advise the Court in

10  writing before making any change in your residence or

11  telephone number.  You must not possess a firearm,

12  destructive device, or other dangerous weapon.  You

13  must not use or unlawfully possess a narcotic drug or

14  other controlled substance unless it is prescribed by a

15  medical doctor.  Marijuana is still prohibited under

16  federal law.

17          Ms. Daedone, do you understand all of those

18  conditions and will you comply with all of those

19  conditions?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Continuing down the list, you

22  must submit to pretrial supervision and report to

23  Pretrial as directed.  If they tell you that you have

24  to call, you have to call.  If they tell you to come in

25  person, you come in person.  I believe that we're going

1  to contact the Northern District of California.

2          Is that correct, Pretrial, to supervise, or

3  is she going to remain in New York?

4          MS. GATTO:  Your Honor, she's going to

5  reside in New York while the case is pending.

6          THE COURT:  So why do we have that she can

7  travel between the Northern District of California and

8  New York City?

9          MS. GATTO:  Her family is there, your Honor,

10  the mother on the telephone, and she also has

11  conceptions there.

12          THE COURT:  I know, but they can come visit

13  her just as easily as she can go visit them.

14          MS. GATTO:  Your Honor, also, a large

15  subject matter of the case is in California and I can

16  see us going frequently as a group, as part of the

17  legal defense.

18          THE COURT:  Well, it's already been agreed

19  to.  I'm just inquiring what the specifics are.  So she

20  will be supervised here?

21          MS. GATTO:  Yes.

22          THE COURT:  Is this going to be handed off

23  to the Southern District, may I ask, do we know?

24          PRETRIAL SERVICES:  Pretrial Services in the

25  Eastern District will probably supervise the case.

```
1              THE COURT:  Thank you.

2              So you're subject to random home contacts

3    and verification of employment as deemed appropriate to

4    monitor compliance with the conditions of release, and

5    you shall notify Pretrial of any arrest.  I don't

6    expect there to be one but if there is one, you must

7    immediately notify them.  Pretrial Services is not law

8    enforcement, it's an arm of the Court.  When somebody

9    is released on pretrial before the charges against them

10   have been adjudicated, it's Pretrial's job to make sure

11   that the person comes back to court and abides by the

12   conditions.

13             You must surrender any passport to Pretrial.

14   Do you have your passport, Ms. Daedone?

15             THE DEFENDANT:  I do.

16             THE COURT:  Okay.  We're going to surrender

17   it today, Ms. Gatto?

18             MS. GATTO:  Yes, your Honor, after the court

19   proceedings.

20             THE COURT:  Okay, so I'm going to write in

21   today's date, and it's held by Pretrial.  They will

22   give you a receipt for it, and you won't apply for any

23   other international travel document.

24             You are prohibited from traveling except

25   between New York City and the Northen District of
```

1  California.  New York City does include the Eastern

2  District and includes the five boroughs.  Is there any

3  reason why you need to go beyond the five boroughs?

4          THE DEFENDANT:  No.

5          THE COURT:  You should not have any contact

6  with any codefendant, coconspirators, or victim, except

7  in the presence of counsel.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  You must maintain your residence

11  at a location approved by Pretrial.  I'm not putting

12  anything on the record but Pretrial must know where you

13  reside.  But in order to protect your privacy, we won't

14  put that on the record today.

15          THE DEFENDANT:  Okay.

16          THE COURT:  You must refrain from speaking

17  about any person's potential testimony in this pending

18  case with any current or former employees, contractors,

19  consultants, or members of One Taste, except in the

20  presence of counsel.

21          Do you understand that?

22          THE COURT:  And that you shall not attempt

23  to obstruct the prosecution or retaliate against

24  witnesses, causing, encouraging, or prompting anyone

25  else to do so on your behalf.

1                    Do you understand that?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  What I like to tell people, Ms.

4     Daedone, who are in your unfortunate circumstance is

5     that you are under a microscope.  So you should assume

6     that you're being watched and you should make sure that

7     the only people you're talking to about your case are

8     your counsel.

9                    THE DEFENDANT:  Okay.

10                    THE COURT:  I think you would agree with me,

11    counselors, right?  Okay.

12                    Mr. Ratnathicam, how do you know Ms.

13    Daedone?

14                    MR. RATNATHICAM:  She's my friend.

15                    THE COURT:  How long have you known her?

16                    MR. RATNATHICAM:  Thirteen years.

17                    THE COURT:  What do you do for a living,

18    sir?

19                    MR. RATNATHICAM:  I work for a nonprofit in

20    book publishing.

21                    THE COURT:  What's the name of the company?

22                    MR. RATNATHICAM:  The name of the nonprofit

23    is Unconditional Freedom.

24                    THE COURT:  How much did you earn

25    approximately last year?

1              MR. RATNATHICAM:  I volunteer.

2              THE COURT:  Okay, so what is your source of

3    income because I understand you're putting up a

4    property as part of this one-million-dollar bail

5    package.

6              MR. RATNATHICAM:  The property generates

7    rental income.

8              THE COURT:  I understand but one, where is

9    the property, how did you come to own it?  You're

10   volunteering for a nonprofit.  Give me a little more

11   information.

12             MR. RATNATHICAM:  Oh, sure.  I inherited a

13   sum of money around -- in the last 48 months.  I

14   purchased the property with that money.  Sorry, what

15   was your last question?

16             THE COURT:  And the property is the 29 100

17   Camp 2 Ten Mile Road in Philo, California?

18             MR. RATNATHICAM:  Correction, Fort Bragg,

19   California.

20             THE COURT:  It's called Fort Bragg, not

21   Philo, California?

22             MR. RATNATHICAM:  Correct.  So Fort, and

23   then Bragg is B-r-a-g-g.

24             THE COURT:  So Fort Bragg, California.

25             MR. RATNATHICAM:  Correct.

1           THE COURT:  What kind of property is this?

2           MR. RATNATHICAM:  Residential property.

3           THE COURT:  Is that where you live?

4           MR. RATNATHICAM:  Part time.

5           THE COURT:  When you say you purchased the

6    property, what was the value of the property when you

7    purchased it?

8           MR. RATNATHICAM:  Just over two million

9    dollars.

10          THE COURT:  How much equity do you have in

11   the property?

12          MR. RATNATHICAM:  Approximately one and a

13   half million dollars.

14          THE COURT:  Thank you.  You understand that

15   you're going to have to post that property as part of

16   this bail package.

17          MR. RATNATHICAM:  I understand.

18          THE COURT:  I take it that you will take

19   care of the details of getting the property posted.  Is

20   that right, Ms. Gatto?

21          MS. GATTO:  Yes, your Honor.  I think we

22   agreed to a week for the posting of the property, but

23   yes.

24          THE COURT:  In New York, it's called a

25   confession of judgment.  I'm not exactly sure what they

1    call it in California, but you'll take care of getting

2    that posted and making sure the U.S. Attorney has the

3    documents.

4              MS. GATTO:  Yes, your Honor.

5              THE COURT:  Okay, thank you so much.

6              I'm going to move on.  I'm not trying to

7    disrespect you.  Stay in your place, okay?

8              MR. RATNATHICAM:  Okay, thank you.

9              THE COURT:  Ms. Daedone, I take it that you

10   are the mom of Nicole Daedone.

11             MS. BEVERLY DAEDONE:  Yes, I am.

12             THE COURT:  So I'm not going to ask how long

13   you've known her.  Do you work outside the home?

14             MS. BEVERLY DAEDONE:  No, I'm retired.

15             THE COURT:  And what did you do before you

16   retired?

17             MS. BEVERLY DAEDONE:  I managed an insurance

18   office in San Diego.

19             THE COURT:  And you currently live in San

20   Diego at the same address as Mr. Ephron.

21             MS. BEVERLY DAEDONE:  Yes, I do.

22             THE COURT:  Mr. Ephron, I take it that you

23   are Ms. Daedone's partner?

24             MR. EPHRON:  Yes, I am.

25             THE COURT:  Okay.  Do you work outside the

1   home, sir?

2            MR. EPHRON:  Yes, I do.

3            THE COURT:  And what do you do?

4            MR. EPHRON:  I'm an arborist and I work for

5   One Tripp, T-r-i-p-p Tree Service.

6            THE COURT:  Okay.  And what did you -- what

7   was your earnings approximately last year?

8            MR. EPHRON:  $45,000.

9            THE COURT:  I'm asking these questions

10  because it's my obligation to make sure that all of you

11  know, by signing this bond, you are committing to the

12  United States that if for any reason Ms. Daedone does

13  not live up to her obligations, the United States will

14  be able to go after you in any order, in any

15  combination to get the full amount, the one million

16  dollars that this bond is for, and it will be secured

17  by your property.  However, they can go after you in

18  any combination.

19          So, Mr. Ephron, for whatever reason, they

20  could go after your bank account first to satisfy this.

21  And if they don't get what they need from your bank

22  account -- I don't know who has a million dollars in a

23  bank account.  But if they don't get it, then they can

24  turn to your -- the other suretors, Ms. Daedone, Ms.

25  Beverly Daedone, and Mr. Ratnathicam.

1          So I just need to make sure that you all

2     understand that all of the conditions of release that

3     I've read into the record are the conditions.  Your

4     part in this is, one, that you are guaranteeing this

5     one-million-dollar payment should Ms. Daedone not come

6     back when she's directed to.

7          But also, especially for you, Ms. Beverly

8     Daedone, I believe that they want you on the bond

9     because you're her mother and you have moral influence

10    over her.

11         Again, I'm sorry to all of you for the

12    circumstances that bring you before the Court today but

13    it's my job to make sure that you understand the

14    conditions of the bond.

15         Ms. Beverly Daedone, you've heard everything

16    I've said.  You understand it's a million-dollar-bond.

17    Do you agree to be a suretor on this bond for Ms.

18    Nicole Daedone?

19         MS. BEVERLY DAEDONE:  Yes, I do.

20         THE COURT:  And do you authorize me to sign

21    your name to this bond as if you were physically

22    present in the courtroom?

23         MS. BEVERLY DAEDONE:  Yes.

24         THE COURT:  Mr. Ephron, same questions.  Do

25    you want to be a suretor on this bond for Nicole

1   Daedone?

2          MR. EPHRON:  Yes, I do.

3          THE COURT:  And do you authorize me to sign

4   your name to the bond as if you were physically present

5   in the courtroom?

6          MR. EPHRON:  Yes.

7          THE COURT:  Mr. Ratnathicam, you are here

8   today so I'm going to ask that you sign the bond.  I'm

9   going to have my deputy bring it to you.  Thank you,

10  you may be seated, sir.  Thank you very much.

11         MR. RATNATHICAM:  Thank you, your Honor.

12         THE CLERK:  Judge, he signed on the second

13  page.

14         THE COURT:  Thank you very much.

15         Ms. Daedone and Mr. Ephron, I have signed

16  and indicated that you've given me authority to sign on

17  your behalf, and it's all dated today, June 13th.  And

18  I've taken Mr. Ratnathicam's signature, so you may put

19  your phone back on mute.

20         Now turning to you, Ms. Daedone.  You've

21  heard that your mom, her partner, and Mr. Ratnathicam

22  have signed the bond.  I'm required by law to give you

23  the following bail warnings:

24         If for any reason you do not come back to

25  court when the Court directs you to do so, there will

```
 1   be agents sent to find you.  You'll be placed under
 2   arrest, you'll be brought back to the courthouse, and
 3   the likelihood is you will not be released again
 4   pending your trial on these charges.  But in addition,
 5   there's a separate federal charge called bail jumping.
 6   Bail jumping is punishable by up to ten years in
 7   prison.  So even if you're never convicted of the crime
 8   for which you stand accused today, you can be convicted
 9   of bail jumping.  Last, if you commit any other crime
10   while you're released on bail, they can enhance the
11   penalty for the crime you commit because that crime was
12   committed while you were out on bail.
13            Do you understand those bail warnings?
14            THE DEFENDANT:  I do.
15            THE COURT:  And will you come back to court
16   whenever you're directed to do so?
17            THE DEFENDANT:  I will.
18            THE COURT:  And will you abide by all of the
19   other conditions that have been set forth on the
20   record?
21            THE DEFENDANT:  I will.
22            THE COURT:  Then I'll ask -- Pretrial, can I
23   ask you to hand this over to Ms. Daedone for her to
24   sign?  Thank you very much.  And if you could just show
25   her where she will sign or, Ms. Gatto, if you could do
```

1    that, thank you.  Thank you very much.

2              I have been presented with an application

3    and order excluding the time between today and June 21st

4    from the computation of the time period within which a

5    trial on the charges against Ms. Daedone must commence.

6              First, I'm going to ask the government, what

7    is the basis for the application?

8              MS. KASSNER:  Your Honor, it's the

9    government's position that an order of excludable delay

10   is in the interests of justice.  It, among other

11   things, will allow the parties to execute a protective

12   order and exchange discovery so that they can attempt

13   to resolve the case short of trial.

14             THE COURT:  First, what is the significance

15   of June 21st?

16             MS. KASSNER:  June 21st is the date that

17   Judge Gujarati has scheduled an initial status

18   conference in this matter at 10:00.

19             THE COURT:  Has Judge Gujarati given you the

20   authority to make this application to exclude the time

21   from me?

22             MS. KASSNER:  Yes, your Honor.

23             THE COURT:  Thank you.

24             Ms. Gatto, you heard what the government

25   said, that they want this time to exchange discovery,

1  get a protective order, and I imagine to start talking

2  about whether there's any way that they can dispose of

3  the case without a trial.  Do you concur in this

4  application?

5          MS. GATTO:  Yes.  On that basis, we have no

6  objection.

7          THE COURT:  Let me just make sure.  Ms.

8  Daedone, again, this is your case and you control this.

9  But, again, you rely on your lawyers.  So I'm confident

10 that you've spoken to your lawyers about this but I

11 need to make sure for myself that you understand the

12 nature of the application and its consequences.

13          So permit me to inform you that the

14 government has 70 days from the date that you're

15 arraigned on the indictment, which is what we did

16 minutes ago when we entered your not guilty plea.  They

17 have 70 days to commence the trial against you under

18 the Speedy Trial Act.  If they do not commence the

19 trial within 70 days, your attorney can come into court

20 and ask that the charges against you be dismissed as a

21 violation of your right to a speedy trial.  This

22 application is stopping that speedy trial clock today

23 and will not start to count that 70-day period until

24 your next appearance before the Honorable Diane

25 Gujarati on June 21st, 2023.

1              Do you understand this application?

2              THE DEFENDANT:  I do.

3              THE COURT:  Have you discussed this matter

4    with your attorney?

5              THE DEFENDANT:  I have.

6              THE COURT:  Do you have any questions for

7    the Court regarding this application?

8              THE DEFENDANT:  I don't.

9              THE COURT:  Can I ask, Ms. Yun (ph), can you

10   present this to Ms. Daedone?  Thank you.

11             Is this your signature on this application

12   and order?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Thank you.  Then because the

15   parties have represented that they need this time to

16   exchange discovery, get a protective order, and start

17   to talk about how the case may be disposed of short of

18   trial, the Court grants this exclusion of time between

19   June 13th and June 21st, and I find that this serves the

20   ends of justice, outweighs the interests of the public

21   and the defendant in a speedy trial for the reasons

22   stated on the record.

23             Were there any other matters that needed to

24   be addressed on behalf of the United States today?

25             MS. KASSNER:  No, your Honor, thank you.

```
 1                   THE COURT:  Any other matter on behalf of
 2    Ms. Daedone today?
 3                   MS. GATTO:  No, your Honor, thank you.
 4                   THE COURT:  Then this matter is adjourned,
 5    thank you.
 6                   MS. GATTO:  Thank you, your Honor.
 7                   THE COURT:  Wait, wait, let's go back on for
 8    one moment.  We don't need the people on the phone.
 9                   THE CLERK:  We're still on the record,
10    Judge.
11                   THE COURT:  Okay, good.
12                   THE CLERK:  We have not stopped.
13                   THE COURT:  I apologize.  I need to remind
14    the government of its obligation under Brady v.
15    Maryland and its progeny to disclose to the defense all
16    information, whether admissible or not, that is
17    favorable to the defendant, material either to guilt or
18    to punishment, and known to the prosecution.  The
19    prosecution must make good-faith efforts to disclose
20    such information to the defense as soon as reasonably
21    possible, and I will enter a written order more fully
22    describing this obligation and the possible
23    consequences of failing to meet it.  I direct the
24    prosecution to review and comply with that order.
25                   Does the prosecution confirm that it
```

1    understands its obligations and fill fulfil them?

2            MS. KASSNER:  Yes, your Honor.

3            THE COURT:  Thank you.  I'm sorry that I

4    neglected that.  Now we've taken care of it and this

5    matter is adjourned.  Thank you.

6            MS. KASSNER:  Thank you, your Honor.

7                    * * * * * * *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          I certify that the foregoing is a correct

19    transcript from the electronic sound recording of the

20    proceedings in the above-entitled matter.

21

22

23

24

25    ELIZABETH BARRON                       June 21, 2023