Julia Gatto
212 378 7587
jgatto@steptoe.com

1114 Avenue of the Americas
New York, NY 10036
212 506 3900 main
www.steptoe.com



September 20, 2023

<u>VIA ECF</u>
The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *United States v. Rachel Cherwitz and Nicole Daedone,* 23-cr-146 (DG)

Your Honor:

    We write in response to the government's letter notifying the Court of what the government asserts is a potential, but waivable, conflict of interest for Steptoe and Johnson ("Steptoe") based on the firm's representation of Nicole Daedone and the Institute of OM. See ECF Doc. No. 42.[1]

    For the reasons explained below, the government has failed to identify a potential conflict that requires a *Curcio* hearing. The firm's joint representation of Ms. Daedone and the Institute of OM, an entity that has no relationship to the charges in the Indictment, is not the type of "joint representation" that creates or could create a conflict of interest. Indeed, based on the nature of the case and Ms. Daedone's defense, the government's concerns of a potential conflict are purely theoretical. There is no real potential conflict and, therefore, no need for a hearing.

    Nevertheless, Ms. Daedone, with whom we have spoken at length about these matters, understands the potential conflict issues and knowingly and voluntarily wishes to exercise her Sixth Amendment right to counsel of choice and continue with Steptoe as her attorneys.

---

[1] Notably, the government did not confer with defense counsel before filing its letter. This is especially curious since the government has been on notice of Steptoe's relationship with both Ms. Daedone and the Institute of OM for several years. Before indicting Ms. Daedone and Ms. Cherwitz, the government engaged in a five-year investigation during which Steptoe lawyers, both on behalf of Ms. Daedone and the Institute of OM, were exceedingly cooperative and communicative with the government. Among other things, in the five years preceding the Indictment, lawyers on behalf of Ms. Daedone and the Institute of OM repeatedly reached out to the government offering their clients' full cooperation. In addition to multiple phone calls (some of which went unreturned), counsel had in-person meetings with the government at which counsel made substantive factual presentations. Any potential conflict could have been raised with us pre-Indictment during the government's investigation or, at the latest, when Ms. Daedone was indicted. The government, however, elected to wait to ask the Court to take action on the potential conflict— a conflict that, in the government's words, presents a potentially "serious problem" that impacts Steptoe's "ability to advise [Ms.] Daedone"—more than five months after Indictment with trial preparations well under way.

Judge Gujarati                                                                                                                                           Page 2
September 20, 2023

      Re:    *United States v. Cherwitz et al.,* 23-cr-146 (DG)

To the extent the Court wishes to conduct an inquiry of Ms. Daedone or otherwise require additional disclosures from counsel, neither Ms. Daedone nor Steptoe has an objection to further procedures.

ARGUMENT

I.    <u>The Government Fails to Identify a Potential Conflict That Requires a *Curcio* Hearing</u>.

The government has charged Ms. Daedone with participating in a conspiracy to violate the forced labor statute between 2004 and May 2018. The charges relate to Ms. Daedone's role at OneTaste, the company she co-founded and ran until she sold it in 2017.

The Institute of OM is an entity separate from OneTaste. It was formed in November 2018, after the government contends the charged conspiracy ended. The Institute of OM provides online content related to the practice and philosophy of Orgasmic Meditation. Ms. Daedone has never been employed by the Institute of OM. She never has had an ownership interest in the Institute of OM. As the government will concede, the Institute of OM is not implicated, even indirectly, in the conduct charged in the Indictment. Indeed, it was not even in existence during the relevant time period.

Since 2021, lawyers at Steptoe have represented Ms. Daedone. Since January 2022, lawyers at Steptoe also have represented the Institute of OM.[2]

The dual representations have not, and have no potential of, creating a conflict of interest for Steptoe. In its letter, however, the government tries to identify two implausible scenarios where a "potential conflict" might arise. Neither one of the government's hypothetical scenarios identifies a cognizable "potential conflict."

    A.    *The Government's Hypothetical Concern For Institute of OM's "Business Prospects" Does Not Create a Cognizable Potential Conflict of Interest.*

First, the government hypothesizes that Steptoe's duty of loyalty to *the Institute of OM* might be impaired if Ms. Daedone adopted a legal strategy adverse to *OneTaste*. *See* Gov't Ltr. 7. The government predicts a scenario where Steptoe's loyalties might be divided if Ms. Daedone chose to employ a legal strategy that implicated OneTaste in wrongdoing because such

---

[2] Ms. Daedone is principally represented by Reid Weingarten and Julia Gatto. The Institute of OM is principally represented by Jonathan Baum. Before joining Steptoe in January 2022, Mr. Baum provided representation to OneTaste between 2018 and 2021 at his prior firm.

Judge Gujarati  Page 3
September 20, 2023

Re:     *United States v. Cherwitz et al.,* 23-cr-146 (DG)

a strategy, according to the government, might indirectly impact Institute of OM's "business prospects." *Id.* (arguing that if Ms. Daedone pled guilty or chose to testify then, according to the government, her allocution or testimony might "tarnish the OneTaste brand" and, therefore, negatively impact "the business prospects of the Institute of OM.").

The government fails to provide any authority for its novel reading of the conflict-of-interest rules. Instead, it cites to cases that stand for the unremarkable proposition that a potential, but waivable, conflict may arise when counsel for a criminal defendant represents co-defendants, unindicted coconspirators, or cooperating witnesses. *See id.* at 5-6. The Institute of OM does not fall into any of these categories. The government does not, and cannot, cite a case where a court recognized a "potential conflict" because counsel represented a criminal defendant and an entity whose "brand" or "business interests" might *indirectly* be impacted by the defendant's legal strategy. *See cf.* ABA Model Rule 1.7 (defining an attorney's duty of loyalty to her client as prohibiting "undertaking representation *directly adverse* to that client without that client's informed consent.") (emphasis added).

Accordingly, where, as here, the government's concerns of a conflict are based on, at best, "creative speculation," the court has no duty to inquire further into the issues raised by the government. *See United States v. Velez*, 354 F.3d 190, 198 (2d Cir. 2004) (A district court must inquire further "when [it] knows or reasonably should know that a particular conflict exists," but it is "not ... under a duty to inquire whenever, as a result of creative speculation, one could imagine a situation in which a conflict may have arisen."); *see also United States v. Reichberg*, 5 F.4th 233, 246 (2d Cir. 2004).

B.   Ms. Daedone's Defense Will Not Negatively Impact Institute of OM's "Business Prospects."

Moreover, even if the government's letter articulated some non-speculative potential conflict, here there is no actual possibility of that conflict arising. The government's "concerns" of a conflict are only triggered if Ms. Daedone takes a position adverse to OneTaste. Ms. Daedone's defense does not and will not include assigning blame to OneTaste or anyone affiliated with OneTaste. The government's case against Ms. Daedone is exceedingly weak. Other than a bare-bones indictment that fails to describe any "serious harm" sufficient to meet the standard of the forced labor statute, the government's allegations appear to be unsupported by any credible proof or evidence. And while Ms. Daedone has yet to be confronted with a single piece of inculpatory evidence (even after review of the government's more than two terabytes of Rule 16 discovery disclosures), the defense is aware of a significant volume of exculpatory material. Against this backdrop, there is no real potential conflict and the Court need not explore

Judge Gujarati  
September 20, 2023

Page 4

      Re:    *United States v. Cherwitz et al.,* 23-cr-146 (DG)

the government's hypothetical, but unrealistic, concerns at a hearing. *See, e.g., Reily v. Ercole*, No. 06-CV-5402 ENV, 2010 WL 4941469, at *8 (E.D.N.Y. Nov. 30, 2010), aff'd, 491 F. App'x 225 (2d Cir. 2012) (finding no "potential conflict" that required the court to conduct a hearing because the hypothetical scenario proposed in which the attorney might have been conflicted was "never a possibility."); *United States v. Kliti*, 156 F.2d 150, 155 (2d Cir. 1998) (If the court's initial inquiry reveals that a possible conflict is really non-existent, there is no need for a *Curcio* hearing).

      C.    *The Government's Hypothetical Concern Regarding Confidentiality Is Unfounded.*

The government also predicts a second—even more implausible—scenario where Steptoe's duty of confidentiality to Institute of OM "hypothetically" could interfere with Steptoe's duties to Ms. Daedone. The government writes, "if Steptoe learned certain information in the context of their attorney-client relationship with the Institute of OM that might assist [Ms.] Daedone, they could not use that information if it would do harm to the Institute of OM, even if it would benefit Daedone...." Gov't Ltr. 7. However, as the government knows, the Institute of OM was not in existence during the charged conspiracy. The government's hypothetical scenario, therefore, is inconceivable, and it does not raise even a potential cause for concern of a future conflict of interest. *Cf. United States v. Liszewski*, No. 06 CR 130 NGG, 2006 WL 2376382, at *11 (E.D.N.Y. Aug. 16, 2006) (denying disqualification motion of attorney who represented multiple parties in criminal matter because "there has been no showing that [the attorney] possesses information [from former client] that is in any way directly relevant to his current client's case").[3]

II.    Alternatively, Ms. Daedone Intends to Exercise Her Sixth Amendment Right to <u>Counsel of Her Choice and, to the Extent Necessary, Waives Any Potential Issues</u>.

Alternatively, to the extent the Court believes that Steptoe's representation of Ms. Daedone presents a potential, albeit unlikely, conflict, Ms. Daedone, in an exercise of her Sixth Amendment right to counsel of her choice, has expressly waived her right to entirely "conflict-

---

[3] Nor is there a concern of a potential conflict based on Mr. Baum's prior representation of OneTaste. OneTaste has executed a comprehensive conflict waiver, which includes a provision that permits information acquired from OneTaste to be used on behalf of Ms. Daedone. *See United States v. Leslie*, 103 F.3d 1093, 1098 (2d Cir. 1997) (assurances to court by trial counsel who previously represented co-defendant that co-defendant waived attorney-client privilege "obviated the need for a *Curcio* hearing"); *see also United States v. Curcio*, 680 F.2d 881, 885 (2d Cir. 1982) (waiver of privilege by client so that attorney could use confidential information to defend other client cures potential conflict concerns). And again, based on the nature of the case and Ms. Daedone's defense, the concern of a conflict is entirely theoretical and, in fact, non-existent.

Judge Gujarati  Page 5
September 20, 2023

Re:   *United States v. Cherwitz et al.,* 23-cr-146 (DG)

free" counsel. *Curcio*, 680 F.2d 881. Ms. Daedone's waiver was memorialized in writing months before the government filed the present motion.

Ms. Daedone's written waiver and defense counsel's representations regarding it obviate the need for a *Curcio* hearing. *See, e.g., Leslie*, 103 F.3d at 1098 (holding that a district court properly concluded that a defendant's waiver of "any attorney-client privilege that might otherwise have hindered [the attorney's] cross-examination of" the defendant "obviated the need for a *Curcio* hearing."); *see also United States v. Ward*, 85 F. App'x 246, 248 (2d Cir. 2004) ("When, as here, a conflict of interest poses only a slight risk of impairing a lawyer's representation, a district court may accept a defendant's waiver of the conflict without holding a *Curcio* hearing); *United States v. Rondon*, 204 F.3d 376, 381, n.3 (2d Cir. 2000).

CONCLUSION

Steptoe and Johnson takes its ethical obligations extremely seriously. Without qualification, we represent that our duties to Ms. Daedone have not and will not be compromised by any of the firm's other work or prior representations. Although there is no articulable conflict, Ms. Daedone nevertheless waives any theoretical concerns raised by Steptoe's representation of her in this matter (and has done so in writing). A hearing or further inquiry, accordingly, is not required. Nevertheless, if the Court wishes to explore these issues further, neither Steptoe nor Ms. Daedone has any objection to additional proceedings.

Respectfully submitted,

*/s/ Reid Weingarten*
Reid H. Weingarten
Julia Gatto
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
rweingarten@steptoe.com
jgatto@steptoe.com

*Counsel for Defendant Nicole Daedone*

cc:   All parties of record (via ECF)