

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DGR:KCB/GK/DEL
F. #2018R01984

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 12, 2024

By ECF and Email

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Cherwitz, et al.
               Criminal Docket No. 23-146 (DG)

Dear Judge Gujarati:

      The government respectfully submits this letter in response to defendants Rachel Cherwitz and Nicole Daedone's June 5, 2024 pre-motion letter (the "June 5 Letter"), requesting a briefing schedule on their motion to dismiss the indictment in this case for a purported breach of their attorney-client privilege. See ECF Dkt. No. 95 (the "Pre-Motion"). The defendants argue that the Court must dismiss the indictment because the government had access to (1) a document that a third party witness unaffiliated with OneTaste provided to the government that OneTaste now claims is privileged (the "Document"); and (2) an interview the government conducted of Adam Jacobowitz, a person who, at times, worked as an attorney for OneTaste (not the defendants) (the "Jacobowitz Interview") (collectively, the "Identified Materials"). The defendants claim that these items contained privileged information and that the government improperly accessed that information.

      Their arguments fail for three independent reasons. First, at the threshold, the defendants do not, and cannot, identify any facts or law establishing that they—as opposed to OneTaste—can assert a privilege over the Identified Materials. Second, even if they could assert such a privilege, that privilege was waived. Specifically, despite having received the Identified Materials in Rule 16 discovery many months ago, the defendants failed to assert any privilege as to them. As such, even assuming they could assert a colorable privilege claim, they knowingly waived that claim. Third, and finally, other than speculative assertions, the defendants do not identify how the government's receipt of the Document from a third-party witness (and then producing it discovery) or interviewing an attorney in their capacity as a fact witness constitutes any misconduct, much less warranting the drastic relief of dismissal of the indictment, as they request. Indeed, a privilege review team, discussed below, has informed members of the prosecution team that it is not readily apparent that the Document is privileged.

Accordingly, the defendants' assertions that the government's access to the Identified Materials warrants dismissal of the indictment is baseless—particularly where, as explained below, the government does not seek to rely on these materials at trial.

I.   Background

   A.   The Document

In November 2021, a witness ("Individual-13") provided the Document to the Federal Bureau of Investigation ("FBI") by email as separate jpeg images. Individual-13 is not, and never was, an attorney for the defendants or the defendants' former employer, OneTaste. Individual-13 was also never an employee of OneTaste. Individual-13 informed the FBI that Individual-13 had obtained all but two of the images comprising the Document from another individual associated with OneTaste ("Witness-1") who was also not, and never was, an attorney for the defendants or OneTaste.[1] The government produced the Document to the defendants in a Rule 16 discovery production on September 18, 2023, bates-stamped ONETASTE00167250-ONETASTE00167276, and identified it as "[s]creenshots of a document provided by Individual #13, whose identity will be disclosed to counsel separately." See ECF Dkt. No. 43, at 3.

Approximately seven months after the government's disclosure of the Document, on April 24, 2024, counsel for OneTaste asserted privilege over the Document for the first time in an email to the government in which he copied counsel for the defendants. At that time, counsel for the defendants did not independently assert privilege with respect to the Document. After receiving the email from OneTaste's counsel, the government immediately restricted access by any member of the prosecution team to the Document and established a separate privilege review team (the "Privilege Review Team") tasked with reviewing the Document so that, upon determination that any materials were in fact privileged, those materials could continue to be segregated from the prosecution team. The government also promptly answered OneTaste's questions about the timing, manner and format of the government's receipt of the Document, including that Individual-13 indicated Individual-13 had received the Document from Witness-1, as described above. The Privilege Review Team has reviewed the Document and informed members of the prosecution team that it is not readily apparent on the face of the document that the document is privileged.

Subsequently, in May 2024, Witness-1 contacted the FBI and advised that a person claiming to be counsel for OneTaste contacted Witness-1 about documents that Witness-1 had provided to Individual-13, specifically photos Witness-1 had sent to Individual-13. Witness-1 further informed the FBI at that time that Witness-1 believed Witness-1 had received those photos from another individual ("Witness-2"). The government is aware that Witness-2 was at one point employed by OneTaste as an IT contractor and that Witness-2 also participated in OneTaste courses. In 2021, Witness-2 informed the FBI that around the time Witness-2 left

---

[1] The government understands from the Privilege Review Team, described herein, that OneTaste is not asserting privilege over the two images that Individual-13 did not obtain from Witness-1 contained within the Document's bates-range.

2

OneTaste, Witness-2 downloaded and retained certain documents from OneTaste's cloud services.[2]

B.  The Jacobowitz Interview

On October 2, 2023, the government disclosed to the defendants, in an abundance of caution, certain prior statements of witnesses that may be helpful to the defendants, including statements made by Adam Jacobowitz, who served as a former OneTaste student and part-time staff member. Jacobowitz had been interviewed by the FBI on January 28, 2021 concerning his experiences participating in OneTaste's courses and living at OneTaste's communal homes. As disclosed to the defendants, during that interview, Jacobowitz had stated that he had for a time worked "as legal counsel for OneTaste," and that "his salary was based on an hourly rate and he worked part-time, approximately 20 hours per week, for 13 and a half months."

Approximately six months after the disclosure that incorporated Jacobowitz's statements, on April 1, 2024, Daedone's counsel claimed that, based on that disclosure, the government had elicited information protected by the attorney-client and/or attorney-work product privileges. As it did with the Document, the government immediately restricted access by any member of the prosecution team to the Jacobowitz Interview (which had been documented in an FBI 302 report), the Privilege Review Team redacted limited statements that may contain potentially privileged material and returned the FBI 302 report to the prosecution team. OneTaste's counsel has not, to date, asserted any privilege over the Jacobowitz Interview.[3]

In May 2024, members of the prosecution team reached out to counsel for the defendants requesting clarification as to whether the defendants (as opposed to OneTaste) were asserting privilege over the Jacobowitz Interview. In response, both Daedone's and Cherwitz's counsel represented that they were asserting privilege over the Jacobowitz Interview and Cherwitz's counsel represented that she was asserting privilege over the Document as well. In two follow-up emails to counsel, the government requested that the defendants identify their basis for asserting privilege over the Identified Materials, or otherwise explain how they held any applicable privilege. The defendants did not respond, but instead filed the June 5 Letter.[4]

---

[2] These documents were provided to the FBI and later produced to the defendants in discovery in July and August 2023. To date, in the almost year period that has lapsed since their production to the defendants, neither OneTaste nor the defendants have ever claimed that any of these documents are privileged.

[3] The Privilege Review Team is available to provide the Court with a copy of the Document and unredacted Jacobowitz interview report for the Court's in camera review if the Court so requests.

[4] The defendants also indicated that they were asserting privilege over an unspecified "number of attorney bills." The government requested a log identifying the bates numbers of bills over which the defendants were asserting privilege and the defendants' basis for asserting privilege over these materials, given that attorney bills are typically not privileged. See In re Grand Jury Subpoena Served Upon John Doe, 781 F.2d 238, 247 (2d Cir. 1986) ("We consistently have held that, absent special circumstances, client identity and fee information are

II. Analysis

    A. The Defendants Lack Standing to Assert Privilege

As an initial matter, the defendants have provided no basis establishing standing to assert any attorney-client privilege over the Document or the Jacobowitz Interview. Put differently, the defendants have failed to identify the existence of any attorney-client relationship between themselves and Jacobowitz, or themselves and any attorney who may have been involved in any aspect of the preparation or review of the Document.

The burden is on the party asserting the attorney-client privilege to establish each of its elements. See United States v. Schwimmer, 892 F.2d 237, 244 (2d Cir. 1989). The burden cannot "be discharged by mere conclusory or ipse dixit assertions." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F. 2d 223, 224-25 (2d Cir. 1984) (citations omitted) (internal quotation marks omitted). The attorney-client privilege "can be asserted only by the client (or one authorized to do so on the client's behalf)." In re Sarrio, S.A., 119 F.3d 143, 147 (2d Cir. 1997); see also In re von Bulow, 828 F. 2d 94, 100 (2d Cir. 1987) (attorney-client privilege "belongs solely to the client"). Where a corporation is a privilege holder, the corporation's current management controls the attorney-client privilege. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343 (1985) (holding that a former manager cannot assert an attorney-client privilege on behalf of a corporation as a shield to protect his/her self-interest); United States v. Int'l Broth. of Teamsters, 119 F.3d 210, 215 (2d Cir. 1997) ("[A]ny privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee." (collecting cases)); In re Sarrio, S.A., 119 F.3d at 147-48 (holding that the attorney-client privilege belongs solely to the client and citing a Ninth Circuit case for the proposition that a "defendant ex-officer of corporation in receivership has no right to assert attorney-client privilege of corporation to block admission of evidence at his criminal trial" (citing United States v. Plache, 913 F.2d 1375, 1381 (9th Cir. 1990)).

The defendants fail to establish that they have standing to assert privilege over the Document or the Jacobowitz Interview. The June 5 Letter does not attempt to demonstrate a personal attorney client relationship with Jacobowitz or any attorney potentially involved in the preparation or review of the Document. Instead, they state in passing that "Ms. Cherwitz and Ms. Daedone . . . were involved in the company at the time this document was created"—but that assertion provides no information as to how they have standing to assert any kind of privilege over the Document or the Jacobowitz Interview. Because the defendants have wholly failed to identify the existence of any applicable attorney-client relationship of which they were a part that would give rise to any violation of their own constitutional rights—or that they were even the

---

not privileged."); Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC, 319 F.R.D. 100 (S.D.N.Y. 2017) ("It is . . . black letter law that attorneys' bills and communications regarding retainer agreements are not privileged." (internal quotation marks and alteration omitted)). The defendants did not respond.

recipient of any legal advice or even involved with Jacobowitz or the preparation or review of the Document—any motion to dismiss is baseless.[5]

> B. The Defendants' Pre-Motion is Untimely

Even if the defendants had standing to assert some kind of attorney-client privilege over the Document, they have waived it. The Document—obtained by a third-party witness—was produced to the defendants in discovery approximately seven months prior to any claim by the defendants that it contained possibly privileged material. Upon receipt of the Document and in the ensuing months, the defendants made no effort to assert privilege over the Document, either by notifying the government of any assertion of privilege or complying with the Court's pretrial motions briefing schedule, which required the filing of pretrial motions by January 16, 2024. The failure to timely assert privilege constitutes a clear waiver. See United States v. Schulte, No. 17-CR-548 (JMF), 2022 WL 1284549, at *3 (S.D.N.Y. Apr. 29, 2022) (privilege waived where defendant "failed to assert that the document was privileged for more than six months after becoming aware that the Government had the document" and where defendant took no steps to secure document's return from the government); JSMS Rural LP v. GMG Cap. Partners III LP, No. 04 CIV. 8591 SAS MHD, 2006 WL 1520087, *6 (S.D.N.Y. June 1, 2006) ("Defendants' delay of more than four months—for which they offer no meaningful excuse—is unreasonable on its face."); Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc., No. 96 CIV. 2064 (RWS), 1996 WL 668862, at *5 (S.D.N.Y. Nov. 19, 1996) (one month delay "in requesting the return of the privileged documents supports a finding of waiver"). In Schulte, as the Court should do here, the Court declined to resolve whether the document at issue was privileged, determining instead that even though a third party may have committed an unauthorized production of that party's privileged documents, among other considerations, the "Defendant's actions during the litigation"—including, significantly, the amount of time it took the defendant to raise the issue—had "waived the privilege." Id. (citing cases).

The same waiver is true of the Jacobowitz interview. To date—eight months after the government's initial disclosure that Jacobowitz had been interviewed—OneTaste has never asserted privilege with respect to any of Jacobowitz's statements. The defendants did so approximately six months after the government's inclusion of Jacobowitz's statement in its disclosure letter. Such protestations now are untimely; any colorable claim to privilege has been waived.

---

[5] Indeed, although the defendants make passing reference to a purported Fifth Amendment violation—with no foundation for doing so—there is no basis for the defendants to assert any kind of Fifth Amendment violation as to any communications over which they are asserting an attorney-client privilege in their capacity as OneTaste employees, or even corporate representatives or agents. See, e.g., Braswell v. United States, 487 U.S. 99, 105 (1988) (noting that prior cases had "settled that a corporation has no Fifth Amendment privilege"); In re Grand Jury Subpoena Issued June 18, 2009, 593 F.3d 155, 157-58 (2d Cir. 2010) (per curiam) (applying rule to small and solely-owned corporations).

5

C.  The Defendants Have Not Established Any Government Misconduct

The defendants have not identified how the government's receipt of a document from a third-party witness, which the government, operating in good faith, produced in discovery, and over which the defendants made no claim of privilege for months, constitutes such "grave misconduct" as to warrant the drastic remedy of dismissal.[6] June 5 Letter at 1. Nor could they. As set out above, the government obtained the Document from Individual-13, who the defendants do not claim was an attorney or even a third-party to whom the attorney-client privilege might extend.

Attempting to elide the fact that a third party obtained and produced the purportedly privileged document to the FBI, the defendants now claim that the document was "pilfered" from OneTaste at some unknown point and that this was apparent on the face of the Document because it was "made up of photographs of surreptitious screenshots from a personal cellphone." June 5 Letter at 2. The assertion, supported by no facts, that a cellphone screenshot ipso facto equates to the theft of corporate privileged information is absurd. The defendants bear the burden of establishing privilege; the Court should reject their speculative, unsupported claims attempting to circumvent what appears on its face to be third-party waiver.[7] Cf. Cicel (Beijing) Science & Tech. Co. v. Misonix, Inc., 331 F.R.D. 218, 227 (E.D.N.Y. 2019) ("It is also well-settled that voluntary disclosure of privileged communications to a third party results in waiver of the attorney-client privilege." (alterations and internal quotation marks omitted)).

Dismissal of an indictment "is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001); accord United States v. Sammy, 763 F. App'x 45, 46 (2d Cir. 2019) (summary order). Even in cases of intentional intrusion, the "[Second] Circuit never has gone so far as to adopt a per se rule requiring the dismissal of an indictment." Schwimmer, 924 F.2d at 447.[8]

---

[6] The defendants do not argue that the Jacobowitz Interview constitutes an intrusion causing any taint or prejudice warranting dismissal.

[7] As outlined above, in May 2024, Witness-1 identified a possible source of the document in Individual-13's possession as originating from Witness-2, who worked at OneTaste, but not in a legal capacity. In any event, even if such chain could be confirmed, it simply establishes the number of third-party individuals who may have had access to the Document, further weakening any claim of privilege.

[8] The out-of-circuit cases cited by the defendants prove this point. In those cases, unlike here, the applicable courts found serious governmental misconduct where a defense attorney subsequently joined the prosecution team and where the government collaborated with a defense attorney to bring charges against that attorney's client. See, e.g., United States v. Schell, 775 F.2d 559 (4th Cir. 1985) (reversing trial convictions where defense attorney represented defendants "with respect to the very same criminal activity which led to the indictment that he ultimately helped to prosecute" after the defense attorney became an Assistant United States

No intrusion, nor any implication of fundamental rights, has occurred here. Indeed, that the government produced the Document in Rule 16 discovery also evinces the government's belief—having obtained the Document from a third-party witness—that it was not privileged. Further, as soon as the government learned that OneTaste was asserting a claim of privilege, it immediately took significant mitigation steps through removing the potentially privileged materials from the prosecution team's access, implementing the filter team, and keeping OneTaste's counsel apprised of steps taken and follow-up information required by the filter AUSA.

Indeed, the government's good faith in addressing potential privilege claims is evidenced by the government's substantial efforts to promptly address privilege issues throughout the investigation and prosecution of this case. These efforts include prompt communications with privilege holders, establishing and using a Privilege Review Team, and actively litigating OneTaste's pre-indictment privilege assertions before a district judge. See Mem. & Order dated July 27, 2023, 23-MC-715, ECF No. 16 (Chen, D.J.). Given these substantial efforts, the defendants' claim that there has been a "blatant disregard for attorney-client privilege" in this case is meritless. June 5 Letter at 5-6. In sum, the defendants have failed to show that that the government acted with anything but good faith.

Finally, there is no conceivable prejudice in this case, given that the government has not, and does not intend to, use the Document in this case.

---

Attorney); United States v. Marshank, 777 F. Supp. 1507, 1519 (N.D. Cal. 1991) (dismissing indictment upon court's "shocking" finding that "[t]he government collaborated with [the defendant's] attorney to build a case against him, to effect his arrest, and to ensure that he would cooperate with the government rather than contest the charges against him"). Here, the government's receipt of a document from a third-party witness and then producing that document to the defendants in discovery, and interviewing an attorney who never represented the defendants in that attorney's capacity as a fact witness, is completely incomparable with the cases to which the defendants cite.

III.    Conclusion

For the reasons set forth herein, the government respectfully opposes the defendant's pre-motion request for a briefing schedule.

Respectfully submitted,

BREON PEACE<br>
United States Attorney

By:   /s/<br>
       Gillian Kassner<br>
       Devon Lash<br>
       Kayla Bensing<br>
       Assistant U.S. Attorneys<br>
       (718) 254-6224/6014/6279

cc:    Clerk of Court (DG) (via ECF and Email)<br>
       Counsel for Cherwitz and Daedone (via ECF and Email)