

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EMR:KCB/GK/DEL
F. #2018R01401

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 18, 2024

By ECF and Email

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Cherwitz, et al.
                Criminal Docket No. 23-146 (DG)

Dear Judge Gujarati:

      The government respectfully submits this letter in response to defendants Rachel Cherwitz and Nicole Daedone's June 11, 2024 letter (the "June 11 Letter") and June 17, 2024 letter ("June 17 Letter"), requesting a briefing schedule on their motion to dismiss the indictment on the grounds the government purportedly destroyed evidence. See ECF Dkt. No. 96 & 99.

      Specifically, the defendants argue that a special agent with the Federal Bureau of Investigation ("FBI") caused the destruction or significant alteration of "potentially" exculpatory evidence when, in response to a November 2022 query from an individual (hereinafter "Jane Doe"[1]) as to what to do with a personal email account on which Jane Doe was receiving threatening messages from individuals associated with OneTaste (the "Email Account"), the agent told Jane Doe that he would "cancel it if it's only bringing emails like the ones attached." June 11 Letter, Exhibit A, ECF Dkt No. 96-1 (hereinafter "Exhibit A"). The defendants further claim, without support from any relevant legal authority, that the agent's actions warrant dismissal of the indictment under the Sixth Amendment.

---

[1]     The government respectfully requests leave from the Court to refer to this individual, who is a victim in the charged forced labor conspiracy, as Jane Doe, and that the Court order the defendants to do the same. Such a measure is necessary to protect Jane Doe from further potential harassment and undue embarrassment. See, e.g., 18 U.S.C. § 3771(a)(8) (providing crime victims with "[t]he right to be treated with fairness and with respect for [their] dignity and privacy").

For the reasons set forth below, the Court should deny the defendants' motion to dismiss the indictment. As an initial matter, the defendants cannot make the threshold legal showing that the government had possession or control of the Email Account, which is necessary to prove a constitutional violation. Second, even if they could make that showing, the defendants have not demonstrated any facts sufficient to establish the three requirements of a spoliation of evidence claim: (1) that the Email Account contained exculpatory material, (2) that its contents are inaccessible by other means, and (3) that the government acted in bath faith concerning the Email Account. Moreover, because the defendants' motion relies wholly on speculative and baseless accusations, the Court should also deny their request for a further briefing schedule on these claims.

I.     Background

Jane Doe is a former OneTaste member who was associated with OneTaste between 2012 and 2015. According to a complaint filed by OneTaste in California state court, after leaving OneTaste, in 2015, Jane Doe accused OneTaste of a hostile work environment, quid pro quo sexual harassment, failure to prevent harassment, failure to pay minimum wage and overtime wages, and intentional infliction of emotional distress. See Nov. 21, 2022 Amended Complaint ¶¶ 45-46, Case No. 22STCV33093 (Los Angeles, Cal. Superior Court). Jane Doe alleged that OneTaste "had forced and manipulated her into having sex and 'OMing'[2] with OneTaste staff, supervisors, and customers (especially high paying customers)" and that "when she refused to do so, she was publicly shamed, and threatened with reduced earnings and termination." Id. ¶ 46. Ultimately, OneTaste and Jane Doe signed a settlement agreement, which included a provision pursuant to which Jane Doe agreed not to "disparage OneTaste or its officers, or incite others to do so, and to keep the purported 'actions' of OneTaste confidential." Id. ¶¶ 48-49.

In approximately 2018, the FBI initiated an investigation into potential federal offenses committed by OneTaste and its then current and former leaders. During its investigation, which remains ongoing, FBI agents interviewed Jane Doe. In one interview in or around May 2022, Jane Doe told agents that since leaving OneTaste, she had been continuously harassed by OneTaste supporters on social media. Following this interview, individuals currently or previously associated with OneTaste continued to contact Jane Doe. Given the continued unwanted contact, on August 5, 2022, Jane Doe emailed FBI Special Agent Elliot McGinnis on the Email Address and noted that she was "retiring this email and changing her US number." See Aug. 5, 2022 Email Message from Jane Doe (attached hereto as Exhibit 1).

Two weeks later, on August 18, 2022, Jane Doe was contacted by phone by an individual ("OneTaste Member-1"). See Aug. 18, 2022 Text Message from OneTaste Member-1 (attached hereto as Exhibit 2). OneTaste Member-1 informed Jane Doe, in sum and substance, that she had spoken to OneTaste's lawyers who wanted Jane Doe to write to a media outlet and claim that the media outlet's published claims about OneTaste were inaccurate. Id. If Jane Doe did not do so, OneTaste Member-1 said OneTaste's lawyers would release information about

---

[2] This refers to "orgasmic meditation," a partnered practice typically involving the methodical stroking of a woman's genitals for a period of fifteen minutes.

2

Jane Doe publicly — information that OneTaste Member-1 noted "would not look good in the public sphere." Id.

On August 18, 2022, at 5:17 p.m. Eastern Time ("ET"),[3] Jane Doe contacted Special Agent McGinnis by email. See Exhibit A at 7.[4] She described and attached the communications by OneTaste Member-1 and said if she did not contact the media outlet, OneTaste "will release all these things publicly . . . [w]hat they would release publicly could be a wide range of things such as text messages of me saying certain things, images, or video. I am not really sure but it would all be framed to make me look like a liar." Id. Jane Doe also said that OneTaste "seems to be getting as close to me as they can and contacting + threatening people who I could be close with." Id. at 8. In a phone call later that day, Jane Doe informed Special Agent McGinnis, in sum and substance and in part, that she took these messages as threatening and she intended to change her phone number.

On October 1, 2022, at 1:02 p.m. ET, Jane Doe contacted Special Agent McGinnis and informed him that another former OneTaste member had contacted her via social media concerning Jane Doe's experience with OneTaste. Exhibit A at 5. Jane Doe wrote that it appeared OneTaste had started contacting "even more people" to discredit Jane Doe. Exhibit A at 5.

Then, on November 8, 2022, at 3:49 a.m. ET, Jane Doe emailed Special Agent McGinnis, attaching email messages from OneTaste Member-1 and another individual ("OneTaste Member-2") that she had received within the last two weeks, and specifically:

- On October 27, 2022, OneTaste Member-2 emailed Jane Doe and stated that she (OneTaste Member-2) had provided information about Jane Doe to OneTaste's lawyers, which the lawyers had promised that "they would not go after you [Jane Doe] in retaliation." See Oct. 27, 2022 Email from OneTaste Member-2 (attached hereto as Exhibit 3). OneTaste Member-2 told Jane Doe that Jane Doe should stop speaking out ("you don't need to keep doing this") and that other members of OneTaste still "love" her. Exhibit 3 at 1.

- On October 29, 2022, OneTaste Member-1 emailed Jane Doe and again encouraged Jane Doe to contact the media outlet concerning her time at OneTaste to retract any allegations she had made about OneTaste. See Oct. 29, 2022 Email from OneTaste Member-1 (attached hereto as Exhibit 4). OneTaste Member-1 stated that OneTaste had gathered material concerning Jane Doe and OneTaste was "going to have to share

---

[3] The times reflected in Exhibit A reflect different time zones. For ease, the times have been converted into Eastern Time throughout this motion.

[4] Jane Doe communicated with Special Agent McGinnis using a different account, not the Email Account at issue here. Before this issue came to light last week, Jane Doe never discussed with any member of the government (including Special Agent McGinnis) when she registered for the Email Account, the time period in which she used the Email Account, or whether she used the Email Account during her time at OneTaste.

3

a lot of material that I promise you . . . you do not want coming out," and informing Jane Doe that OneTaste Member-1 expected Jane Doe to be sued if she did not retract previous statements made. Exhibit 4 at 2.

Later on the morning of November 8, 2022, at approximately at 7:43 a.m. ET, Jane Doe sent the emails attached as Exhibits 3 and 4 to Special Agent McGinnis. Special Agent McGinnis wrote to Jane Doe that he would address the emails with the assigned Assistant United States attorneys. He added: "In the meantime I recommend blocking [OneTaste Member-1 and -2]. Based on their statements in the emails they are still associated with OneTaste and I feel that they are rather manipulative in nature." Exhibit A at 3.

Approximately three minutes later, at 7:46 a.m. ET, Jane Doe replied, "Should I disband and cancel that email? I've been keeping it open for any kind of stuff like this?" Id. At 7:51 a.m. ET, Special Agent McGinnis replied, "I would cancel it if it's only bringing emails like the ones attached. It really serves you no purpose other than making you feel uneasy." Id. They then discussed setting up a time to speak via phone and spoke at approximately 12:30 p.m. ET on November 8, 2022. Id. As documented in an FBI 302 report, Jane Doe informed Special Agent McGinnis that Jane Doe believed that OneTaste Members-1 and -2 were trying to discourage her from talking with law enforcement and she expressed concern that OneTaste members would retaliate against her for talking with law enforcement.

The following day, on November 9, 2022, Jane Doe emailed Special Agent McGinnis the information concerning a lawsuit filed by OneTaste in Los Angeles Superior Court and noted, "it seems to be 'pending' but not sure what that actually means." Exhibit A at 2. Special Agent McGinnis then asked Jane Doe if she was named in the lawsuit and had a copy of it. Jane Doe said she did not have a copy and noted that she received the little information she had from a member of the news media. Id. at 1.

Jane Doe later confirmed that OneTaste had filed a lawsuit against her in Los Angeles Superior Court, just as its supporters had threatened. In or about May 2023, Jane Doe filed an answer to the Amended Complaint. Through its lawyers, OneTaste demanded Jane Doe be deposed as soon as possible in what she believed was an effort to intimidate her, which Jane Doe communicated to the government.

In May 2023, the government filed a motion to stay civil litigation in Los Angeles Superior Court between OneTaste Inc. and Jane Doe. In its filing, the government argued that OneTaste sought to take advantage of the civil discovery process—both broad civil discovery rules and the deposition process—to collect information not otherwise discoverable in the federal criminal investigation, to access witnesses who might not otherwise voluntarily speak with them, and to develop potential impeachment material to use against Jane Doe and other potential witnesses should the government bring charges against the defendants. In July 2023, the state court denied the government's motion to stay the civil litigation.

II. <u>Applicable Law</u>

Spoliation is "the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." <u>United States v. Walker</u>, 974 F.3d 193, 208 (2d Cir. 2020) (internal quotation marks omitted); <u>see also</u> <u>United States v. Barnes</u>, 411 F. App'x 365, 368–69 (2d Cir. 2011).

The threshold inquiry is whether "evidence has been lost and that this loss is 'chargeable to the State.'" <u>Colon v. Kuhlmann</u>, 865 F.2d 29, 30 (2d Cir. 1988); <u>Barnes</u>, 411 F. App'x at 369; <u>see also</u> <u>United States v. Hunt</u>, 534 F. Supp. 3d 233, 261 (E.D.N.Y. 2021). In determining whether an opposing party (here, the government) can be charged with the alleged loss of material, courts have considered whether the party had "control over the evidence and an obligation to preserve it at the time it was destroyed." See <u>United States v. Watts</u>, 934 F. Supp. 2d 451 (E.D.N.Y. 2013) (denying motion to suppress evidence due to claims of spoliation) (citing <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107–08 (2d Cir. 2002) (seeking a jury instruction on spoliation)). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." <u>Barnes</u>, 411 F. App'x at 368 (quoting <u>Fujitsu Ltd. v. Fed. Express Corp.</u>, 247 F.3d 423, 436 (2d Cir. 2001)).

Once the defendant has demonstrated that the government was under an obligation to preserve evidence that it then destroyed, the defendant must show: (1) "that the evidence possessed exculpatory value that was apparent before it was destroyed"; (2) that the evidence "was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means"; and (3) "bad faith on the part of the [g]overnment." <u>Walker</u>, 974 F.3d at 208 (quoting <u>United States v. Greenberg</u>, 835 F.3d 295, 303 (2d Cir. 2016)). The "[f]ailure to satisfy any of these requirements, including a failure to show the Government's bad faith, is fatal to a defendant's spoliation motion." <u>Walker</u>, 974 F.3d at 208; <u>see also</u> <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988) (explaining that "unless a criminal defendant can show bad faith on the part of the [government], failure to preserve potentially useful evidence does not constitute a denial of due process of law").

III. <u>Analysis</u>

The Court should deny the motion to dismiss the indictment as well as their request for further briefing and/or fact-finding on the motion, for two reasons. First, the defendants fail to satisfy the required threshold showing that the government was under any obligation to preserve and collect the Email Account, and that the alleged loss of the account is somehow chargeable to the government. Second, even assuming that the defendants could demonstrate those facts (which they cannot), they have failed to show the Email Account contained exculpatory material that was apparent before it was canceled, that its contents are inaccessible by other means, and that FBI Special Agent McGinnis or any member of the prosecution team acted in bad faith. Notably, as set forth below, the defendants' arguments to the contrary rest on rank speculation and a misapplication of the relevant legal authorities.

A. The Defendants Fail to Make the Threshold Showing that the Alleged Destruction is Chargeable to the Government

As an initial matter, the Court should deny the defendants' motion because they have failed to make the threshold showing required for a spoliation claim. Specifically, they have not – and cannot – demonstrate that the purported loss of the Email Account is chargeable to the government, because the government had no control over the evidence and no obligation to preserve it.

In evaluating spoliation claims, courts first consider whether the government had custody or control over the material. For instance, in United States v. Hunt, 534 F. Supp. 3d 233, 261 (E.D.N.Y. 2021), the district court rejected a claim of spoliation when the defendant failed to show that the government possessed comments to an online video that the defendant alleged were missing from the government's copy. The court found the government asked the online provider to provide a complete copy of the video and then in turn, the government provided it to the defendant. Id. To the extent additional material existed that was not provided to the government, the government could not be "charged" with the absence of material they never possessed. Id.; see also United States v. Allen, 472 F. App'x 35, 36–37 (2d Cir. 2012) (denying motion alleging due process violation because defendant failed to show "police ever had possession of the evidence, or destroyed or suppressed it, much less that the evidence would have supported his claim.").

In the instant case, except for any correspondence with Special Agent McGinnis or another government agent,[5] no material from the Email Account has ever been within the possession or control of the government. As in Hunt, because the material was not within the government's custody or control, the government cannot be charged with its alleged absence or destruction.

Courts have also considered whether the government had a duty to collect the material at issue. For instance, in Watts, 934 F. Supp. 2d at 478, the defendant moved to preclude the government from using audio recordings at trial where the participants mentioned documents that were not collected or preserved by the government. In the alternative, the defendant sought a spoliation jury instruction. Id. The district court refused to preclude the evidence or instruct the jury on spoliation because "the government cannot be said to have ever actually possessed or controlled said documents." Id. Put differently, the government cannot have destroyed something it never had to begin with. Id. at 479; see also Greenberg, 835 F.3d at 303-04 (denying spoliation motion when Federal Trade Commission possessed evidence in a

---

[5] Any correspondence between Jane Doe and members of the prosecution team was preserved by the government. Should this correspondence constitute material subject to disclosure under the Jencks Act, 18 U.S.C. § 3500, it will be produced at the appropriate time. However, even if the government calls Jane Doe to testify, the entirety of the Email Account would not be produced to the defendants pursuant to 18 U.S.C. § 3500 because it is not (and has never been) in the government's possession. See 18 U.S.C. § 3500 (identifying material as that "in the possession of the United States").

6

civil investigation but did not preserve it for the later criminal investigation and finding it is "doubtful" the loss of the material can be charged to the prosecutors).

Here, the material consists of a potential witness's personal email account. The government has no obligation to collect and preserve such material — and the defendants cite to no legal authority that imposes such a duty on the government.[6] To the contrary, it is black-letter law that the government has no duty to collect or retain material that may have evidentiary significance in a particular prosecution. See Youngblood, 488 U.S. at 58 (finding the government has no "undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution"); United States v. Soriano, 401 F. Supp. 3d 396, 400 (E.D.N.Y. 2019) (noting Youngblood's holding); cf. United States v. Bradley, No. 22-1207, at pp. 19-22,__ F.4th ___ (2nd Cir. June 18, 2024) (Rule 16 does not "impose a requirement upon the government to discover and turn over to a criminal defendant evidence that the government: (1) does not have in its physical possession, custody or control; or (2) does not have a duty to obtain from a third party). By the defendants' logic here, the government would have to collect and preserve any and all writings or recordings from individuals whom the government may call as witnesses at a future prosecution. Such a requirement would be unduly burdensome, and it is also refuted by well-established legal precedent. See United States v. Melendez-Rojas, No. 22-333, 2024 WL 1881491, at *8 (2d Cir. Apr. 30, 2024).[7]

B. <u>The Defendants Cannot Show the Email Account Contained Exculpatory Material</u>

The Court should also deny the motion because, even assuming the defendants could somehow demonstrate that the government possessed or had an obligation to obtain and preserve the Email Account—which they cannot—the defendants make no credible showing "that the evidence possessed exculpatory value that was apparent before it was destroyed." Walker, 974 F.3d at 208.

In Walker, the Second Circuit affirmed the district court's denial of the defendant's motion to dismiss claiming spoliation of evidence, in part, because the defendant did not assert the material contained exculpatory material. Id. at 208. There, the defendant asserted spoliation where 28 seconds of surveillance video was missing, and the defendant speculated that this missing footage portrayed a brief interaction related to a charged robbery. Id. The Circuit found that, besides the defendant's unsupported supposition, the defendant did not "assert that he

---

[6] The defendants claim the government "should have reached out to Jane Doe to ensure she preserved any relevant material" after their presentation in December 2022. June 11 Ltr. at 4. They cite to no case law nor offer any explanation as to why the government was obligated to do so, which it was not.

[7] Nor is it clear how the defendants expected the government to obtain such material. The government does not routinely obtain entire email accounts of witnesses or victims of crimes. Indeed, absent a witness's consent or a search warrant supported by probable cause, it is unclear whether the government would even have authority to do so.

7

knows what the missing video footage contained, let alone that the missing footage was exculpatory . . . [nor] what kind of events recorded then could possibly exculpate him." Id. at 208-09.

As in Walker, the defendants' claim that the Email Account contains "potentially" exculpatory material is entirely speculative. See June 11 Ltr. at 3, 5, 7. The defendants include no information about when the Email Account was created, when it used, and with whom its user communicated. They also do not describe any material in the Email Account, much less demonstrate that this material is exculpatory. Instead, they claim – without any factual basis – that "there can be little doubt that [Jane Doe's] email communications with a vast number of individuals would have included direct admissions or implied admissions that her most damning allegations against OneTaste were fabricated from whole cloth." June 11 Ltr. at 4. This bald accusation without any supporting evidence is plainly insufficient to make the required showing that the Email Account is somehow exculpatory. If anything, as Jane Doe's communications with Special Agent McGinnis reflect, the Email Account contained communications — which Jane Doe perceived as threatening — from individuals who were upset because she had *refused* to parrot a false narrative about OneTaste.

  C. <u>The Defendants Have Not Shown the Email Account Is Inaccessible By Other Means</u>

The defendants also have not shown that the Email Account is inaccessible by other means — the second requirement to show spoliation. In evaluating a motion for spoliation, courts "must decide whether a defendant has other means to obtain comparable evidence, such as through contemporaneous records of the discarded evidence or cross-examination of officers who recovered or examined the evidence before it was discarded." United States v. Soriano, 401 F. Supp. 3d 396, 401 (E.D.N.Y. 2019); see also Barnes, 411 F. App'x at 369 ("Barnes could have challenged the DNA expert's results by way of cross-examination"); United States v. Rastelli, 870 F.2d 822, 833 (2d Cir. 1989) (finding defendant could have obtained comparable evidence to discarded tapes of his conversations by "us[ing] contemporaneously prepared F.B.I. summaries of the tape-recorded conversations" or "call[ing] as a witness F.B.I. agent [] who monitored the taped conversations").

Here, the defendants claim, without support, that when an email account "is canceled, all emails associated with that account are permanently deleted, making them unavailable for discovery or use in any legal proceedings." June 11 Ltr. at 5. But even if Jane Doe's account was permanently deleted, the defendants' claims ignore the other ways in which the material may be accessible, subject to procedural rules and caselaw. Presumably, copies of Jane Doe's correspondence exist with the other party who authored or received the correspondence – including One Taste Member-1 and One Taste Member-2 who appear to be communicating with OneTaste's attorneys and the defendants.

  D. <u>The Government Did Not Act In Bad Faith</u>

The defendants cannot show the government acted in bad faith. At the time of his communications with Jane Doe, Special Agent McGinnis—who is not an attorney—learned that

8

Jane Doe was receiving messages that she considered threatening. Specifically, in the summer and fall of 2022, as outlined above, Jane Doe repeatedly informed Special Agent McGinnis that she was receiving threatening or upsetting messages on her cell phone, on social media accounts and through the Email Account. On at least two occasions before the November 2022 email that is the subject of the defendants' motion here, Jane Doe informed Special Agent McGinnis without prompting that she planned to change her email address and phone number because of those communications. It was in this context that Jane Doe asked Special Agent McGinnis if she should "cancel or disband" the Email Account. Minutes later, Special Agent McGinnis then noted that he would do so, if the Email Account was "only bringing in emails like the ones attached." Exhibit A at 3. As this exchange demonstrates, the defendants' argument that Special Agent McGinnis "instructed" or "directed" Jane Doe to delete the Email Account is false. See June 11 Ltr. at 2, 4-5.

Contrary to the defendants' unsupported claims, the timing of the email correspondence in Exhibit A also makes clear that the prosecutors did not act in bad faith. Although the defendants baselessly allege that Special Agent McGinnis's so-called "instruction" was given with the prosecutors' "knowledge and explicit approval," June 11 Ltr. at 5, this claim is simply wrong. To be clear, Special Agent McGinnis had not yet consulted the prosecutors concerning the Email Account when he noted he would cancel the account if it was only a repository for upsetting messages. This is obvious from a cursory review the messages. At 7:34 a.m. ET on November 8, Special Agent McGinnis told Jane Doe that he would raise the emails with the prosecutors. Three minutes later, at 7:46 a.m. ET, Jane Doe asked about disbanding or canceling her account. Five minutes after that email (at 7:51 a.m. ET), Special Agent McGinnis replied. As this timeline demonstrates, Special Agent McGinnis had not yet had an opportunity to speak to the Assistant United States attorneys, and he did not in fact speak to any of the undersigned Assistant United States attorneys concerning Jane Doe's email account.

Moreover, at the time of this exchange, Special Agent McGinnis did not have knowledge that Jane Doe was in fact named in a civil lawsuit, was under an obligation to preserve materials for a civil lawsuit or whether the Email Account was subject to any kind of preservation requirement. Indeed, the emails themselves demonstrate that although Jane Doe was told by a third party that she had been sued, she had not received any documentation that she was actually included on a lawsuit. See Exhibit A at 3 ("Also I just learned [O]T has filed a lawsuit against me. I have actually not received anything from them.").

Accordingly, there can be no showing that the Email Account is unavailable as a result of any bad faith or an unintentional or even negligent act of destruction on the part of the government. Here, where the Email Account was not in the government's possession and there was no obligation to obtain it, no bad faith can be found. Cf., e.g., United States v. Suarez, No. 09-CR-932 (JLL), 2010 WL 4226524, at *9 (D.N.J. Oct. 21, 2010) (denying motion to suppress but granting motion for adverse inference jury instruction where FBI agents had deleted text messages between themselves and cooperating witnesses and finding, in refusing to suppress the evidence, that the government did not act in "bad faith in destroying the text messages" in their possession because the "government failed to instruct the FBI — and the FBI failed independently to recognize the need — to preserve potential Jencks material in anticipation of bringing criminal charges against Defendants").

9

Finally, the Court should reject the defendants' attempts to bolster their wholly meritless motion with several wildly inaccurate misrepresentations about Special Agent McGinnis and the government's conduct in both the June 11 Letter and the June 17 Letter.[8] First, they claim that Special Agent McGinnis was involved with a Netflix film related to OneTaste because an individual in the film noted she was on the phone with an FBI agent. June 11 Ltr. at 3. This is simply not true: Special Agent McGinnis had no involvement with that film or any other news or media report about OneTaste. Second, they claim that Special Agent McGinnis committed misconduct by reaching out to former OneTaste members or associates and offering them access to services for victims should they want or need them. June 11 Ltr. at 5-6; June 17 Ltr at 2-4. This is also baseless: offering potential victims the resources that are available to all victims and witnesses in criminal cases does not amount to misconduct.[9] Finally, the defendants claim that Special Agent McGinnis made misrepresentations about information he was provided by a financial institution concerning Ms. Daedone. June 11 Ltr. At 7-8. These allegations are utterly false, and the record makes clear that (1) Ms. Daedone did, in fact, instruct a bank to direct the issuance of the check for the account's balance to a co-conspirator who was not listed as a trustee on the account and (2) Special Agent McGinnis's representations were accurate to the best of his knowledge at the time they were made.

Notably, the defendants seek no relief from the Court as to these claims; they simply seek to portray the FBI and the prosecutors in a negative light in the public sphere. Doing so using baseless and unsubstantiated attacks is wholly inappropriate.

---

[8] The supplemental allegations in the June 11 and June 17 letters are entirely unconnected to the Email Account and their motion to dismiss the indictment on the ground of spoliation. Nor do these events –which in some instances allegedly occurred years ago – relate to any other legal basis for dismissal. Not only are the defendants' numerous supplemental motions untimely, given that they are being filed approximately five months after the Court's pretrial motions scheduling deadline, but they are meritless. The Court should not permit the defendants to file weekly motions to dismiss slinging accusations ungrounded from any credible legal framework.

[9] Over the course of this long-running investigation, Special Agent McGinnis reached out to hundreds of potential fact witnesses and asked them to participate in voluntary interviews about their experiences with OneTaste. During those conversations, as is his practice, Special Agent McGinnis described the services that are available to all victims in criminal cases should they require assistance.

III.  Conclusion

For the reasons set forth herein, the government respectfully opposes the defendants' motion to dismiss the Indictment on the basis of spoliation of the Email Account. The Court should deny this motion and the defendants' request for a further briefing schedule.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Gillian Kassner
Devon Lash
Kayla Bensing
Assistant U.S. Attorneys
(718) 254-6224/6014/6279

cc: Clerk of Court (DG) (via ECF and Email)
Counsel for Cherwitz and Daedone (via ECF and Email)