1     UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
2 - - - - - - - - - - - - - - X
           :
3 UNITED STATES OF AMERICA, :  23-CR-146(DG)
           :
4           :
    -against-    :  United States Courthouse
5           :  Brooklyn, New York
           :
6 RACHEL CHERWITZ and   :
 NICOLE DAEDONE,    :  July 3, 2024
7           :  11:00 a.m.
      Defendant.  :
8           :
 - - - - - - - - - - - - - - X
9

   TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
10    BEFORE THE HONORABLE DIANE GUJARATI
     UNITED STATES DISTRICT JUDGE
11

12      A P P E A R A N C E S:

13 For the Government: BREON PEACE, ESQ.
         United States Attorney
14         Eastern District of New York
          271-A Cadman Plaza East
15          Brooklyn, New York 11201
         BY: KAYLA BENSING, ESQ.
16          Assistant United States Attorney

17
 For the Defendant
18 RACHEL CHERWITZ:   LEVIN & ASSOCIATES, PLLC
          44 Court Street, Suite 905
19          Brooklyn, New York 11201
         BY: DUNCAN LEVIN, ESQ.
20

21 For the Defendant
 NICOLE DAEDONE:    BONJEAN LAW GROUP, PLLC
22          303 Van Brunt Street, 1st Floor
          Brooklyn, New York 11231
23         BY: JENNIFER BONJEAN, ESQ.
          ASHLEY COHEN, ESQ.
24

25

1                    A P P E A R A N C E S:   (Cont'd)

2

3    REPORTED BY:
     Kristi Cruz, RMR, CRR, RPR
     Official Court Reporter
4    kristi.edny@gmail.com

5    Proceedings recorded by computerized stenography.  Transcript produced by
     Computer-Aided Transcription.

6

7                       *      *      *      *      *

8

9

10          (In open court.)

11          THE COURTROOM DEPUTY:  All rise.  The Honorable

12   Diane Gujarati is now presiding.  You may be seated.

13          *United States of America v. Rachel Cherwitz and*

14   *Nicole Daedone.*

15          Is the Government ready?

16          MS. BENSING:  Yes.  Good morning, Your Honor.

17          Kayla Bensing for the Government.  I'm joined by

18   FBI Special Agent Dan Schmidt.

19          THE COURT:  Good morning to both of you.

20          THE COURTROOM DEPUTY:  For the defendants?

21          MR. LEVIN:  Good morning, Your Honor.

22          Duncan Levin for Ms. Cherwitz.

23          MS. BONJEAN:  Good morning, Your Honor.

24          Jennifer Bonjean, B-O-N-J-E-A-N, on behalf of

25   Ms. Daedone.

1        MS. COHEN:  Good morning, Your Honor.

2        Ashley Cohen, C-O-H-E-N, on behalf of Ms. Daedone.

3        THE COURT:  Good morning to all five of you.

4        So we're convened today for a conference.  I had

5   scheduled this conference back on June 20th to address the

6   parties' then-recent filings, and I reference the filings at

7   ECF numbers 95 through 100.  Since the time I scheduled the

8   conference, of course, there have been additional filings,

9   including the filings at ECF numbers 104 and 105.

10       Let me start by just addressing the defendants.

11  My understanding of what you're asking for at this time is

12  for a briefing schedule to be set for an anticipated second

13  motion to dismiss.  Do I have that right?

14       MR. LEVIN:  Yes, Your Honor.

15       MS. BONJEAN:  Correct, Your Honor.

16       THE COURT:  Okay.  So why don't we start there,

17  and let me just start with the issue of timing.  Of course

18  you're new counsel in this case, but this case did have a

19  motion to dismiss filed, argued, and decided before now.

20  And so what I want to know is:

21       Why now are you bringing another motion to

22  dismiss, and why couldn't this anticipated motion that you

23  set forth and described in your submissions have been

24  brought earlier?  I think there's some suggestion that maybe

25  certain information you didn't have, but I think at least at

1  the last conference, or maybe it was even two conferences

2  ago, the Government I think was taking the position that you

3  had certain information back in the fall. So I just want to

4  hear you first on the timing.

5      And you're welcome to stay seated if that's

6  easier. Just speak into the microphone.

7      MS. BONJEAN: Thank you, Your Honor.

8      As the Court is aware, the letters that were filed

9  addressed a couple different arguments. There's one that's

10  premised on this privileged document. And I know the

11  Government has taken the position, oh, they had the

12  privileged document.

13      The problem with that is that this privileged

14  document was produced in about 200,000 pages of paper. It

15  was not produced as a PDF; it was produced as a photograph.

16  It admittedly was not discovered until recently. It could

17  not have been searched. It was sandwiched between hundreds

18  of thousands of pages of paper. And, frankly, a lot of that

19  paper was just documents that were produced back to the

20  defendants that were subpoenaed from the OneTaste

21  organization. So that document was admittedly discovered a

22  little late, but through no fault of the defendants and

23  through no fault of counsel. Even if it was discovered a

24  little late, it doesn't amount to a voluntary waiver of

25  attorney/client privilege.

1       So I think we have brought it timely, to the

2  extent that we brought it as soon as we discovered it.  I

3  think it was raised by prior counsel as they were sort of

4  going out and we were coming in.  I know that the Government

5  asked me and asked Mr. Duncan what our position was on it

6  and we immediately provided our position on it.  As the

7  Court is aware, since discovering that document, there's

8  been additional material, additional information that's come

9  to light about violating the attorney/client privilege and a

10  pattern of it, as well.

11       So there's a number of issues that we believe need

12  to be addressed in motion practice, potentially an

13  evidentiary hearing, because some of the Court's decisions

14  are going to turn on factual determinations, and we think it

15  needs too be done right and we need to preserve it; not only

16  make a record for the purpose of the Court's decision, but

17  for any potential interrogatory appeals, to the extent that

18  might be possible, because it is a game-changing argument

19  from our position, as well as down the line.

20       So I understand the Court's question, but we have

21  shown diligence.  And, frankly, I think the better question

22  is why was that important document sandwiched between all

23  these other materials and why was the Government -- why

24  wasn't that, you know, immediately sent to a TAINT team.

25  Those are the things the Court needs to decide and we

1   believe should be done in formal motion practice.

2        As for some of the other issues, those have just

3   come to light, these other misconduct issues.

4        THE COURT:  Tell me more specifically about

5   timing.  Before you get to what you were about to say, you

6   mentioned something about additional information coming to

7   light on the attorney/client privilege issue.  So I really

8   am interested in the timing here, so as much detail as you

9   can give me on that, I'd appreciate it.

10       MS. BONJEAN:  Yes.  So it recently came to light

11  that, for instance, in addition to this document, there were

12  interviews conducted with corporate counsel for OneTaste.

13  Government surely knew that was corporate counsel for

14  OneTaste when they interviewed him.

15       THE COURT:  And you're saying "came to light."

16  Can you give me dates?

17       MS. BONJEAN:  Well, we still don't know, frankly,

18  Judge.  With all due respect, the Court denied the Bill of

19  Particulars.  We've gotten so little discovery and --

20       THE COURT:  But you're wanting to bring a motion

21  based on information.  All I'm trying to do now is to find

22  out when you got the information, because again, as I said,

23  of course, and as you know, there was a fully briefed, fully

24  argued, fully decided motion to dismiss.  So what I'm trying

25  to figure out is, I think your position is you could not

1    have brought the motion you're anticipating bringing now at

2    an earlier time, and I just want to understand that.  I

3    don't want any generalities.  I really do want specifics.

4              MS. BONJEAN:  Yes.  Our position is we could not

5    have brought it earlier.  The Jacobowitz interviews were

6    just discovered in the last -- I think last month or two.  I

7    have to get the exact date.  I'm happy to do that for the

8    Court.

9              We also don't even have the Jacobowitz interview,

10   so we need those.  To the extent that that will dictate what

11   the attorney/client privilege issues are and put those into

12   focus, we still don't even have those.  So there probably

13   needs to be discovery on that before we can actually fully

14   brief it for the Court's satisfaction.

15             But either way, the Jacobowitz interviews, we

16   discovered information in the last month or two that relates

17   to the Government piercing the attorney/client privilege,

18   clearly knowing that they were doing it, and the extent to

19   which they relied on those interviews or relied on any

20   information pre-indictment is material that, again, may be

21   the subject of a hearing.

22             Additionally, and I think we addressed this in our

23   letter, as well, the material related to the billing logs,

24   as well.

25             MR. LEVIN:  Right.

1          MS. BONJEAN:  There was material that was

2     discovered in there, in these billing logs that, again,

3     contained attorney/client privilege information.  Recently,

4     in the last month I think, we've obtained those information,

5     and that is also -- so there's three areas of

6     attorney/client privilege.  Now, admittedly, the document

7     that was marked attorney/client privilege is sort of the

8     centerpiece of this argument.

9          But again, I think we're bringing it now because

10    it could not have been brought earlier because the

11    Government concealed it in a document dump.  That's why.

12    And I know they may argue that that's not what happened.

13    But as far as we can tell, that is what happened.  When you

14    send over a screenshot of a JPEG and there's no ability to

15    search it and hundreds of thousands of pages of paper, it's

16    going to take a minute to find it.  It was not brought in

17    the original motion to dismiss, which it wouldn't have been

18    appropriately brought in the original motion to dismiss by

19    prior counsel because the argument was a very different

20    argument.  That was an argument based on the indictment,

21    based on the sufficiency of the indictment.  This is an

22    entirely different legal theory.  It should be brought in a

23    separate motion, argued in a separate --

24          THE COURT:  Well, but there was a scheduled

25    separate motion.  It could have been brought in a separate

1   motion on the schedule set, right?  I think what you're

2   saying is not really responsive directly to what I'm asking.

3           MS. BONJEAN:  Yes, I understand what the Court's

4   position is on that --

5           THE COURT:  Well, it's a question, it's not a

6   position yet.  I'm really trying to understand why this

7   couldn't have been brought.  We already have a trial date,

8   there's obviously a motion in limine schedule, but you're

9   talking about bringing a motion to dismiss again.  I'm

10  trying to understand it.  You are helping to clarify your

11  position today and I understand that.

12          MS. BONJEAN:  Judge, you know, I think again to

13  sum up on why it couldn't have been brought earlier is

14  because the Government concealed it.  That is our position.

15  Even if the Government had not concealed it and new counsel

16  came in and, through their own determination, thought that

17  the way to protect the defendants' Sixth Amendment right to

18  effective assistance of counsel was to bring those motions,

19  then arguably, where the stakes are as high as they are, I

20  assume the Court would show us the discretion to allow us to

21  do so.  That is extremely important given, again --

22          THE COURT:  Right.  But I do want to make sure

23  that everybody is on the same page here, that holding back

24  arguments just to get another bite at the apple is not

25  appropriate.  I'm not hearing you say that, but I do think

1   everyone should be on the same page that we're not going to

2   have, you know, rounds and rounds and rounds of motions that

3   are supposed to be brought at a particular time or if new

4   counsel comes in or if new counsel gets a new investigator

5   or whatever it is.  I mean, this case is going to proceed in

6   the way cases proceed in Federal Court.

7            So I hear you, but I just want to make sure that

8   everybody is doing what they need to be doing diligently at

9   the appropriate stage of the case.  And I do appreciate what

10  you're telling me today.

11           Go ahead, Mr. Levin.

12           MR. LEVIN:  Thank you.

13           Your Honor, I just wanted to also chime in a

14  little bit to make sure that the Court is aware this is not

15  a procedural quibble.  This is not an effort to try to delay

16  or -- we're on a track and we're not trying to delay any of

17  this.  But this is a major issue that deals --

18           THE COURT:  I wasn't suggesting it was a delay.

19           MR. LEVIN:  Well, I just want to make sure that

20  the Court is understanding of why this is such a big deal

21  and why this is a problem.  I'm sure the Court is aware --

22           THE COURT:  I've read all of your submissions, so

23  of course I'm aware.  But I'll hear you out on anything you

24  want to tell me now.

25           MR. LEVIN:  Thank you.

1      But with respect to the other part of this, this

2  is, I have to say, to quite shocking that the FBI would

3  direct Ms. Blank to delete her email account --

4      THE COURT:  Well, that's your characterization,

5  right?  I've read your papers; I understand your

6  characterization.  I think the Government probably would

7  have a different characterization of that.

8      But why don't we stick to the timing issue for

9  now, and then I'll hear you on some other issues.

10      MR. LEVIN:  I can address the timing issue.

11      THE COURT:  Go ahead.  Why don't you do that.

12      MR. LEVIN:  We brought our letter to the Court's

13  attention the day after that surfaced in litigation.  Let me

14  just be clear about that.  We couldn't have brought it

15  earlier because when it surfaced in litigation, we stayed up

16  all night to write a letter to the Court, to Your Honor, and

17  filed it the next day.  There is no delay.  In fact, that

18  was probably the speediest letter that has ever been written

19  to the Court, and it deals with a very major issue that

20  surfaced.

21      In that litigation which is pending in front of

22  Ms. Byrdsong in Los Angeles Superior Court, Ms. Blank had

23  attorney the position, through her attorneys, that she

24  destroyed the evidence at the direction of the FBI.  That is

25  her characterization of it.  It is ours also, but that is

1   her characterization in front of the Court.

2          Now, I have to say that is not only a big deal,

3   but it is timely brought.  We brought it the minute it was

4   surfaced in litigation, we brought it to the Court's

5   attention.  That is something that could not have been

6   brought before, and it is a major problem that dovetails in

7   not only with the Government's abuse of the attorney/client

8   privilege, but also other data points that we've brought to

9   the Court's attention about the misconduct of Agent

10  McGuiness, who also has been victim shopping in this case,

11  as we laid out in our letter, has been participating in a

12  Netflix documentary prior to the indictment.

13         And as for the discovery of the document itself,

14  this privileged document, this is 200,000 pages of material

15  that were reviewed with more earnestness, I will say, when

16  new counsel came in after the motion to dismiss was fully

17  briefed and Your Honor denied it.  So at that point it was

18  discovered, and it was brought very promptly to the

19  Government's attention.  Paul Pelletier, who was at the time

20  corporate counsel for OneTaste, immediately brought it to

21  the Government's attention.

22         There are emails that we've attached for the

23  Court, and Mr. Pelletier is bringing a 41(g) that I believe

24  is going to be pending in front of Your Honor on the return

25  of that property, and the Government took an immediately

1   very cavalier attitude towards it with him and said, well,

2   we're going to have a TAINT team put in 30 months after they

3   had this document.  They had this document 16 months prior

4   to the indictment.

5           And so, yes, is the timing an issue?  It's an

6   issue that could not have been brought more timely by

7   corporate counsel for OneTaste, who immediately demanded it

8   back.  We've given the Court all of the correspondence back

9   and forth.  I don't think there's any way we could have

10  briefed this more quickly, brought this to the Court's

11  attention more quickly, or incorporated it into prior

12  motions to dismiss.

13          We are asking for the right to be heard on this.

14  We are not asking for anything more than that.  This is not

15  a procedural trick.  This is -- they're trying to put our

16  clients in jail.  This is not a procedural trick.  This is

17  asking for fundamental fairness --

18          THE COURT:  Right.  I think I started by saying

19  you're asking for a briefing schedule on this, right?

20          MR. LEVIN:  Yes, Your Honor.

21          THE COURT:  I know what you're asking for.  But I

22  appreciate you emphasizing your position that this couldn't

23  have been brought any more quickly.  That's helpful.

24          MR. LEVIN:  My position on it is that not a single

25  day went by before we brought it to the Court's attention.

1    And not only that, since filing that letter on July 11th,

2    more people came forward that day in response to our

3    litigation and we filed another letter the next day.  This

4    is not one issue that we're asking to brief.  We're asking

5    to brief not just the use of this privileged --

6              THE COURT:  No, I understand.  Your letters have

7    been probably almost as long as my briefing rules allow.

8    You've given me a lot of information.  I understand where

9    you're coming from.  I really did want to focus just on the

10   timing, and I think you've answered my question.

11             MR. LEVIN:  Thank you, Your Honor.

12             THE COURT:  Because I don't think it's

13   particularly productive to get so in the weeds on the

14   substance now.  I think there will be a time for that soon.

15             But let me turn to the Government just on the

16   timing issue, and then I will ask about some other issues.

17   But I do want to focus on the timing issue.

18             MS. BENSING:  Thank you, Your Honor.  And I'll

19   stay seated, with the Court's permission.

20             THE COURT:  Yes.

21             MS. BENSING:  So on the timing issue, the

22   Government disagrees with the characterization that this

23   could not have been brought sooner.  I think we outlined

24   this in our letter for the Court.

25             But with respect to the document at issue, far,

1    far from any kind of concealment or burying, the Government,

2    specifically at ECF docket number 43 on September 18th of

3    2023, identified the document at issue as screenshots of a

4    document provided by Individual No. 13, whose identity will

5    be disclosed to counsel separately.  So I understand that

6    there are documents in this case, as there are in many cases

7    of this type and this magnitude.  But I think the Government

8    specifically identified where it came from.

9            I mean, there was reference by counsel to the fact

10   that a number of documents were produced to the Government

11   by OneTaste and the Government subsequently produced those

12   to the defendants.  In this case, the Government actually

13   highlighted that the document came from a different

14   individual in its discovery letter of Septembers of 2023.

15           As to the Jacobowitz interview, OneTaste has

16   not -- as we indicated in our letter, OneTaste, the

17   corporation, has not even asserted privilege over that.  But

18   if the Court wants to address the timing of that and

19   believes it's appropriate to do that, the defendants were on

20   notice of that interview as of October 2nd of 2023.

21   That's --

22           THE COURT:  I think what your adversary, at least

23   one of them, has said is that they don't know -- they don't

24   have --

25           I think the phrase you used was I don't have the

1    interview.  Was that --

2         MS. BONJEAN:  Yes, Judge.  We were aware, but we

3    don't know the substance of it.  It's hard to litigate in

4    the blind.

5         MS. BENSING:  And of course, Your Honor, they're

6    not entitled to that.  That would be part of potential 3500

7    productions if the Government even intends to rely on that

8    witness or call that witness in any way at trial.  The

9    Government can of course, I think as we noted in our letter,

10   provide the Court with an in camera copy of that interview

11   if the Court thinks it's appropriate.

12        But again, the Court has the Government's standing

13   arguments, and of course the Court is aware that OneTaste

14   has not asserted privilege over that interview or statements

15   made by that individual in that interview, and that

16   individual was interviewed in a factual capacity, not in his

17   capacity as a lawyer.

18        So on the timing issue, they've had these for

19   seven and eight months, respectively, by the time that they

20   emailed the Government with any kind of issue in terms of

21   the interview and the document.  And the Court is aware of

22   this, but it is the client's responsibility to ensure

23   continued confidentiality of potential attorney/client

24   communications.

25        I did want to direct the Court to a very recent

1   ruling on this very related issue in a case pending before

2   Judge Komitee, *United States v. Watson*.  The docket is

3   23-CR-82.  And there, Judge Komitee ruled that the failure

4   to assert any kind of privilege more than six months after a

5   document was produced in Rule 16 discovery did constitute

6   waiver.

7           So the defense is using the word "discretion" in

8   terms of the discretion of the Court allowing them to bring

9   the motion.  Of course, the defendants did not comply with

10  the Court's motion schedule.  But I think a related question

11  of timing goes to the Government's waiver argument.

12          THE COURT:  I'm going to ask all parties to talk

13  about the issue of a privilege.

14          Is there more wanted to tell me?

15          MS. BENSING:  Simply that they've had these for

16  many, many months.  It was in no way concealed or buried.

17  In fact, it was specifically highlighted as to where it came

18  from in the discovery letter.  And so I think on the timing

19  issue, they certainly could have brought this even three or

20  four months, in January, when the Court 's deadline was for

21  filing motions.

22          THE COURT:  Okay.  Let me turn a little bit more

23  substantively now to the issue of privilege and who can

24  assert privilege here.

25          I think I'm going to start with the defense.

1      MS. BONJEAN:  Thank you, Your Honor.

2      First of all, I would point out that OneTaste

3  asserted a privilege to these documents.  My client --

4      THE COURT:  Let me just have you be really

5  specific about which documents, because I think we're

6  talking about interview and then separately let's call it

7  the screenshot.

8      MS. BONJEAN:  Yes.

9      OneTaste asserted a privilege to all of the

10  material that they were producing to the Government,

11  including the screenshot, in February of 2021.  Our position

12  is our client, our clients, as the Government would call

13  them, as intricately involved with OneTaste until even after

14  my client formally was not involved, would have been a

15  corporate agent, essentially, even by the Government's own

16  allegations in their indictment as well as admissions

17  they've made in other proceedings.  So that was an assertion

18  of the attorney/client privilege.  When OneTaste made it, my

19  client made that privilege.

20      I want to be clear.  I think it is a complicated

21  issue --

22      THE COURT:  In 2021, you're talking about?

23      MS. BONJEAN:  Yes.  I want the Court to understand

24  our position is there was an assertion to that document and

25  many documents long, long ago on behalf of OneTaste, but

1    also on behalf of our clients.

2            Now, as to the question --

3            THE COURT:  Let me stop you on that one, because

4    what you're saying obviously is consistent with what's in

5    your papers.  No surprise there.

6            MS. BONJEAN:  Right.

7            THE COURT:  But do you have case law that

8    supports -- I know your position is that the Government is

9    saying that your clients are inextricably intertwined with

10   the company.  But do you have case law that suggests that

11   under these circumstances, your respective clients can

12   assert privilege?

13           MS. BONJEAN:  I sure do, Your Honor.

14           THE COURT:  Okay.

15           MS. BONJEAN:  I think the United States Supreme

16   Court actually has pointed out in *Upjohn* and there are

17   numerous cases from the Eastern District and Southern

18   District, and even the Second Circuit has said this, that

19   the question really isn't about what their formal identity

20   was within the company, whether or not they were the CEO,

21   any of those things.  It really turns on whether they can be

22   fairly equated, and that is a very fact-intensive question.

23           THE COURT:  That's what I'm asking, though, is if

24   you have case law and analogous facts, and obviously every

25   case is different.  But that's what I'm going to be very

1    interested to be seeing.

2              MS. BONJEAN:  Yes, Your Honor.

3              So we cited some cases in our --

4              THE COURT:  Yes, I saw what you cited.  Do you

5    have anything more that's analogous?

6              MS. BONJEAN:  Yes, Judge, I do.

7              I would draw the Court's attention to the case of

8    Export-Import Bank of the *United States v. Asia Pulp & Paper*

9    *Company*, the cite there is 232 F.R.D. 103, the pinpoint cite

10   is 113, that's from the Southern District of New York 2005.

11             I would also point the Court's attention to *Viacom*

12   *Incorporated v. Sumitomo Corporation*, which is 200 F.R.D.

13   213, pinpoint cite 219, another Southern District case 2001.

14             I would point the Court to *In Re Bieter*, which is

15   an Eighth Circuit case, an important Eighth Circuit case, 16

16   F.3d 929, pinpoint cite 937.

17             And of course I would also point the Court to the

18   United States Supreme Court decision in *Upjohn*, where there

19   the Court found that low level or mid level employees maybe

20   didn't have standing to assert a privilege.  But the

21   question of whether someone was a corporate agent such that

22   they could potentially obtain standing because they were

23   making decisions or were acting on behalf of the

24   corporation.  It doesn't turn on whether they have a formal

25   position, but whether or not they are essentially at one

1    with the company or that they can be fairly equated.

2         THE COURT:  But at what time as relates to this

3    case?

4         MS. BONJEAN:  So, Judge, it doesn't matter whether

5    it's at the time that they're employed by the company.  What

6    matters -- for instance, there's multiple cases where --

7         THE COURT:  I'm sorry.  Let me be more clear,

8    then.

9         MS. BONJEAN:  Yes.

10        THE COURT:  There's two different time inquiries,

11   right?  There's the time that the privilege is being

12   asserted, and then there's the time where you think that a

13   particular person has the right to -- it's their privilege

14   as opposed to somebody else's privilege.

15        MS. BONJEAN:  Right, Judge.  I think that if you

16   look -- I think the Government's position is when the

17   document was authored in this case, when the individual was

18   seeking legal advice or the corporation was seeking legal

19   advice.  And I think -- I don't think they quarrel with

20   that.  I think we would agree with that.

21        And then the question of whether or not the

22   defendants themselves have standing turns on what

23   essentially their role was.  And I would point out that even

24   contractors, people who come -- and I can give the Court

25   some case law on that as well -- contractors, people who are

1  not even employed by a company can obtain the privilege

2  depending on what their role is.  If they are providing

3  information for the purpose of getting advice from an

4  attorney on behalf of the organization, they can assert the

5  privilege.

6          I don't want to go too far down this road because

7  it's a little dangerous, because what the Government is

8  asking us to do is essentially waive our clients' Fifth

9  Amendment rights to set forth to the Court what their

10  specific role was in connection with the creation of this

11  document, what their specific role was at the time the

12  document was created.  And I think that really needs to be

13  done in an ex parte fashion, frankly, because they're going

14  to turn around and try to use it at a potential jury trial

15  and say, oh, they made these admissions.

16          Now, we believe that standing is a nonissue.  It's

17  a nonstarter because the Government is taking a position

18  that Ms. Daedone and Ms. Cherwitz are essentially OneTaste.

19  They are OneTaste.  They have made that position.  In fact,

20  a U.S. Attorney in one of the California cases went on the

21  record and said specifically to the Court there they are

22  senior OneTaste members.  To this day, that is the

23  Government's position.  They believe to this day that these

24  are senior OneTaste members.

25          So at the time of the creation of this document

1    that ultimately was produced in a screenshot, it's our

2    position that the Government has already conceded standing

3    even if it was implicit.  If they want to take the position

4    that the defendants had no involvement with OneTaste and

5    don't even have any right to standing, I think that would be

6    contrary to their indictment.  And we can talk through that.

7    I think that would be an interesting position to take.  But

8    they have made admissions along the way.

9           Now, if the Court believes that the standing issue

10   is not resolved yet, that's a highly fact-intensive

11   question.  It probably should be done, to some degree, in an

12   ex parte fashion because it is going to require our clients

13   to make assertions, factual assertions that they otherwise

14   would not be obligated to make, and that's information the

15   Government, frankly, is not entitled to under the Fifth

16   Amendment.

17          Again, it's disingenuous to say that they are

18   closely related enough to OneTaste such that they have

19   executed a forced labor scheme by using OneTaste even beyond

20   the point at which Ms. Daedone formally left OneTaste, but

21   not closely associated enough to have standing to assert

22   privilege over a document that was created during the

23   alleged conspiracy.  That is inconsistent.

24          So I don't know if that answers the question.

25          THE COURT:  It tells me your position.  I don't

1  know if it answers the ultimate question.

2          MS. BONJEAN:  And I think that's why motion

3  practice is so important.  There's a whole body of case law

4  around even contractors, people who have never been

5  associated in a formal fashion with an organization having

6  standing.  So I think it's a fact-intensive question.

7          THE COURT:  Let me turn to the Government on

8  this --

9          MR. LEVIN:  Judge, can I be heard also?

10          THE COURT:  Yes, go ahead.  I'm sorry.

11          MR. LEVIN:  I adopt everything, but I also wanted

12  to add a few things.

13          THE COURT:  Go ahead.

14          MR. LEVIN:  I somewhat reject this entire

15  framework of looking at the standing issue without looking

16  at what this document is and the way in which it has

17  infected this case.  And I don't believe the Court has seen

18  this document or really knows what the document is.

19          THE COURT:  The screenshot?

20          MR. LEVIN:  Yes.  We've put a snippet into our

21  letter, but I don't believe the Court has seen what this

22  document is.  Suffices to say, having gone through the

23  discovery myself now also, this document was one that was

24  prepared for counsel.  Everybody has asserted a privilege;

25  my client, Ms. Daedone, OneTaste is bringing a 41(g) for it.

1    Everyone's asserting a privilege about --

2            THE COURT:  You may reject the framework of

3    standing, but that's my question.  So if you want to address

4    that, why don't you do that.  Because you can reject

5    whatever you want, but ultimately I'm going to have to get

6    my questions answered here.

7            If you want to add to what your colleague has said

8    on the standing issue, please do.  If not, I'm going to turn

9    to the Government on that issue.

10           MR. LEVIN:  I agree.  Thank you, Your Honor.

11           Everything that Ms. Bonjean said, I adopt and I

12   have no issue.  It's correct.

13           I wanted to add, however, just some context when

14   it comes to what this is --

15           THE COURT:  I don't think I need that right now.

16   I think I have enough context.  But really, if you have

17   something more to say on either case law relating to

18   standing or factually-analogous scenarios, I'll hear you out

19   on that.  If not, I'm going to turn to the Government now.

20           Go ahead.

21           MS. BENSING:  Thank you, Your Honor.

22           So on the standing question, I think the arguments

23   that were just made by defense counsel reflect a

24   misunderstanding of the law on attorney/client privilege.

25   As the Court is aware, the attorney/client privilege only

1   protects communications between a client and his or her

2   attorney.  The defendants are bringing this motion.  They

3   have the burden of establishing privilege.

4         I think the Government's standing argument

5   reflects that there has been no demonstration whatsoever

6   that there is any kind of attorney/client privilege that is

7   between these defendants and -- I have not seen the

8   document, Your Honor, so some attorney who was potentially

9   involved in the document at issue.  There has been no even

10  assertion of any kind of attorney/client relationship that

11  could form the basis of any kind of violation of a

12  Constitutional right that they have.  Not that the company

13  has, not that somebody else has --

14        THE COURT:  But you understand their argument,

15  right?  The argument which they've repeated now, but of

16  course is in their papers, is that the Government is taking

17  the position, and of course I'm paraphrasing here, but that

18  the two defendants are inextricably intertwined with the

19  company, and therefore somehow that conveys standing.

20        Again, I'm just summarizing and not putting words

21  exactly into your mouth.

22        Do you have a response to that?

23        MS. BENSING:  Yes.  And so I would again just

24  return -- I have not reviewed the case citations that I just

25  wrote down, Your Honor, so I don't know if that contains

1    something that might be relevant to this.

2              But as the Government put in its briefing on this,

3    when the corporation is the privilege holder -- which again,

4    I don't even know if OneTaste is the privilege holder, but

5    that's the subject of a different dispute, I think -- but

6    where a corporation is a privilege holder, which I think is

7    what they are saying here, is that OneTaste was the

8    privilege holder, and that by virtue of their positions at

9    OneTaste they are somehow also the privilege holder.  That's

10   just --

11             THE COURT:  I think that's their argument, right?

12             MS. BONJEAN:  Yes, that's correct, Your Honor.

13   I'll let the Government finish its position before I --

14             MS. BENSING:  Yes, I will finish.

15             And so the black letter law on this is that the

16   corporation's current management is the, I guess, entity

17   that controls the privilege, not the individual employee.

18   And as the Court is well aware, in any kind of case

19   involving a corporation, the corporation and the employee's

20   interest, even when they're senior management, diverge.  And

21   so that's the basis for this entire body of law involving

22   corporations and former employees of corporations.  And the

23   Government really set that out I think in our letter at

24   page 4, Your Honor, that we filed at ECF 97.

25             THE COURT:  Okay.  Let me turn -- I'm sorry.

1          Ms. Bonjean, you wanted to respond?

2          MS. BONJEAN:  Just to point out one thing, Your

3    Honor.  I think the Government's position on whether this is

4    black letter law is gravely misplaced.  I think it is not

5    black letter law.

6          But putting that aside for a moment, the

7    Government doesn't know what -- as we stand here today, they

8    don't know what involvement the defendants had in the

9    creation of this document.  That's because, first, they're

10   not entitled to know that right now.  That would require

11   them to waive a Fifth Amendment privilege.  But would their

12   analysis be different if the defendants participated in the

13   creation of the document?  So those are facts that need to

14   be resolved.  I am not suggesting as I sit here today that

15   that's, in fact, the case, but I'm also not suggesting it's

16   not the case.

17         Again, I want the Court and the record to be

18   clear, I do not wish to waive any Fifth Amendment rights of

19   my client, but they're taking a position based on an

20   assumption about the facts; how the document was created,

21   who was involved in the creation of the document, who

22   retained these lawyers, the purpose.  And all of those

23   things go to whether or not the defendants have a privilege

24   or standing to bring this, which is unresolved at this

25   point.

1          MS. BENSING:  If I can just briefly respond.

2          THE COURT:  Yes.

3          MS. BENSING:  I did want to address the request

4    for ex parte briefing on this.

5          THE COURT:  Yes.

6          MS. BENSING:  This is a defense motion that has

7    been brought.  The same with a motion to suppress, Your

8    Honor.  The defense has an obligation to provide the Court

9    with the facts necessary for the Court to make a

10   determination.  Here, they have not put forward any kind of

11   assertion of an individual attorney/client privilege that is

12   giving rise to any kind of individual Constitutional right

13   that they have.

14         And so the Government would certainly oppose any

15   request for ex parte briefing on this.  I don't think that's

16   appropriate insofar as the Court wants to see a copy of the

17   document that the parties are litigating over whether or not

18   it's privileged, and the Government is walled off from that.

19   So we could have our TAINT AUSA provide that to the Court if

20   the Court wishes.

21         THE COURT:  Is your TAINT AUSA going to be the

22   person who is -- if I set a briefing schedule, is going to

23   be responding?  Who is going to be responding to this motion

24   that's anticipated?

25         MS. BENSING:  Well, I think that could depend on

1    the scope of what the Court allows in terms of what the

2    motion will cover.  If it's going to be litigating whether

3    or not the document is even privileged, the prosecution team

4    on this case doesn't have access to that, and so we would

5    not be able to respond to that.

6            If the Court is going to allow litigation on

7    questions of standing or waiver, things that are kind of

8    entirely separate from the document, because it's the

9    Government's position that the defendants have no

10   Constitutional rights --

11           THE COURT:  I think what your adversary is saying

12   is it's not separate.  They're taking a position it's not

13   separate from the document, the issues of standing and

14   waiver.

15           Is that correct?  That's your position?

16           MS. BONJEAN:  That's correct, in part, yes.  To

17   simplify it, yes, yes, Your Honor.

18           MS. BENSING:  I think there are two questions,

19   Your Honor:  Is the document privileged, and whether or not

20   these defendants have any right to litigate that.  And so I

21   understand that there is a Rule 41(g) motion that was filed

22   on a miscellaneous docket involving OneTaste, and I think

23   the Court could have questions, if the Court assumes

24   jurisdiction over that case, about whether or not the

25   document is privileged.

1      But I think there are kind of -- I think that's

2  putting the cart before the horse, and I think the initial

3  question is whether or not these defendants have any

4  entitlement to the relief that they're seeking based on a

5  violation of their Constitutional rights.

6           THE COURT:  Let me ask a separate issue, something

7  the Government raised in its brief, or in its letter, and

8  the defense responded to.  The issue of whether particular

9  individuals' names should be used or Jane Doe should be used.

10          Why don't you respond to what the defense has

11  said, that the name's out there.

12          MS. BENSING:  Yes, Your Honor.

13          I think the Government, under the Crime Victims

14  Rights Act, has an obligation to treat victims with fairness

15  and with dignity.  I don't have the exact statutory language

16  in front of me.  It's often the case that victims, through,

17  for example, civil lawsuits filed by OneTaste, not filed by

18  the victims, that their names may be out there in sort of a

19  public sphere in connection with that.  I think that's very

20  different than naming somebody has a victim in a federal

21  criminal case, and we have obligations as the Government

22  and, I think the Court does as well, under the Crime Victims

23  Rights Act to protect the privacy and the dignity of those

24  victims.  And so even if the name may be out there in a

25  different sphere --

1     THE COURT:  But do you have case law that says if

2  the name is out there publicly, that you need to use a Jane

3  Doe in a criminal case?

4     MS. BENSING:  I think that this has come up in

5  prior cases, Your Honor, but I would want to --

6     THE COURT:  Okay.  Well, you request in your

7  letter -- I will deny it without prejudice.  If you have

8  some kind of case law you want to bring before the Court or

9  more, I will certainly hear you on that.  But since you did

10 make the request, I wanted to address that now.

11    MS. BENSING:  Thank you, Your Honor.

12    THE COURT:  I don't know that you need to be heard

13 on that.  I think your position is pretty clear from your

14 submissions.

15    So I take the Government's position to be that you

16 don't believe that the defendants should be permitted to

17 bring another motion to dismiss at this stage; is that

18 right?

19    MS. BENSING:  That's correct, Your Honor.

20    THE COURT:  Okay.  And obviously you take the

21 opposite position, the defense, I'm sure.

22    I am going to allow briefing here.  That does not

23 mean the Government can't put its arguments in a response

24 that this motion is untimely and should be denied for that

25 purpose.  But notwithstanding the fact that, as everybody

1   knows, there was a motion to dismiss that was already

2   denied, and of course keeping in mind that the Second

3   Circuit has stated that dismissal of an indictment is an

4   extraordinary remedy reserved only for extremely limited

5   circumstances implicating fundamental rights, which was all

6   discussed on the record in connection with the last motion.

7            But I am going to allow briefing.  The Government

8   is correct that if you're bringing a motion, you do have the

9   burden.  So I will expect that you will put as much law as

10  you think is relevant and will be helpful to the Court,

11  because I know your letters -- and I appreciate that you

12  were trying to get them in quickly -- your letters in some

13  places speak in generalizations and sort of assumptions and

14  suggesting that certain things are the only assumption that

15  there could be, or the only inference.

16           I really want to have the law and the facts and

17  the timeline very clearly spelled out, so speaking in

18  generalities is not going to be particularly helpful.  And

19  if I need to come back to you to get more information,

20  that's what I'm going to do.  So I would prefer that you put

21  whatever before the Court you think you want the Court to

22  have.  Nobody's waiving anything.  I'm going to allow

23  briefing and we will address the issues that are raised.

24           So in the first instance, I will have the

25  defendants' anticipated motion to dismiss due July 17th.

1   Government's opposition due July 31st, and any defense reply

2   due August 7th.

3          I'm asking to the defense, do you anticipate that

4   you will be continuing to file things jointly?

5          MS. BONJEAN:  I believe we will.  There may be

6   factual issues that are different for the defendants, but we

7   will point that out to the Court.  I believe -- I don't want

8   to speak for Mr. Levin, but I believe so.

9          THE COURT:  Mr. Levin, do you want to speak for

10  yourself?

11         MR. LEVIN:  Yes, Your Honor.  I anticipate the same.

12         THE COURT:  Okay.  Because if there were things

13  that you needed to brief separately, I would want a

14  consolidated opposition.  I don't think we need to have

15  multiple briefs.  I think the Government could consolidate.

16  But it sounds like maybe we'll be getting one opening brief,

17  one response, and one reply, if that.  And all briefing has

18  to comply with my individual practice rules, including with

19  respect to page limits.

20         Okay.  I don't think there's anything else we need

21  to take up today.

22         Ms. Bensing, you look like there's something you

23  want to take up.  Go ahead.

24         MS. BENSING:  Can I just ask one clarification?

25         THE COURT:  Yes.

1      MS. BENSING:  Is the Court allowing additional

2   briefing on both the privilege and spoliation pre-motion?

3      THE COURT:  I want one motion.  I want one motion

4   that's raising whatever it is the defense wants to raise,

5   because I don't want to be doing this in waves.

6      MR. LEVIN:  Judge, would you permit the reply to

7   be due one week later, on the 14th?  I'm going to be out of

8   the country that previous week.  So as not to be writing our

9   reply while I'm out of the country, would you permit one

10  extra week?

11     THE COURT:  Does anyone have any opposition to?

12     MS. BENSING:  No, Your Honor.

13     MS. BONJEAN:  No, Your Honor.

14     THE COURT:  So I'll change the reply date to

15  August 14th.  I do want to move things along.  Obviously we

16  have a trial date.  But I hear you that these issues are

17  important to you and I will allow you to brief, and nobody's

18  waived either any arguments in the affirmative or any

19  responsive arguments.

20     Is there anything else the parties think we need

21  to take up?

22     Government?

23     MS. BENSING:  I don't think so today, Your Honor.

24     THE COURT:  Defense?

25     MS. BONJEAN:  Not for Ms. Daedone.  Thank you,

1   Your Honor.

2          MR. LEVIN:  No, Your Honor.  Thank you.

3          THE COURT:  Okay.  Give me one moment.

4          (Pause in proceedings.)

5          THE COURT:  And I did want to mention one thing,

6   and maybe I should have mentioned at the outset.  There had

7   been a request to push this proceeding off to a particular

8   date, I think it was next week.  The Court was not able to

9   accommodate that.  But I also really did just want to move

10  things along.  I do try to accommodate parties where

11  possible, but you were raising issues and speaking with some

12  urgency about the issues and I thought we should come

13  together sooner rather than later.

14         I know tomorrow's a holiday.  I appreciate

15  everyone being here today, and I wish everybody a happy and

16  safe holiday.

17         We are adjourned.

18         MS. BENSING:  Thank you, Your Honor.

19         (Matter adjourned.)

20                       *   *   *

21               CERTIFICATE OF REPORTER

22  I certify that the foregoing is a correct transcript of the
    record of proceedings in the above-entitled matter.

23
     /s/ Kristi Cruz
24  _____
    Kristi Cruz RMR, CRR, RPR
25  Official Court Reporter