GK/KCB/DEL/SF
F. #2018R01401

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                          Docket No. 23-CR-146 (DG)

RACHEL CHERWITZ and
NICOLE DAEDONE,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X


<u>MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTION TO PRECLUDE
THE GOVERNMENT'S EXPERT WITNESS</u>

                                          BREON PEACE
                                          United States Attorney
                                          Eastern District of New York
                                          271 Cadman Plaza East
                                          Brooklyn, New York 11201

Gillian Kassner
Kayla Bensing
Devon Lash
Sean Fern
Assistant U.S. Attorneys
    (Of Counsel)

# TABLE OF CONTENTS

Page

BACKGROUND ................................................................................................................ 1

APPLICABLE LAW ........................................................................................................ 2

ARGUMENT .................................................................................................................... 6

I. Dr. Raghavan's Testimony Satisfies The Liberal Requirements Of Rule 702 ...................... 6

II. Defendants' Arguments Mischaracterize Dr. Raghavan's Anticipated Testimony .............. 10

    A. Dr. Raghavan's Proposed Testimony Is Relevant ........................................... 10

    B. Dr. Raghavan's Methodology Is Reliable ....................................................... 14

    C. Dr. Raghavan's Proffered Testimony Will Not Bolster Government Witnesses ............. 17

III. Defendants' Motion To Exclude The Expert Testimony Under Rule 403
Should Be Rejected ........................................................................................... 19

IV. The Court Should Reject The Defendants' Request To Limit
Dr. Raghavan's Testimony ................................................................................ 20

V. No *Daubert* Hearing Is Necessary ....................................................................... 23

CONCLUSION ................................................................................................................ 24

TABLE OF AUTHORITIES

Cases

Amorgianas v. Nat'l R.R. Passenger,
   303 F.3d 256 (2d Cir. 2002) ............................................................................ 4, 5
Borawick v. Shay,
   68 F.3d 597 (2d Cir. 1995) ............................................................................... 4, 6
Boucher v. United States Suzuki Motor Corp.,
   73 F.3d 18 (2d Cir. 1996) ..................................................................................... 4
Daubert v. Merrell Dow,
   509 U.S. 579 (1993) .................................................................................... passim
Frye v. United States,
   293 F. 1013 (D.C. Cir. 1923) ................................................................................ 2
Howard v. Walker,
   406 F.3d 114 (2d Cir. 2005) ............................................................................... 14
In re Mirena IUS Levonorgestrel-Related Products Liability Litigation,
   982 F.3d 113 (2d Cir. 2020) .................................................................................. 3
Kumho Tire Co., Ltd. v. Carmichael,
   526 U.S. 137 (1999) ............................................................................... 3, 4, 23
Morris v. State,
   361 S.W.3d 649 (Tx. Ct. Crim. App. 2011) ........................................................ 21
Nimely v. City of New York,
   414 F.3d 381 (2d Cir. 2005) ........................................................................... 3, 18
People v. Abdur-Razzaq,
   60 Misc. 3d 631 (Bronx Sup. Ct. 2018) .............................................................. 10
Raskin v. Wyatt Co.,
   125 F.3d 55 (2d Cir. 1997) ................................................................................. 11
Travelers Property & Cas. Corp. v. General Elec. Co.,
   150 F. Supp. 2d 360 (D. Conn. 2001) ................................................................... 5
United States v. Alatorre,
   222 F.3d 1098 (9th Cir. 2000) ............................................................................ 22
United States v. Basciano,
   No. 03-CR-929 (NGG), 2006 WL 8451578 (E.D.N.Y. Jan. 3, 2006) ................... 14
United States v. Batton,
   602 F.3d 1191 (10th Cir. 2010) ...................................................................... 8, 22
United States v. Brand,
   467 F.3d 179 (2d Cir. 2006) ............................................................................... 21
United States v. Dugue,
   763 F. App'x 93 (2d Cir. 2019) .......................................................................... 19
United States v. Dupigny,
   No. 18-CR-528 (JMF) (S.D.N.Y. 2019) ........................................................ passim
United States v. Grady,
   645 F. App'x 1 (2d Cir. 2016) ............................................................................ 17

United States v. Halamek,
 5 F.4th 1081 (9th Cir. 2021)..........................................................................8, 21

United States v. Hayward,
 359 F.3d 631 (3d Cir. 2004)..........................................................................21, 22

United States v. Hitt,
 473 F.3d 146 (5th Cir. 2006)...........................................................................8, 21

United States v. Isabella,
 918 F.3d 816 (10th Cir. 2019) ..............................................................................21

United States v. Jakobetz,
 955 F.2d 786 (2d Cir. 1992) ................................................................................23

United States v. Johnson,
 860 F.3d 1133 (8th Cir. 2017)...........................................................................8, 12

United States v. Kelly,
 19-CR-286 (AMD) (E.D.N.Y. 2021) ..........................................................*passim*

United States v. Kidd,
 385 F. Supp. 3d 259 (S.D.N.Y. 2019)........................................................7, 15, 22

United States v. Maxwell,
 20-CR-330 (AJN) (S.D.N.Y. Nov. 11, 2021) .............................................*passim*

United States v. Lumpkin,
 192 F.3d 280 (2d Cir. 1999) ................................................................................19

United States v. Mejia,
 545 F.3d 179 (2d Cir. 2008)..................................................................................8

United States v. Randall,
 19-CR-131 (PAE) (S.D.N.Y. 2020) .............................................................*passim*

United States v. Raniere,
 No. 18-CR-204 (NGG), 2019 WL 2212639 (E.D.N.Y. May 22, 2019) ...........*passim*

United States v. Ray,
 20-CR-110 (LJL) (S.D.N.Y. Jan. 11, 2022)..................................................*passim*

United States v. Rivera,
 No. 22-CR-2780, 2024 WL 2813548 (2d Cir. June 3, 2024)...............................16

United States v. Romano,
 794 F.3d 317 (2d Cir. 2015)...................................................................................4

United States v. Romero,
 189 F.3d 576 (7th Cir. 1999)..................................................................................8

United States v. Ruggiero,
 928 F.2d 1289 (2d Cir. 1991) ...............................................................................16

United States v. Scop,
 846 F.2d 135 (2d Cir. 1988) .................................................................................17

United States v. Skyers,
 787 F. App'x 771 (2d Cir. 2019)...........................................................................17

United States v. Telles,
 6 F.4th 1086 (9th Cir. 2021).............................................................................12, 21

United States v. Tin Yat Chin,
 371 F.3d 31 (2d Cir. 2004) .....................................................................................3

United States v. Torres,
   No. 20-CR-608 (DLC), 2021 WL 1947503 (S.D.N.Y. May 13, 2021) ............................ *passim*
United States v. Williams,
   506 F.3d 151 (2d Cir. 2007)............................................................................................. *passim*
United States v. Zhong,
   26 F.4th 536 (2d Cir. 2022)............................................................................................ 9, 12, 20

Statutes

18 U.S.C. § 1589................................................................................................................ 7, 10, 13
18 U.S.C. § 1591......................................................................................................................... 13

Rules

Fed. R. Evid. 702 ..................................................................................................................... *passim*
Fed. R. Evid. 703 ......................................................................................................................... 14

Other Authorities

 Kenney, T., & Raghavan, C. (2024). Predatory helpfulness: A replication (and expansion) study
   examining grooming and recruitment tactics in sex trafficking. Journal of Human Trafficking,
   1–16. https://doi-org.ez.lib.jjay.cuny.edu/10.1080/23322705.2024.2327950 ................... 15, 16


Morales, S. P., & Raghavan, C. (2024). An examination of sexual coercion experiences among
   Latinx female college students. Journal of Sexual Aggression, 1–17.
   https://doi.org/10.1080/13552600.2024.2347223 .................................................................. 16


Raghavan, C., Beck, C. J. A., Menke, J. M., & Loveland J. E. (2019). Coercive controlling
   behaviors in intimate partner violence in male same-sex relationships: A mixed methods study.
   Journal of Gay and Lesbian Social Services ......................................................................... 16


Legg, A., & Raghavan, C. (2020). Not Safe for All: A Mixed Methods Study of Violence in Men
   in Commercial Sex. Psychology of Sexual Orientation and Gender Diversity (Advance Online
   Publication) https://doi.apa.org/doi/10.1037/sgd0000374 ...................................................... 16

<u>BACKGROUND</u>

On September 16, 2024, the government provided notice that it intended to call Dr. Chitra Raghavan, a licensed clinical psychologist, to testify regarding methods of "coercive control" within various organizations.  <u>See</u> ECF Dkt. No 148 & 148-1 (the "Government's Expert Notice").  On September 17, 2024, the government provided Dr. Raghavan's curriculum vitae by email.  As set forth in the Government's Expert Notice, Dr. Raghavan is expected to offer the following testimony at trial, in summary:

> Dr. Raghavan will testify about methods of "coercive control" employed against individuals. Coercive control is an ongoing abusive dynamic that seeks to rob victims of their autonomy by using a combination of tactics. It has been recognized not only in the scholarly literature, but also in the laws of several countries, such as Australia and the United Kingdom, and states, such as California and Connecticut, including in the domestic violence context. Coercive control tactics often include a variety of emotional, psychological, material, sexual, and/or physical tactics that together seek to control the victim. Dr. Raghavan will explain that the coercive control tactics can include the following: surveillance, micro-regulation, manipulation/exploitation, isolation, intimidation, deprivation, degradation, and sexual coercion.
> . . .
> Dr. Raghavan is expected to testify that coercive control is a dynamic that can exist when two or more individuals are in a work, romantic or familial relationship whenever there is a power imbalance between individuals exercising control and the subjects of that control. By way of example, Dr. Raghavan has studied coercive control in relationships that involve domestic violence, sex trafficking, cults, and other types of organizations.
> . . .
> Dr. Raghavan will testify that through the use of these coercive control tactics, perpetrators can create an environment of fear and obedience that affects victims' decision-making and free will, as well as manipulates victims' emotions.
> . . .
> Successful coercive control can lead to a state of psychological entrapment, whereby subjects may find it difficult to leave perpetrators, even if they are not physically restrained, and when they do, struggle to establish and maintain new relationships, hold jobs, and engage in fundamental human activities including identifying their own realities and needs over organizational or group values imposed by their perpetrators.

1

See ECF Dkt. No. 148-1.

On October 11, 2024, the defendants moved to preclude Dr. Raghavan's expert testimony, claiming her testimony is irrelevant, does not satisfy the requirements of Rule 702 or Daubert v. Merrell Dow, 509 U.S. 579, 592-93 (1993), and should be precluded under Rule 403. See ECF Dkt. No. 167 at 4-5 ("Def. Expert Mot.").  In the alternative, the defendants moved to limit Dr. Raghavan's testimony concerning the following topics:  grooming, targeting individuals with past trauma, the use of coercive control tactics within cults, sexual assault, violence, or abuse, sex trafficking, the relationship between pimps and prostitutes, "torture survivors, cult members, Nazi guards, Holocaust survivors, and prisoners of war." Id. at 22-24.

## APPLICABLE LAW

Under Federal Rule of Evidence 702, the Court may admit "[a] witness who is qualified as an expert" if "(a) the expert's scientific . . . knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; see also Daubert, 509 U.S. at 592-93 (explaining that the district court must assess "whether the reasoning or methodology underlying the [expert's] testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue").[1]  The

---

[1]     The Daubert test replaced the test set forth in Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), which required that expert testimony be generally accepted among the scientific community, and which is still used by state courts in New York.  The Daubert test "embodies a more liberal standard of admissibility for expert opinions" than the Frye standard. United States v. Williams, 506 F.3d 151, 161-62 (2d Cir. 2007) ("Daubert did make plain that Rule 702 embodies a more liberal standard of admissibility for expert opinions than did" Frye);

proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied. <u>See</u> <u>Daubert</u>, 509 U.S. at 593 n.10; <u>United States v. Williams</u>, 506 F.3d 151, 160 (2d Cir. 2007).

Under this rule, the district court must first address "the threshold question of whether a witness is qualified as an expert by knowledge, skill, experience, training, or education to render his or her opinions." <u>Nimely v. City of New York</u>, 414 F.3d 381, 396 n.11 (2d Cir. 2005) (citation omitted). To determine whether a witness qualifies as an expert, a court must "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." <u>United States v. Tin Yat Chin</u>, 371 F.3d 31, 40 (2d Cir. 2004). The advisory committee notes to Rule 702 make clear that to be admissible as expert testimony, the testimony need not necessarily be scientific, but instead may be based on "experience alone—or experience in conjunction with other knowledge, skill, training or education." Fed. R. Evid. 702, Advisory Committee's Note (2000). The Supreme Court has verified that an expert can draw conclusions from observations based on "extensive and specialized experience." <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 156 (1999).

If the proposed expert witness is qualified, the court has a "gatekeeping role," requiring the court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." <u>Daubert</u>, 509 U.S. at 597. In exercising the "gatekeeping role" established in <u>Daubert,</u> a district court should consider the specific criteria for expert testimony set forth in Rule 702. <u>In re Mirena IUS Levonorgestrel-Related Products Liability Litigation</u>,

<hr>

see also <u>Daubert</u>, 509 U.S. at 588 (the Federal Rules adopted a "liberal thrust" and a "general approach of relaxing the traditional barriers to 'opinion' testimony").

982 F.3d 113, 123-24 (2d Cir. 2020).  The court may also consider a non-exclusive list of factors

set out in Daubert to determine whether an expert's reasoning or methodology is reliable:

(1) whether the theory or technique used by the expert can be, or has been, tested; (2) whether

the theory or technique has been subjected to peer review or publication; (3) the known or

potential rate of error of the method used; (4) whether there are standards controlling the

technique's operation; and (5) whether the theory or method has been generally accepted within

the relevant scientific community. Daubert, 509 U.S. at 593-94.  While Daubert sets forth factors

for the district court to consider that may be helpful in certain cases, there is no "definitive

checklist or test" for reliability, as there are "there are many different kinds of experts, and many

different kinds of expertise."  United States v. Romano, 794 F.3d 317, 330 (2d Cir. 2015).

Daubert also "emphasizes the need for flexibility in assessing whether evidence is

admissible . . . permit[ting] the trial judge to weigh the various considerations pertinent to the

issue in question." Borawick v. Shay, 68 F.3d 597, 610 (2d Cir. 1995).  Thus, the central task of

the trial court is "to make certain that an expert, whether basing testimony upon professional

studies or personal experience, employs in the courtroom the same level of intellectual rigor that

characterizes the practice of an expert in the relevant field."  Amorgianas v. Nat'l R.R.

Passenger, 303 F.3d 256, 265-66 (2d Cir. 2002) (quoting Kumho Tire Co., Ltd., 526 U.S. at

150).  The Second Circuit has consistently applied this broad standard in determining the

admissibility of expert opinion testimony under Rule 702 and Daubert.  See, e.g., Boucher v.

United States Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) ("Although expert testimony

should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so

unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges

comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony.") (citations and internal quotation marks omitted); see also Travelers Property & Cas. Corp. v. General Elec. Co., 150 F. Supp. 2d 360, 363 (D. Conn. 2001) (noting that a "review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule." (quoting Advisory Committee's Notes on 2000 Amendments to Fed. R. Evid. 702)). Indeed, the Second Circuit has explained that, at bottom, the Daubert analysis is intended to give the district court the discretion "needed to ensure the courtroom door remains closed to junk science while admitting reliable expert testimony that will assist the trier of fact." Amorgianos, 303 F.3d at 267.

In considering a Daubert challenge, the Second Circuit has also emphasized that the proper focus of a court's review is on the process of the science, not the results. "[T]he district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." Id. at 266 (citing Daubert, 509 U.S. at 595). In evaluating the challenged process, courts may nevertheless consider the application of the science in the instant case, in order to prevent "too great an analytical gap between the data and the opinion proffered." Id. As the Second Circuit has recognized, however, this is a relatively limited inquiry. It is not an inquiry into whether the process was applied perfectly, or whether anyone could disagree with the application of the process in this case. The Second Circuit has explained that "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible." Id. at 267. Rather, the "judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her

conclusions." Id. (internal citations and quotation marks omitted).  In determining whether to admit or exclude expert testimony, the district court "has broad discretion in determining what method is appropriate for evaluating reliability under the circumstances of each case." Id. at 265. Indeed, the Second Circuit has instructed that "Daubert reinforces the idea that there should be a presumption of admissibility of evidence." Borawick, 68 F.3d at 610.

<div align="center">ARGUMENT</div>

As described below, the defendants' arguments with respect to Dr. Raghavan are without merit and their criticisms of her testimony, at best, go to the weight of the evidence rather than its admissibility.

## I.      Dr. Raghavan's Testimony Satisfies the Liberal Requirements of Rule 702

Dr. Raghavan has the requisite qualifications to testify as an expert.  The district court in Torres summarized her qualifications as follows:

> Dr. Raghavan is a tenured professor of psychology with a doctorate in the field.  Her curriculum vitae indicates that she has published dozens of peer-reviewed book chapters and academic journal articles on issues related to coercive control.  She has also given a series of lectures on related topics, including to judges and prosecutors in New York, and has taught undergraduates and graduate psychology students on issues related to the subject of her potential testimony in this case.  She has testified as an expert regarding coercive control in several courts, including courts in [the Southern District of New York].

United States v. Torres, No. 20-CR-608 (DLC), 2021 WL 1947503, at *7 (S.D.N.Y. May 13, 2021) (permitting expert testimony on domestic abuse and coercive control).  As the Torres court held, Dr. Raghavan's experience is more than sufficient to qualify her as an expert on coercive control.

The reasoning and methodology applied to Dr. Raghavan's opinions on coercive control are reliable. Dr. Raghavan's testimony is based on her experience from her clinical practice, her training and her extensive study of the empirical data and social science literature concerning coercive control in a variety of contexts. Her testimony is well supported by established scientific principles, and it is the kind of testimony frequently admitted in forced labor cases involving coercive control. See, e.g., United States v. Kelly, 19-CR-286 (AMD), Dkt. No. 250, at Tr. 3912 (E.D.N.Y. 2021) (permitting expert testimony without objection on coercive control and interpersonal violence in racketeering case, charging three separate predicate acts of forced labor in violation of 18 U.S.C. § 1589); United States v. Raniere, 18-CR-204 (NGG), Dkt. No. 667 (E.D.N.Y. May 22, 2019) (permitting expert testimony on victims and their psychologies in racketeering conspiracy case, charging predicate acts of forced labor, and substantive count of forced labor conspiracy); see also United States v. Ray, 20-CR-110 (LJL), Dkt. No. 287 (S.D.N.Y. Jan. 11, 2022) (permitting expert testimony on "coercive control as a tactic of victimization and a strategy to gain dominance across a spectrum of relationships" in racketeering case charging forced labor predicate act).

Courts in this Circuit have also permitted expert testimony on coercive control in sexual exploitation cases—which, as the government set forth in its motions in limine, is both a means and method and related to the labor and services acquired in the forced labor conspiracy alleged in this case. See, e.g., United States v. Kidd, 385 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (finding such testimony to be "quite common[ ]" and accepted in the academic literature); United States v. Dupigny, No. 18-CR-528 (JMF), Dkt. No. 198 at 27 (S.D.N.Y. 2019) (permitting expert testimony on "the psychological relationship between a pimp and the woman prostituted by him"

and "why prostituted women do not leave their pimp"); United States v. Randall, 19-CR-131 (PAE), Dkt. No. 335 at 24-30 (S.D.N.Y. 2020) (permitting expert testimony on trauma bonding and coercive control); Torres, 2021 WL 1947503, at *7 (permitting expert testimony on domestic abuse and coercive control); United States v. Maxwell, 20-CR-330 (AJN), Dkt. No. 435 at 4-5 (S.D.N.Y. Nov. 11, 2021) (permitting expert testimony on the use of "manipulation or coercion short of physical force as part of a strategic pattern, often referred to as grooming, to make the minor vulnerable to abuse"). Similarly, federal courts across the country have admitted similar expert testimony. United States v. Romero, 189 F.3d 576, 585-56 (7th Cir. 1999) (permitting expert to explain "seemingly counterintuitive behavior" of victims or "conduct not normally familiar to most jurors"); United States v. Halamek, 5 F.4th 1081, 1087-89 (9th Cir. 2021); United States v. Johnson, 860 F.3d 1133, 1141 (8th Cir. 2017); United States v. Batton, 602 F.3d 1191, 1201–02 (10th Cir. 2010); United States v. Hitt, 473 F.3d 146, 158 (5th Cir. 2006). As the district court noted in Ray, while there are some differences among these cases, which variously involve minors or the relationship between pimps and sex workers, "expert testimony about how individuals generally react to sexual abuse—such as not reporting the abuse and not attempting to escape from the abuser—helps jurors evaluate the alleged victim's behavior." Ray, 20-CR-110 (LJL), Dkt. No. 287 at 22 (quoting Johnson, 860 F.3d at 1140).

   Dr. Raghavan's proffered testimony will assist the trier of fact in this case. United States v. Mejia, 545 F.3d 179, 194 (2d Cir. 2008) (expert testimony is appropriate when it "concern[s] matters that the average juror is not capable of understanding on his or her own"). Dr. Raghavan is expected to testify about coercive control, which is an ongoing abusive dynamic that seeks to rob a victim of his or her autonomy by using tactics including intimidation,

isolation, degradation, and surveillance. Dr. Raghavan is expected to testify that successful coercive control compromises a victim's free will and may result in the victim expressing gratitude or affection towards her abuser and prevent a victim from leaving. The Second Circuit has found such expert testimony is appropriate in charged forced labor conspiracies. See United States v. Zhong, 26 F.4th 536, 555 (2d Cir. 2022) (holding that expert testimony is appropriate in forced labor conspiracies where, "[f]or example, perpetrators of forced labor may encumber workers by involving them in crimes, making the workers less likely to seek help and more likely to fear the consequences of leaving their company's employ" and where "certain victims may be treated preferentially in a manner that may appear inconsistent with forced labor, and forced-labor organizations may also grant workers certain communication or vacation privileges that might appear inconsistent with forced-labor practices" because "[i]n such cases, expert testimony may assist jurors in putting these practices into perspective when they otherwise would have difficult doing so"). Moreover, in all the cases cited above, district courts permitted expert testimony on victimization and/or coercive control because this topic is outside the ken of the average juror. See, e.g., Torres, 2021 WL 1947503, at *7 (holding that this testimony will help the jury understand the "psychological dynamic often seen in abusive relationships that leads an abuse victim to behave in counterintuitive ways, such as by declining to take opportunities to leave an abusive situation or by expressing gratitude to an abuser"); Randall, 19-CR-131, Dkt. No. 335 ("Jurors are not apt to intuitively understand the mechanisms that may lead a woman who is not physically restrained or confined to heed the demands of a pimp to traffic herself."); Maxwell, 20-CR-330, Dkt. No. 435 at 8 (expert testimony would "assist the jury in understanding concepts that require expert knowledge without directing the jury to reach

any conclusion as to a witness's credibility"); <u>Ray</u>, 20-CR-110, Dkt. No. 287 at 21 (allowing similar expert testimony "to help a jury understand a common set of conduct experience by victims or the actions normally taken by those committing certain crimes to seduce their victims"); <u>see also</u> <u>People v. Abdur-Razzaq</u>, 60 Misc. 3d 631 (Bronx Sup. Ct. 2018) (admitting Dr. Raghavan's testimony about coercive control where "the typical juror may question why C.Y. stayed with defendant although she was not physically restrained during the entire period she remained at the location where she was being held").

These prior rulings demonstrate both the general acceptability of the proffered opinions of Dr. Raghavan and the determinations by multiple courts that such testimony was useful to the jury. Indeed, Dr. Raghavan has never been denied qualification as an expert. Her testimony will therefore assist the jury in understanding the methods and impacts of coercive control, and in turn, "help the trier of fact to understand the evidence" in this case. Fed. R. Evid. 702.

II.     <u>Defendants' Arguments Mischaracterize Dr. Raghavan's Anticipated Testimony</u>

A.     <u>Dr. Raghavan's Proposed Testimony is Relevant</u>

<u>First</u>, the defendants argue that Dr. Raghavan's testimony concerning tactics of coercive control is not relevant here because they claim (incorrectly) there are no allegations of coercive control against the defendants. Def. Expert Mot. at 5, 10-11. The defendants also argue that because Dr. Raghavan has not interviewed the government's witnesses and has been separately qualified as an expert in the sex trafficking context, her testimony is also not relevant or appropriate in this trial. <u>Id.</u> at 6 (knowledge of the case) & 7-9 (sex trafficking). Dr. Raghavan's proposed testimony easily surpasses the low bar for relevancy. The defendants' arguments to the contrary are meritless.

To be relevant, expert testimony simply must relate to any issue in the case. See Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997). The government expects to show at trial through witness testimony and other evidence that the defendants, together with co-conspirators, used multiple deceptive and abusive tactics—which the government will argue amounted to "serious harm" under 18 U.S.C. § 1589—to obtain the labor and services of a group of OneTaste participants, including by targeting and using trauma, counseling and addiction, collecting sensitive information and surveilling, encouraging the incurrence of debt, using sex and marriage to participate in OneTaste, withholding pay, discouraging reporting, subjecting members to deprivation, the use of micro-regulation and other means of control, indoctrination, isolation, and the use of shame and humiliation. ECF Dkt. No. 170 at 5-37. Dr. Raghavan will provide necessary context about common tactics of coercive control and will explain how the use of these tactics can affect an individual's decision-making and free will, causing them to make what appear to be illogical decisions, such as the decision to remain in an abusive environment. ECF Dkt No. 148-1 at 2. Dr. Raghavan's testimony is thus relevant.[2]

The defendants next argue that Dr. Raghavan's testimony is not relevant because "she does not know any of the specific facts here and has not spoken with any complaining witness." Def. Expert Mot. at 6, 9. However, as explained above, Dr. Raghavan's testimony need only relate to an issue in the case — here, tactics of coercive control — to be relevant. There is no requirement — and the defendants cite to no court that has enforced such a

---

[2]    The defendants' claim that the government has not identified "any individual who engaged in any 'coercive control tactic' toward any victims or intended victims," Def. Expert Mot. at 5, 10-11, fails to engage with the language of the Indictment, see ECF Dkt. No. 1 ¶¶ 6-7 & 10, the discovery in the case, or the government's numerous filings identifying the same, including as set forth in the government's motions in limine, see ECF Dkt. No. 170 at 5-37.

requirement — that an expert need know the "specific facts" of the case or have interviewed complaining witnesses to have relevant testimony. To the contrary, courts expressly permit expert testimony on this and similar issues when the expert has no familiarity with the criminal investigation or organization at issue. See, e.g., Torres, 2021 WL 1947503, at *7; Johnson, 860 F.3d at 1140 (8th Cir. 2017) (explaining that an expert may testify "regarding the general characteristics that sexually abused children exhibit" but may not usurp the jury's role of assessing the credibility of any specific victim); United States v. Telles, 6 F.4th 1086, 1097-98 (9th Cir. 2021) (same). Indeed, as the district court noted in Maxwell, "[t]he defense has the law backwards on this point," explaining that the expert's testimony "is appropriate because she does not testify as to any specific witness's credibility." Maxwell, 20-CR-330 (AJN), ECF Dkt. No. 435 at 9 (emphasis added); cf. Zhong, 26 F.4th 536 (holding that the government "may not use expert testimony to provide itself with an additional summation by having the expert interpret the evidence" and finding error with expert testimony in forced labor case that provided "detailed analysis" of the organization at issue in that case).

The defendants also argue that Dr. Raghavan's expertise relates to coercive control within intimate relationships and sex trafficking organizations, and accordingly, any testimony provided here is not relevant because the defendants are not charged with sex trafficking. Def. Expert Mot. at 7-9. This is incorrect for several reasons. First, this argument minimizes and mischaracterizes Dr. Raghavan's area of scholarship and expertise. Dr. Raghavan studies the use of coercive control, which she defines as the abuse of power and the use of that power to manipulate others. As demonstrated by her curriculum vitae, she is a psychologist who has studied coercive control across many contexts, including in situations involving sexual

harassment, in organizations charged with sex trafficking, and in high-control environments such

as cults.  While Dr. Raghavan has studied and authored peer-reviewed scholarship on coercive

control tactics in sex trafficking organizations and has testified in sex trafficking prosecutions as

an expert witness, her prior expert testimony was not focused on the mechanics or logistics of

sex trafficking but rather on the psychology of how victims react when faced with abuse of

power and manipulation tactics. This is precisely what she is expected to testify about in this

case.  As the district courts determined in both <u>Raniere</u> and <u>Ray</u>, the defense's argument is based

on "an overly narrow assessment" of the witness's expertise.  <u>United States v. Raniere</u>, No. 18-

CR-204 (NGG), 2019 WL 2212639, at *6 (E.D.N.Y. May 22, 2019); <u>Ray</u>, 20-CR-110 (LJL),

Dkt. No. 287 at 27.

   <u>Second</u>, a review of the statutory language for forced labor under 18 U.S.C.

§ 1589 and sex trafficking under 18 U.S.C. § 1591 illustrates how closely connected the concepts

of "serious harm" are under both statutes—which is the applicable portion of law to which Dr.

Raghavan's testimony is relevant.  The forced labor statute penalizes those who obtain labor:

> by means of any scheme, plan, or pattern intended to cause the
> person to believe that, if that person did not perform such labor or
> services, that person or another person **would suffer serious
> harm**[.]

18 U.S.C. § 1589 (emphasis added).  The sex trafficking statute penalizes those who cause a

person to engage in a commercial sex act by:

> means of force, threats of force, fraud, [and] coercion described in
> subsection (e)(2) [<u>i.e.</u>, any scheme, plan, or pattern intended to cause
> a person to believe that failure to perform an act **would result in
> serious harm**] [.]

18 U.S.C. § 1591.  Under both statutes, serious harm is defined as "any harm, whether physical

or nonphysical, including psychological, financial, or reputational harm, that is sufficiently

serious, under all the surrounding circumstances, to compel a reasonable person of the same

background and in the same circumstances to perform or to continue" that labor or commercial

sexual activity.  18 U.S.C. § 1589(c)(2); 18 U.S.C. § 1591(e)(5).  Dr. Raghavan's testimony here

will discuss how coercive control tactics, including those employed in an organization, impact an

individual.[3]  The similarities in the relevant statutes illustrate that Dr. Raghavan's work and prior

testimony in the sex trafficking context—far from making her less qualified to offer testimony—

is directly relevant to her experiences and qualifications to testify.

      B.      <u>Dr. Raghavan's Methodology Is Reliable</u>

      <u>Second</u>, the defendants argue that Dr. Raghavan's testimony concerning tactics of

coercive control is not based on any reliable methodology as it is largely the recitation of

inadmissible hearsay and would improperly opine on the defendants' <u>mens rea</u>.  Def. Expert

Mot. at 12-13.  The defendants distort Dr. Raghavan's expected testimony and misstate the law.

      Expert witnesses "are generally permitted to rely on otherwise inadmissible

hearsay in formulating an expert opinion."  <u>See</u> <u>Howard v. Walker</u>, 406 F.3d 114, 127 (2d Cir.

2005); <u>see also</u> <u>United States v. Basciano</u>, No. 03-CR-929 (NGG), 2006 WL 8451578, at *11

(E.D.N.Y. Jan. 3, 2006).  As the district court opined in <u>Ray</u>, "expert witness may base opinions

on inadmissible facts or data . . . of a type reasonably relied upon by experts in the particular

field," including "research methodology . . . that involve[s] listening to the statements of

---

[3]     It bears repeating given the defendants' objections that Dr. Raghavan will not
testify that the government's witness were compelled to remain at OneTaste; she will merely
explain coercive control tactics and how they can affect an individual's choices.

domestic abuse victims, but her testimony will involve the synthesis and interpretation of those statements, rather than the mere conveyance of those statements to the jury." <u>Ray</u>, 20-CR-110 (LJL), ECF Dkt. No. 287 at 24 (quoting <u>Torres</u>, 2021 WL 1947503, at *7); <u>see also</u> Fed. R. Evid. 703.

        Here, Dr. Raghavan's expertise in coercive control is based, at least in part, on her practice and research, which includes interactions with victims. Such methodology is a regular and routine source of facts and data, and testimony about it is not improper. <u>See</u>, <u>e.g.</u>, <u>Randall</u>, 19-CR-131 (PAE), Dkt. No. 335, Tr. at 29-30 (describing that expertise on trauma bonding and coercive control "necessarily uses more qualitative research methodologies," including "interviews and case studies and clinical examinations conducted over time"); <u>Kidd</u>, 385 F. Supp. 3d at 263-264 (describing that expertise on coercive control in sex trafficking context was based upon writing about, treating, and speaking to prostitutes). Here, Dr. Raghavan's testimony will be drawn from her own relevant training and experience, as well as her understanding of the scholarship surrounding coercive control and the impacts it has on victims.

        The defendants also claim that Dr. Raghavan's sex trafficking research is inapposite because one study related to a small sample size of "foreign born" female victims. Def. Br. at 15. As a preliminary matter, even a cursory review of Dr. Raghavan's publications reveal that she has studied victims from both genders and different social and educational backgrounds, including male victims of coercive control tactics, student victims, victims from clinical settings, and even individuals who have identified as perpetrators of crimes.[4] In any

---

[4]     For example, the following are several examples of studies that have not involved female, foreign-born subjects. <u>See</u>, <u>e.g.</u>, Kenney, T., & Raghavan, C. (2024). Predatory

15

event, the Second Circuit has already dismissed a similar criticism against Dr. Raghavan, finding

that the concepts studied by Dr. Raghavan apply broadly and that arguments as to "unreliably

small sample size[s] and selection bias" go to "the weight rather than admissibility of the

testimony." United States v. Rivera, No. 22-CR-2780, 2024 WL 2813548, at *2 (2d Cir. June 3,

2024).

   The defendants' arguments that her testimony will concern "the subjective

motivations, thought processes, and mental states of alleged perpetrators" are also unavailing.

Def. Expert Mot. at 13. Dr. Raghavan will not testify about the state of mind of either defendant

or any co-conspirator, but instead will describe common elements of abuse and coercive control

in victimization situations. This, too, comports with well-established precedent in the Second

Circuit. To be sure, there is a difference between describing a pattern of conduct while leaving

for the jury to determine whether a defendant's conduct fits the pattern versus testifying that the

defendant's conduct fits a particular pattern of conduct. See, e.g., United States v. Ruggiero, 928

F.2d 1289, 1305 (2d Cir. 1991) (distinguishing between testimony that "a certain pattern of

conduct is often found in narcotics cases, leaving it for the jury to determine whether the

---

helpfulness: A replication (and expansion) study examining grooming and recruitment tactics in sex trafficking. Journal of Human Trafficking, 1–16. https://doi-org.ez.lib.jjay.cuny.edu/10.1080/23322705.2024.2327950; Morales, S. P., & Raghavan, C. (2024). An examination of sexual coercion experiences among Latinx female college students. Journal of Sexual Aggression, 1–17. https://doi.org/10.1080/13552600.2024.2347223; Raghavan, C., Beck, C. J. A., Menke, J. M., & Loveland J. E. (2019). Coercive controlling behaviors in intimate partner violence in male same-sex relationships: A mixed methods study. Journal of Gay and Lesbian Social Services; Legg, A., & Raghavan, C. (2020). Not Safe for All: A Mixed Methods Study of Violence in Men in Commercial Sex. Psychology of Sexual Orientation and Gender Diversity (Advance Online Publication) https://doi.apa.org/doi/10.1037/sgd0000374.

defendant's conduct fits the pattern, but also that such conduct fitted the pattern" (quoting United States v. Scop, 846 F.2d 135, 141-142 (2d Cir. 1988), rev'd in part on rehearing, 856 F.2d 5 (2d Cir. 1988))); United States v. Skyers, 787 F. App'x 771, 775 (2d Cir. 2019).

Here, the government expects that Dr. Raghavan will testify, as described, about possible tactics of coercive control, and their effects, leaving it for the jury to conclude whether such tactics were utilized here and how, if at all, they affected the decisions and actions of government witnesses. See, e.g., Ray, 20-CR-110 (LJL), ECF Dkt. No. 287 at 22-23 (finding an identical objection to preclude expert testimony was "misdirected," where, as here, the expert witness did not intend to testify to the mental state of the defendants or abusers in general); United States v. Grady, 645 F. App'x 1, 4 (2d Cir. 2016) ("[The expert's] testimony did not violate Rule 704(b) because, while it could have been used by the jury to conclude that the crack cocaine in [the defendant's] possession was intended for distribution rather than personal use, that final inference was left to the finder of fact."). Dr. Raghavan will make clear during her testimony that her opinion about tactics of coercive controls is based on her general expertise, not on any specific knowledge about the facts of this case. Grady, 645 F. App'x at 4 (noting that expert witness made clear "his opinion as to the hypothetical was based on his general experience, not on any specific knowledge of [defendant's] mental state"). Accordingly, Dr. Raghavan's proposed testimony is well within the bounds of the rules governing expert testimony—as confirmed by the numerous courts that have allowed similar testimony.

C.      Dr. Raghavan's Proffered Testimony Will Not Bolster Government Witnesses

Third, the defendants argue that permitting Dr. Raghavan's testimony would improperly intrude upon the jury's functions of making credibility determinations and deciding

the ultimate issues in this case. Def. Expert Mot. at 15. Once again, the defendants misstate Dr. Raghavan's expected testimony and the applicable law.

Dr. Raghavan's testimony will not improperly bolster the credibility of the government's witnesses, their factual narrative or instruct the jury regarding the ultimate issues in the case. See, e.g., Torres, 2021 WL 1947503, at * 7 (rejecting the same arguments as to Dr. Raghavan's testimony in a case involving kidnapping and kidnapping of a minor). As explained, Dr. Raghavan will not offer an opinion on the specific facts of this case or the testimony of any witness in the case. Instead, Dr. Raghavan will testify as to general dynamics of coercive control and its effects, not as to the specifics of the relationship among the defendants and the witnesses or that any witness was subjected to tactics of coercive control. The ultimate issue in the case will remain with the jury. Id. As the Court recognized in Ray, "there is nothing wrong with testimony that corroborates the testimony of a party's fact witnesses and thereby makes that testimony more credible or believable to the jury." Ray, 20 Cr. 110 (LJL), ECF Dkt. No. 287 at 25. To the extent that the defendants wish to challenge Dr, Raghavan's testimony on coercive control, the Supreme Court has instructed that "vigorous cross-examination" or "presentation of contrary evidence" are the "traditional and appropriate means of attacking" challenged expert testimony. Daubert, 509 U.S. at 596; see also Randall, 19 Cr. 131 (PAE), ECF No. 335 at 37. Moreover, if Dr. Raghavan's testimony is permitted, the Court will properly instruct the jury on how they may evaluate and use that testimony.

The cases cited by the defendants on this topic are inapposite. Def. Expert Mot. at 15-16. For instance, in Nimely v. City of New York, 414 F.3d 381 (2d Cir. 2005), the plaintiff filed a civil rights action against the city of New York, the New York Police Department and a

police officer who shot and paralyzed the plaintiff during a police chase. The Second Circuit found the district court improperly permitted an expert witness to testify regarding the "tendencies of police officers to lie or to tell the truth," and that the witness "rejected" the possibility that the officers had lied in this case. Id. at 398. Such testimony improperly attempted "to substitute the expert's judgment for the jury's" judgment. Id.; see also United States v. Lumpkin, 192 F.3d 280, 289 (2d Cir. 1999) (properly excluding expert testimony that "confidence in [eyewitness] identification is not a good predictor of accuracy."); United States v. Dugue, 763 F. App'x 93, 96 (2d Cir. 2019) (properly excluding expert testimony on "the credibility of cooperating witnesses generally, and the benefits such witnesses receive in exchange for government cooperation"). Here, Dr. Raghavan will not offer any opinion concerning the credibility of the government witnesses or the credibility of individuals who have purportedly been manipulated by others. She will provide necessary context—based on her training, research and experience—on concepts that courts have repeatedly admitted at similar trials and ruled are outside the provenance of the average juror. See supra pp. 8-10. For this reason, the defendants' attempt to compare Dr Raghavan's testimony to prohibited testimony in narcotics trafficking cases is unpersuasive. Def. Expert Mot. at 16-17.

III.    Defendants' Motion to Exclude the Expert Testimony Under Rule 403 Should Be Rejected

Finally, the defendants seek to exclude the testimony under Rule 403, claiming that Dr. Raghavan will offer "inflammatory and prejudicial" testimony about abusive relationships that are not applicable here. Def. Expert Mot. at 20. The defendants again misstate the expected testimony. Dr. Raghavan's testimony will cover relevant topics that will help the jurors understand the evidence in this case.

As explained, this testimony is highly probative.  See supra pp. 8-10; see also

Zhong, 26 F.4th at 555 (holding that expert testimony is appropriate in forced labor

conspiracies).  It will help the jury understand the "psychological dynamic often seen in abusive

relationships that leads an abuse victim to behave in counterintuitive ways, such as by declining

to take opportunities to leave an abusive situation or by expressing gratitude to an abuser."

Torres, 2021 WL 1947503, at *7; see also Randall, 19 Cr. 131 (PAE), Dkt. No. 335 at 39 (noting

the interaction between abusers and victims is an "unusual area of human interaction" and

involves psychological dynamics beyond the knowledge of an average juror).  The probative

nature of the testimony—consistent with Rules 702 and 403— outweighs the prejudice imagined

by the defendant.  The defendants' claim of prejudice does not withstand scrutiny and, in any

event, is outweighed by the relevant and probative testimony Dr. Raghavan will provide.

IV.    The Court Should Reject the Defendants' Request to Limit Dr. Raghavan's Testimony

In the alternative, the defendants seek to limit Dr. Raghavan's testimony

concerning the following topics:  grooming, targeting individuals with past trauma, the use of

coercive control tactics within cults, sexual assault, violence, or abuse, sex trafficking, the

relationship between pimps and prostitutes, "torture survivors, cult members, Nazi guards,

Holocaust survivors, and prisoners of war."  Id. at 22-24.

As a preliminary matter, this is a blatant attempt to police the illustrations or

examples which Dr. Raghavan can reference during her testimony.  The defendants do not cite to

single case in which the Court prohibited a witness from using analogies or other rhetorical

devices.  It is entirely appropriate for an expert to try to explain relevant concepts or phenomena

in terms that a juror can understood and comprehend or refer to seminal studies in the field.

Indeed, that is the purpose of expert testimony.  Nor is there any undue prejudice from describing

relevant topics with relevant examples. As will be made clear in her direct testimony, Dr. Raghavan is not testifying about the specifics of this case. She has not interviewed the defendant or the government's witnesses in this case, nor reviewed any evidence or reports. To the contrary, she will be testifying from her general knowledge on the topic of coercive control and, where useful, illustrating concepts with examples that might be familiar or comprehensible to a jury to facilitate her explanation. It will be clear from her testimony about this case and from the nature of these examples that they do not involve the defendants or their victims.

The defendants specifically seek to exclude testimony on grooming or targeting individuals with traumatic pasts. Numerous courts in this district have held that testimony on grooming is a permissible subject of expert testimony. See Maxwell, 20 Cr. 330 (AJN), Dkt. No. 435 at 4-5; Ray, 20 Cr. 110 (LJL), Dkt. No. 287 at 23 n.7 (permitting expert testimony on grooming).[5] Additionally, despite the defendant's assertion otherwise, in Raniere, 2019 WL 2212639, Judge Garaufis questioned whether another expert witness, given her experience focused on victims, could testify about how "perpetrators often use 'grooming' techniques on

---

[5]     Numerous other courts have also specifically authorized expert testimony on similar topics involving grooming, coercive control, or the modus operandi of abusers. See, e.g., Telles, 6 F.4th at 1097-1098 (holding that admission of expert testimony on grooming did not violate Federal Rules of Evidence 702 or 403 nor violate due process); Halamek, 5 F.4th 1081, 1087-89 (9th Cir. 2021) (holding that expert testimony on grooming was "relevant, reliable, and properly admitted"); United States v. Isabella, 918 F.3d 816, 833 n.15 (10th Cir. 2019) "Grooming can be established by use of an expert witness who testifies about psychological tactics that are common in cases of child sex abuse."); Hitt, 473 F.3d at 158 (affirming expert testimony on the "grooming process"); see also Hayward, 359 F.3d at 637 (expert testimony was admissible as it "focused primarily on the modus operandi-on the actions normally taken by child molesters to find and seduce their victims"); see also United States v. Brand, 467 F.3d 179, 203 (2d Cir. 2006),  abrogated on other grounds by United States v. Cabrera, 13 F.4th 140 (2d Cir. 2021) (noting that evidence of grooming supported the jury's verdict); Morris v. State, 361 S.W.3d 649, 656-69 (Tx. Ct. Crim. App. 2011) (collecting cases showing that "grooming evidence has been received by courts from numerous types of experts").

adult and child victims . . . ." Id. at *7.  Even then, he did not exclude the testimony—he simply

ordered a Daubert hearing.  Id. at *8.  The government ultimately declined to proceed with that

testimony rather than conduct a mid-trial Daubert hearing.  Similarly, courts have permitted

expert testimony on applying coercive tactics to vulnerable individuals.  Kidd, 385 F. Supp. 3d at

265 (permitted expected expert testimony on experiences that may make a victim more

susceptible to recruitment because it is "important background for the jurors").  Courts have

additionally found expert testimony on the modus operandi of abusers to be appropriate as "[t]his

specialized information may very well be beyond the knowledge of many jurors." Batton, 602

F.3d at 1201 (permitted testimony modus operandi of sexual predators and citing similar

holdings by the Seventh and Fifth Circuits); see also United States v. Hayward, 359 F.3d 631,

637 (3d Cir. 2004) (expert testimony was admissible as it "focused primarily on the modus

operandi-on the actions normally taken by child molesters to find and seduce their victims").  In

any event, the literature in this field more than supports expert opinions that address how and to

what ends perpetrators employ such tactics.

       The defendants also seek to preclude Dr. Raghavan from testifying about so-

called "organizational coercive control."  This term, which appears to have been coined by the

defendants, appears nowhere in the Government's Expert Notice.  Dr. Raghavan, who has

studied tactics of coercive control for more than a decade, will testify as to the definition of

coercive control and where it can be found (i.e., anywhere where there is a power imbalance

between individuals).  As a psychologist and professor, she has studied coercive control across

many contexts, including in situations involving sexual harassment, in organizations involved in

sex trafficking, and in high-control environments such as cults.  While these groups or

organizations may have different purposes or unifying features, Dr. Raghavan found coercive control was present across various groups. These tactics are observed in her research and have been accepted by numerous courts, including in recent prosecutions like <u>Ray</u> and <u>Raniere</u>, which involved the use of coercive control against certain members of the defendants' organizations. To the extent the defendants take issue with this definition, they will have the opportunity to cross-examine this witness and present their own evidence.

V.      No <u>*Daubert*</u> Hearing Is Necessary

       Finally, while district courts must exercise the gatekeeping function regarding expert testimony, a separate hearing is often not required. <u>Williams</u>, 506 F.3d at 161 (citing <u>Kumho Tire</u>, 526 U.S. at 152 (district courts possess "latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability") and <u>United States v. Alatorre</u>, 222 F.3d 1098, 1102 (9th Cir. 2000) ("Nowhere . . . does the Supreme Court mandate the form that the inquiry into . . . reliability must take . . . .")). "This is particularly true if, at the time the expert testimony is presented to the jury, a sufficient basis for allowing the testimony is on the record." <u>Williams</u>, 506 F.3d at 161. Given the regularity with which experts testify in this Circuit about the topics set forth in the Government's Expert Notice, no Daubert hearing is necessary here. <u>See</u> <u>United States v. Jakobetz</u>, 955 F.2d 786, 799 (2d Cir. 1992) ("[W]e do not think that such extensive hearings and findings should be conducted in every case").

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that the Court

deny the defendants' motion without holding a hearing.

Dated: Brooklyn, New York
      October 25, 2024

<div style="margin-left:40%">

Respectfully submitted,

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York

By:       /s/
          Gillian Kassner
          Kayla Bensing
          Devon Lash
          Sean Fern
          Assistant United States Attorneys
          (718) 254-7000

</div>

cc:       Clerk of Court (DG) (by ECF and Email)
          Counsel of Record (by ECF and Email)