

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

271 Cadman Plaza East
Brooklyn, New York 11201

GK/KCB/DEL/SMF
F. #2018R01401

November 4, 2024

<u>By ECF</u>

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    <u>United States v. Cherwitz, et al.
                     Criminal Docket No. 23-146 (DG)</u>

Dear Judge Gujarati:

        The government respectfully submits this response in opposition to the defendants' motion for additional disclosure and to seek a revised protective order in advance of the government's production of 18 U.S.C. § 3500 material ("3500 Material"). <u>See</u> ECF Dkt. No. 185 ("Def. Letter"). In their letter, the defendants seek (1) additional disclosures concerning unindicted co-conspirators, agents, and victims, parties to the conspiracy, and all overt acts in furtherance of the conspiracy; (2) additional information pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny; and (3) a modified scheduling order staggering government and defense disclosures.

        In connection with these requests, the government respectfully requests that the Court order a supplemental protective order (the "Supplemental Protective Order"), attached hereto as Exhibit A, because there is reason to believe that dissemination of the government's 3500 Material beyond the defense in this case will jeopardize the integrity of the above-captioned prosecution and is necessary to protect third parties, including victims and witnesses.

I.    <u>The Court Should Reject the Defendants' Requests for Additional Disclosures</u>

        The defendants seek an order requiring the government to disclose the names of all unindicted co-conspirators, agents, and parties to the conspiracy, all victims, and all overt acts in furtherance of the conspiracy—in effect, a bill of particulars. <u>See</u> Def. Letter at 7-8. As this Court previously recognized, the defendants are not entitled to this information. <u>See</u> Tr. of May 3, 2024 Status Conference ("May 3, 2024 Tr.") at 14:7-8; <u>see also</u> ECF Dkt. No. 69 (defendants' motion seeking, among other things, the government's disclosure of all co-conspirators and overt acts). In their renewed attempt, the defendants still have not identified any precedent under

which they are entitled to their broad requests. Moreover, as explained in more detail below, and contrary to the defendants' claims, see Def. Letter at 1, the government has provided more than sufficient notice of the evidence of the charged forced labor conspiracy. The Court should reject the defendants' baseless attempts to force the government to preview its proof in detail in advance of trial—a tactic that courts in this Circuit have consistently rejected. Accordingly, the defendants' motion for reconsideration should be denied in its entirety.

    A.    <u>The Court's Prior Ruling on Disclosure</u>

The defendants' request for the names of all co-conspirators and all overt acts in furtherance of the conspiracy, which was styled as a motion for a bill of particulars, was previously briefed by the parties earlier this year. See ECF Dkt. Nos. 68, 69, 77, 80. On May 3, 2024, Your Honor denied the defendants' motion, stating:

> [A] bill of particulars may not be used as a fishing expedition or to force the government to give a preview of its evidence and legal theories or to disclose the manner in which it will attempt to prove the charges or the precise manner in which a defendant committed the crime charged. . . .
>
> Defendants have not demonstrated that a bill of particulars is necessary. Defendants have information sufficient to enable them to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should they be prosecuted a second time for the same offense. In addition to the information contained in the indictment, defendants have been provided with additional detail by way of voluminous, organized discovery; summaries of portions of witness statements given by over 20 witnesses; detention memoranda; and the government's briefing on the instant motion. Defendants seek information by way of a bill of particulars that they are not entitled to at this stage of the litigation and under the circumstances here.

May 3, 2024 Tr. at 12-14 (citations omitted).

    B.    <u>Applicable Law</u>

The Local Rules of the United States District Courts for the Southern and Eastern Districts of New York provide that a motion for reconsideration of a court order determining a motion "must be filed and served within fourteen (14) days after the Court's determination of the original motion" along with a memorandum "setting forth concisely the matters or controlling decisions that counsel believes the Court has overlooked." Local Criminal Rule 49.1. A motion for reconsideration is "not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved, nor may a party on a motion for reconsideration advance new facts, issues or arguments not previously presented to the court." <u>United States v. James</u>, No. 02-CV- 2007 (SJ), WL 914242, at *3 (E.D.N.Y. Mar. 21, 2007) (citing cases in which courts relied upon the application of the principals of the analogous

Local Civil Rule 6.3). As the Second Circuit has explained, the standard governing a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995); Nielsen v. New York City Dep't of Educ., No. 04-CV-2182 (NGG), 2007 WL 2743678, at *1 (E.D.N.Y. 2007) (noting, again with reference to the analogous Local Civil Rule 6.3, that the Shrader standard "is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court").

    C.    Argument

The Court has already recognized that well-established law within the Second Circuit demonstrates the defendants are not entitled to a list of all overt acts and co-conspirators in connection with the charged conspiracy. The defendants have not identified any matters or controlling decisions that the Court previously overlooked in so ruling, and, thus, the motion should be denied.

Beyond their failure to demonstrate a legal basis as to why the Court should reconsider its earlier ruling, the defendants' claim that they "lack sufficient notice" strains credulity. See Def. Letter at 1. Indeed, since the Court's ruling on the defendants' initial motion, the government has only provided more information to the defendants. For example, the government has produced additional discovery, including, among other things, (i) additional text and email correspondence among members of OneTaste, including the defendants, discussing, among other things, OneTaste courses and activities, experiences at OneTaste and allegations of sexual misconduct or abuse; (ii) photographs of a number of the government's anticipated witnesses and the defendants' co-conspirators; and (iii) additional financial documentation, communications, and records provided by victims and witnesses concerning OneTaste and the defendants' conduct. Each production has been accompanied by a detailed cover letter that functions as an index to the discovery material and the government has disclosed the names of all witnesses who served as sources of such material. Moreover, on October 11, 2024, the government filed detailed motions in limine outlining the government's expected proof at trial as to the charged forced labor conspiracy. That filing described labor and services performed by numerous specific victims after the defendants subjected the same victims to economic, sexual, emotional and psychological abuse, surveillance, indoctrination and intimidation—the same kinds of psychological, financial and reputational harms identified in the Indictment in this case, with references to specific examples. See Gov't Mots., ECF No. 169, at 5-37; Indictment ¶ 7. The filing also included descriptions of 24 individuals from whom the defendants conspired to obtain labor and services during the course of the conspiracy; and the identities of 11 co-conspirators whom the government expects to establish at trial.[1]

---

[1] While the co-conspirators are anonymized in the public filing, see ECF Dkt. No. 170, many of their names are included in the sealed exhibits to the motion in limine. To the extent there was any lack of clarity, the government emailed the identities of the co-conspirators identified in its motions in limine to defense counsel on November 1, 2024.

In addition, pursuant to the Court's scheduling orders, the government will produce its anticipated list of witnesses and other relevant names and places in four days and intends to begin rolling productions of its 3500 Material approximately 60 days prior to trial (by November 14, 2024), which, as set forth below, it requests to do pursuant to the Supplemental Protective Order. Further, the government does not object to identifying the victim-witnesses identified in its motions in limine pursuant to the proposed Supplemental Protective Order.

These fulsome and early disclosures go far beyond what is required under the law. "The prosecution need not particularize all of its evidence." United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988); see also United States v. Barret, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011) ("[T]he court is mindful that it cannot compel the government to disclose, through a bill of particulars, the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories" (quotations and citations omitted)); United States v. Albunio, No. 91-CR-0403 (ILG), 1992 WL 281037, at *2 (E.D.N.Y. Sept. 9, 1992) ("The defendant's right to know the crime with which he is charged must be distinguished from his right to know the evidentiary details by which proof of his culpability will be established.").

Here, however, the government has provided a detailed proffer of facts in its motions in limine, which supplements the additional disclosures made by the government outlined at length in its response to the defendants' request for a bill of particulars, which is incorporated by reference herein, see ECF Nos. 77, 169, the speaking Indictment in this case putting the defendants' on notice of the charged conspiracy, and the government's anticipated forthcoming disclosures of its list of witnesses and other relevant names, 3500 Material and specific identification of victim-witnesses. The defendants' continued claims that despite receiving these disclosures, they have "virtually no insight into a case of forced labor conspiracy," Def. Letter at 2, is, at best, hyperbole. Indeed, it is telling that many of the defendants' motions in limine in this case mirrored those cross-filed by the government—a clear indicator that the defendants understand the contours of the government's case and the crime with which they have been charged. See Def. Mot., ECF No. 171, at 11-25 (opposing the introduction of much of the same evidence that the government, in its motions filed contemporaneously, sought to admit).

Against this backdrop, it is clear that the defendants' requests simply fail to engage with the body of disclosures made to them to date. As the government already outlined at length in its opposition to the defendants' motion for a bill of particulars, the law is clear that the government need not identify all overt acts committed in furtherance of a conspiracy to the defense. See ECF No. 77, at 18 (detailing law that "[i]t is well-settled that there is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in a conspiracy charge" (citing United States v. Shteyman, No. 10-CR-347 (SJ), 2011 WL 2006291, at *5 (E.D.N.Y. May 23, 2011)); see generally United States v. Sindone, No. 01-CR-517 (MBM), 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) ("The stakes in a criminal case are high, and temptations of perjury, subornation and intimidation are ever present. Accordingly, the government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away, or see to it that the government's proof is not presented"). Nor does the law entitle a defendant to details of the identity of all co-conspirators, though the government has already provided a non-exhaustive list

to the defense.  See ECF No. 77, at 18-19 (outlining factors Courts consider in deciding whether to grant requests for identities of unindicted co-conspirators and citing cases).  As to the defendants' request for the identities of the government's victim-witnesses, the defendants have received significant Rule 16 discovery, including materials obtained from dozens of potential witnesses whom the government has identified by name, and a fulsome factual recitation in the government's motions in limine filing that described many of the individuals from whom the defendants conspired to obtain labor and services, for whom the government will provide identifying information subject to the Supplemental Protective Order, as described herein.

In brief, in their poorly-disguised attempt to ask this Court to move to reconsider its bill of particulars determination, the defendants have not identified any precedent in this Circuit or another court under which they are entitled to this information and have failed to identify or engage with the meaningful disclosures made to them to date, instead making a blanket request for information that has, in large part, already been provided to them.  The defendants' motion for reconsideration should be denied.[2]

II.     The Government Has Complied with *Brady v. Maryland*

The defendants request that the Court direct the government "to produce comprehensive and complete witness statements, 302 statements and communications that relate to their summary Brady disclosures." Def. Letter at 1.  The defendants' motion amounts to a request for the premature disclosure of 18 U.S.C. § 3500 material and should be denied.

Under Brady and its progeny, "[t]he prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001).  That duty encompasses both exculpatory materials and information that might be used to impeach a key government witness.  Id. (citing Giglio, 405 U.S. at 154).  "[A]s a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant."  Id. at 146; see also Barret, 824 F. Supp. 2d at 455 ("It is well-settled that the government need not immediately disclose Brady or Giglio material simply upon request by the defendant." (citing Coppa, 267 F.3d at 146)).  Rather, Brady and Giglio material must be disclosed "in time for its effective use at trial." Coppa, 267 F.3d at 144-46; see also United States v. Singletary, 685 F. App'x 33, 34 (2d Cir. 2017) (summary order); United States v. Rodriguez, 496 F.3d 221, 226 (2d Cir. 2007).  The district court has the discretion to order Brady and Giglio disclosures at any time as a matter of "sound case management." United States v.

---

[2]     Insofar as the defendants make the remarkable claim that their own words cannot constitute evidence of a crime, see Def. Letter at 4-5 (suggesting that the defendants' statements cannot form the basis for a crime), the legal argument is contrary to evidentiary rules and well-established precedent, see Fed. R. Evid. 801(d)(2) and, e.g., United States v. Hilliard, No. 23-6256, 2024 WL 3634201, at *2 (2d Cir. Aug. 2, 2024) (reaffirming that "speech is not protected by the First Amendment when it is the very vehicle of the crime itself"), and the factual argument should be determined by the trial jury who will hear the totality of the evidence in the case.

Taylor, 17 F. Supp. 3d 162, 177 (E.D.N.Y. 2014), aff'd, No. 16-CR-3274, 2020 WL 629955 (2d Cir. 2020).

The defendants have cited to no authority to support the requirement that the government produce full witness statements of witnesses who may provide potentially exculpatory information. To the contrary, precedent confirms that the disclosure of individuals and the essential facts of the potentially exculpatory information is sufficient to satisfy the government's disclosure requirement. See United States v. Stewart, 513 F.2d 957, 960 (2d Cir. 1975); see also, e.g., United States v. Middendorf, No. 18-CR-36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (finding government disclosure of individuals who could provide potentially exculpatory information and "essential facts" of that potentially exculpatory information was sufficient to comply with Brady obligations). Here, the government has identified individuals who have provided information that is potentially favorable to the defense, as well as summaries of the information provided. See Def. Letter, Ex. A. The defendants are clearly "on notice of the essential facts which would enable [them] to call [each] witness and thus take advantage of any exculpatory testimony that he might furnish," which is all that is required under the law. Stewart, 513 F.3d at 960.

The government has, and will continue, to make disclosures on a rolling basis in accordance with its discovery obligations.

III.  The Court Should Authorize the Supplemental Protective Order

As set forth above, the government respectfully requests that the Court order the enclosed Supplemental Protective Order, pursuant to which the government seeks to identify its victim-witnesses and 3500 Material.

A.  Background

On June 26, 2023, the Court entered the existing Protective Order in this case. See ECF Nos. 21, 26. As the Court is aware, on August 15, 2024, the government moved to modify the Protective Order, see ECF No. 119 ("Gov. Protective Order Mot."), which motion was referred to Magistrate Judge Robert M. Levy, and which is pending, see Aug. 27, 2024 Referral Order.

As detailed in the Government's Protective Order Motion, which is incorporated herein by reference, defense counsel and counsel for OneTaste have identified OneTaste counsel and executives (including Co-Conspirator 1) as members of the defense team who have accessed materials produced by the government pursuant to the Protective Order. See Gov't Protective Order Mot. at 2-3. Though the Protective Order required such individuals to use discovery produced pursuant to the Protective Order "only for purposes of defending against the charges in the above-captioned case," Protective Order ¶ 1, as detailed in the government's motion, counsel for OneTaste used information obtained in the government's discovery productions in outreach to potential trial witnesses, including to threaten legal or other retaliatory action against them. Id. at 4-6. OneTaste's counsel did so without seeking leave from the Court, which, under the terms of the Protective Order, they should have done had they believed they were appropriately contacting those witnesses, as the Protective Order required. See Protective Order ¶ 3.

As further detailed in the Government's Protective Order Motion, and as set forth in the government's motions in limine, which is also incorporated herein by reference, OneTaste has engaged in a pattern of behavior that appears to be seeking to intimidate trial witnesses, in violation of Eastern District of New York Local Criminal Rule 23.1, including by retaining a purported investigator to attempt to name-call and shame these potential witnesses, including, in some cases, by publishing their full names and workplaces. See Gov't Protective Order Mot. at 8; Gov't Mots., ECF No. 169, at 39-41.

At the September 27, 2024 conference, the Court indicated that it took "very seriously what the Government is saying about conduct with respect to its potential witnesses," observing that there were "two separate issues . . . the issue of whether there's a violation of the protective order, and . . . the separate issue of just, in general, conduct toward potential witnesses." Sept. 27, 2024 Tr. at 38, 43. The Court also indicated that it took "very seriously the defense's right to investigate and to prepare its defense" and encouraged the parties to engage in discussions regarding the government's disclosures. Id. at 38, 53. Following a meet-and-confer between the parties, on October 16, 2024, the government circulated a proposed protective order to the defense to facilitate the earlier production of 3500 Material. Defense counsel for both defendants subsequently indicated to the government that they believed either no protective order should govern subsequent disclosures by the government, including for the 3500 Material, or that the existing protective order should be "loosened."

Judge Levy has scheduled a conference on the Government's Protective Order Motion for November 20, 2024. As detailed herein, the government seeks to begin rolling productions of its 3500 Material approximately 60 days in advance of trial, which is November 14, 2024 (and which is prior to Judge Levy's November 20, 2024 scheduled conference). In light of the history of witness intimidation and harassment outlined in the government's prior filings, the government requests that the Court issue the Supplemental Protective Order to permit the government to promptly begin its disclosure of 3500 Material.

      B.      The Proposed Supplemental Protective Order

The proposed Supplemental Protective Order differs from the Protective Order, among other ways, in (a) establishing procedures for the handling of discovery material designated as "Sensitive" or "Attorney's Eyes Only"[3]; (b) clarifying that only signatories to the protective order may access materials produced pursuant to the protective order, and limiting those signatories as appropriate; and (c) prohibiting the dissemination and discussion of materials produced pursuant to the protective order to the media. See Supplemental Protective Order.

      C.      Applicable Law

Rule 16(d)(1) of the Federal Rules of Criminal Procedure provides that, upon a sufficient showing, a court may order that the discovery or inspection of material that is

---

[3] The government does not anticipate designating many, if any, 3500 Material as "Attorney's Eyes Only"; however, putting these procedures in place at the outset will facilitate the prompt production of any such material to defense counsel in the future without the need for additional court intervention. See Supplemental Protective Order ¶ 11.

otherwise required be denied, restricted or deferred. The final decision on whether to enter such an order is a matter for the discretion of the district court and such an order will not be overturned absent an abuse of that discretion. See United States v. Delia, 944 F.2d 1010, 1018 (2d Cir. 1991); United States v. Smith, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013) (noting that "the Supreme Court has held that 'the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of materials which they may be entitled to inspect'" (citing Alderman v. United States, 394 U.S. 165, 185 (1969)). By its own terms, Rule 16 contemplates that discovery materials should be exchanged privately between the parties and not disclosed publicly. See Seattle Times Company v. Rhinehart, 467 U.S. 20, 31-33 (1984) (noting that pretrial civil discovery materials are not traditionally available to the public); United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (holding the same in the context of criminal discovery); Smith, 985 F. Supp. 2d at 519 (noting that pretrial discovery "is usually conducted in private"). Because the purpose of pretrial discovery is solely to prepare a defense, discovery materials provided by one party or another should not be disseminated before trial to members of the public. See Anderson, 799 F.2d at 1441 ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private."). For these reasons, courts in this Circuit and others have held that it is appropriate to issue a protective order limiting the dissemination of discovery materials solely to the defendants for their use in preparing a defense for trial. See, e.g., Seattle Times, 467 U.S. at 37 (affirming protective order limiting dissemination of pretrial discovery); Anderson, 799 F.2d at 1441 (same); Smith, 985 F. Supp. 2d at 535 (same).

Similarly, the Second Circuit has held that discovery material is properly restricted from disclosure to the public or the media. The purpose of discovery is "to facilitate orderly preparation for trial, not to educate or titillate the public." S.E.C. v. TheStreet.com, 273 F.3d 222, 233 (2d Cir. 2001). "Defendant[s] [have] no constitutional right to use the media to influence public opinion concerning [t]his case so as to gain an advantage at trial." Smith, 985 F. Supp. 2d at 540 (alterations in original). This is because "[t]he theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." Patterson v. Colorado, 205 U.S. 454, 462 (1907). Indeed, it is for the very purpose of assuring fair trials that this Court's local rules prohibit publicizing witness statements and law enforcement reports disclosed during discovery. See Local Rule 23.1(a) (prohibiting lawyers from "releas[ing] or authoriz[ing] the release of non-public information or opinion that a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which they are associated, if there is a substantial likelihood that the dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.").[4] Courts have frequently expressed concern with efforts by litigants to disclose discovery materials to the media and thereby jeopardize the fairness of trial. See, e.g., Smith,

---

[4] Local Rule 23.1(d) provides that statements concerning "[t]he identity, testimony, or credibility of prospective witnesses" "presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."

8

985 F. Supp. 2d at 520; see also United States v. Lindh, 198 F. Supp. 2d 739, 743 (E.D. Va. 2002) ("[I]t is a lamentable fact of life that parties in newsworthy trials may attempt to use the media precisely for th[e] purpose [of influencing public opinion by disclosing discovery materials].").

The Jencks Act does not create a proprietary right to any government witness's statements. The Act requires only that the government make these statements available to the defendant for the purposes of cross examination and defines the timing of such disclosures. See United States v. Garcia, 406 F. Supp. 2d 304, 305 (S.D.N.Y. 2005) ("Jencks requires the Government to produce copies of its witnesses' statements for inspection by the defense, for purposes of cross examination. It does not give defendants a property interest in such statements, or require the multiplication of copies of internal prosecution notes or reports for whatever use the defendants choose to make of them."); see also United States v. Basciano, No. 03-CR-929 (NGG), 2006 WL 2270432, at *6 (E.D.N.Y. June 30, 2006) ("A defendant's rights under 18 U.S.C. § 3500 are limited and are centered around the necessity of cross-examination.").

"Good cause" as contemplated by Rule 16(d) includes the protection of information important to third parties, see, e.g., Smith, 985 F. Supp. 2d at 524-530 (citing extensive precedent as to same), and protective orders that restrict use to defense of that case and prohibit dissemination to the media are regularly entered in this District.[5]

D.     Discussion

Entry of the Supplemental Protective Order is necessary and appropriate in this case. As an initial matter, the vast majority of Rule 16 discovery has already been furnished to

---

[5] See, e.g., United States v. Sherry Li, et al., No. 22-CR-484 (GRB), ECF No. 15 (E.D.N.Y.) (governing all discovery, no further dissemination except to authorized recipients who sign protective order, prohibition of dissemination to media, and requiring notification of violation of terms, among other terms); United States v. Ng, No. 18-CR-538 (MKB), ECF No. 26 (E.D.N.Y.) (governing all discovery, expressly limiting use to defense of charges in case, no further dissemination except to authorized recipients who sign protective order, and prohibiting dissemination to media, among other terms); United States v. Bazzi, et al., No. 23-CR-41 (DLI), ECF No. 12 (E.D.N.Y.) (governing all discovery, expressly limiting use to defense of charges in case, no further dissemination except to authorized recipients who sign protective order, and prohibiting dissemination to media, among other terms); United States v. Gray, No. 23-CR-118 (BMC), ECF No. 18 (E.D.N.Y.) (governing all discovery, expressly limiting use to defense of charges in case, no further dissemination except to authorized recipients who sign protective order, and prohibiting dissemination to media, among other terms); United States v. Hashimi, No. 22-CR-553 (ENV), ECF No. 33 (E.D.N.Y.) (governing all discovery, no further dissemination except to authorized recipients who sign protective order, and prohibiting dissemination to media, among other terms).

the defendants subject to the Protective Order.[6]  Thus, the Supplemental Protective Order will in practice govern the government's production of 3500 Material.  As the government detailed in its motions in limine, the 3500 Material in this case concerns, among other things, statements pertaining to witnesses' past traumatic experiences and sexual histories, both before and during their participation in OneTaste, as well as their financial and familial circumstances, and public disclosure of those circumstances could result in harassment, adverse employment consequences, strained relationships and re-traumatization.  Some of the 3500 Material pertains to witnesses whom the government anticipates compelling to testify at trial.  Those individuals' privacy interests alone would justify entry of the Supplemental Protective Order.  See, e.g., United States v. Maxwell, 20-CR-330 (AJN), ECF No. 37 (entering protective orders based on "strong and specific interest in protecting the privacy of alleged victims and witnesses in this case" and citing precedent); 18 U.S.C. § 3771 (requiring district court to implement procedures to ensure that crime victims are accorded, among other rights, "[t]he right to be reasonably protected from the accused," and the right "to be treated with fairness and with respect for the victim's dignity *and privacy*" (emphasis added)).

However, here, in light of OneTaste's history of harassing conduct against potential government witnesses, and the defendants' sharing of material with OneTaste, there is a specific and significant risk that civilian and victim witnesses who may testify against the defendants may be subject to harassment or worse.[7]  Indeed, defense counsel have indicated to the government that they intend to share 3500 Material with individuals employed by OneTaste (or its related entities)—the same entity that hired a purported investigator who subsequently publicly harassed multiple anticipated government witnesses.  See, e.g., United States v. Basciano, 03-CR-929 (NGG), Dkt. No. 602 (E.D.N.Y. June 30, 2006) (reaffirming prior protective order in light of, among other things, the "widespread distribution of 3500 material" to members of the there-applicable conspiracy "in a prior related case").  The government anticipates that it will establish at trial that such public shaming and humiliation is only an extension of the conduct the witnesses endured during their participation in OneTaste, when OneTaste executives similarly used personal and sensitive information that the witnesses disclosed to cause the witnesses serious psychological and financial harm.  The risk of retaliation against or intimidation of these witnesses is significant; accordingly, a more stringent protective order governing the government's 3500 Material is required to ensure that their cooperation with the government's investigation will not subject witnesses to additional harassment that could accompany widespread disclosure of sensitive 3500 Material.  Furthermore, the proposed Supplemental Protective Order will not restrict the defense in any way from using the disclosed materials to develop their defense, particularly as the Supplemental Protective Order expressly permits the defendants to disseminate Sensitive Material produced pursuant to the Supplemental

---

[6]     The government will continue to produce material it obtains in the course of preparing for trial to the defendants in accordance with Fed. R. Crim. P. 16.

[7]     Indeed, several of the government's witnesses have recently expressed fear of legal or other retaliatory action by OneTaste, including in connection with OneTaste's retention of the purported investigator that subsequently published articles seeking to name call and shame these individuals.

Protective Order to persons defense counsel in good faith determine to be potential witnesses (provided that any such individuals have signed the Protective Order).[8]

Thus, the Supplemental Protective Order adequately balances the varied privacy interests of third parties, including potential witnesses, against the defendants' need to prepare a defense. Given the nature of this case, there is good cause for such an order, and the government respectfully requests that the Court enter the Supplemental Protective Order prior to November 14, 2024, so that the government may begin its rolling productions of 3500 Material on that date.[9]

IV. The Court Should Reject the Defendants' Proposed Scheduling Request

The defendants request that the Court adjourn the scheduled trial date absent prompt and immediate disclosure of 3500 Material, or, alternatively, modify its scheduling order to allow for the defense to disclose its witnesses, exhibits, and voir dire questions after the government discloses its exhibits and witnesses, and after the Court rules on the parties' motions in limine. Def. Letter at 4-5. The defendants' request should be denied.

The defendants' request for staggered disclosure of its exhibits and witnesses defeats the purpose of Rule 16(b), which "definitely contemplates reciprocity in the production of evidence that both parties intend to introduce in their case-in-chief at trial." United States v. Hsia, No. 98-CR-0057 (PLF), 2000 WL 195067, at *1 (D.D.C. Jan. 21, 2000); Fed. R. Crim. P. 16(b)(1)(A) (requiring that defendants provide the government with documents and records that the defendants "intend[] to use . . . in the defendant[s'] case-in-chief at trial."). By repeatedly professing ignorance as to the charged conduct—notwithstanding the voluminous disclosures the government has made in discovery and in its detailed court filings—the defendants seek to engage in exactly the kind of "surprise and gamesmanship" the rule was designed to avoid. Hsia, 2000 WL 195067, at *1. Indeed, the government to date has received no Rule 16 material from the defense, even as to its four noticed expert witnesses.

Likewise, the defendants have put forth no reasonable justification for why they are unable to submit voir dire questions prior to the Court issuing rulings on the parties' motions in limine. Indeed, doing so is hardly unusual, and the Court can always modify the voir dire questions in the event that any of the terms or topics included in the parties' proposed voir dire be excluded in their entirety from the trial.

Finally, the government reiterates its request that, to avoid delay during the trial, the Court should set a schedule for disclosure of the statements of any defense witnesses other

---

[8] In the parties' meet-and-confers, defense counsel have suggested that they intend to share 3500 Materials with individuals employed by OneTaste, including potential witnesses who worked at the company alongside the defendants. To the extent defense counsel shares statements of other witnesses produced as 3500 Material, the government intends to seek to cross examine those witnesses regarding the same, in light of the obvious risk that those witnesses will tailor their testimony in an improper way.

[9] As noted above, the government also intends to identify the victim-witnesses listed in its motions in limine upon entry of the Supplemental Protective Order.

than the defendants themselves.  See Fed. R. Crim. P. 26.2.  Provided that the government begins disclosing 18 U.S.C. § 3500 material on November 14, 2024, the government proposes that the Court order that the defense disclose its Rule 26.2 material simultaneously on the same date, or, in the alternative, no later than November 29, 2024.  See United States v. Boustani, No. 18-CR-681 (WFK), ECF No. 120 at 1-2 (E.D.N.Y. July 31, 2019) (ordering simultaneous exchange of Rule 26.2 material).

A firm deadline for the disclosure of Rule 26.2 material is necessary to avoid a significant risk of gamesmanship and delay during trial. The government anticipates that the volume of defense Rule 26.2 material in this case will be substantial.  As just one example, the government is aware that the defendants have subpoenaed for trial testimony Jane Doe 1, whom the government understands authored thousands of emails and communications in the possession of members of the defense team that are potentially discoverable pursuant to Rule 26.2.  See Fed. R. Crim. P. 26.2(a) (requiring disclosure, for witnesses other than the defendant, of "any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony").  Absent a disclosure deadline, following the testimony of every defense witness, the government may require a significant recess to review the defendants' Rule 26.2 productions as to each witness and also to determine whether such productions are deficient, in which case the witness's testimony would be stricken pursuant to the rule.  See Fed. R. Crim. P. 26.2(e) ("If the party who called the witness disobeys an order to produce or deliver a statement, the court must strike the witness's testimony from the record.").  While the government has attempted to meet and confer with the defense to agree to a disclosure deadline for Rule 26.2 material, the defense has not consented to any deadline to date.  The absence of a firm deadline in advance of trial would effectively render the trial unmanageable and decrease the likelihood of completing the trial in the allotted time period.

V.     Conclusion

Accordingly, the government respectfully requests that the Court deny the defendants' requests for additional discovery, implement the Supplemental Protective Order to permit the government to promptly begin its productions of 3500 material, and set a disclosure deadline for the defense to produce Rule 26.2 material no later than November 29, 2024.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/_____
Gillian Kassner
Kayla C. Bensing
Devon Lash
Sean M. Fern
Assistant U.S. Attorneys
(718) 254-7000
