

303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

March 22, 2025

**VIA ELECTRONIC FILING**
Hon. Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *U.S. v. Cherwitz, et al.*, No. 23-CR-146 (DG)

Dear Judge Gujarati:

Consistent with the Fifth and Sixth Amendments, Defendants must be afforded the ability to defend against the government's allegations. These allegations were lifted from a defamatory Netflix film and premised largely on the word of a proven fabricator, the government's Jane Doe 1 - Ayries Blanck. Defendants now seek leave to issue pre-trial subpoenas *duces tecum* to the following entities and/or persons:

(1) Netflix Inc., Sarah Gibson, SJ Gibson Films LLC, Marge's Charges, LLC (collectively "the filmmakers")
(2) Bloomberg L.P. and/or Ellen Huet (collectively "Bloomberg")
(3) Reed Smith LLP

As set out in detail below, Defendants are entitled to documents and communications between government witnesses, FBI investigators or other government personnel and the filmmakers and Bloomberg. This material is necessary to Defendants' defense where a strong factual basis exists to believe that McGinnis (and perhaps other FBI personnel) was involved in the production of the Netflix film. Additionally, it appears that filmmakers were *de facto* government investigators, influencing the stories of film participants turned witnesses and urging their participation in the FBI investigation. In light of this intimate relationship, Defendants should be permitted to seek records and communications (detailed *infra*) between the above-named individuals/entities and government witnesses and FBI personnel. This is particularly so where an alarming pattern of misconduct on the part of FBI agent McGinnis has emerged in these proceedings.

The information contained in this letter is largely a matter of public record. To the extent any information comes specifically from § 3500 material, Defendants seeks leave to



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

redact the information consistent with the protective order proposed by the government and entered by the court over Defendants' objections.

A.   Legal Standard

As an initial matter, the constitution guarantees the Defendants the right to attack the integrity of the investigation that led to the indictment in this case. Indeed, such information constitutes *Brady* material. *See Kyles v. Whitley*, 514 U.S. 419, 448 & 449 n.19 (1995) (stating that various pieces of undisclosed evidence was relevant *Brady* evidence because it would have enabled the defendant to attack the "ostensible integrity of the investigation," including evidence undermining the "process by which the police gathered evidence and assembled the case")*; accord Gumm v. Mitchell*, 775 F.3d 345, 375 (6th Cir. 2014) (quoting *Kyles*); *Guzman v. Secretary, Dept. of Corrections*, 663 F.3d 1336, 1353 & n.20 (11th Cir. 2011) (same);*United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) (same); *United States v. Bagcho*, 151 F. Supp.3d 60, 70-71 (D. D.C. 2015) (same); *see also Lindsey v. King*, 769 F.2d 1034, 1042 (5th Cir.1985) (awarding a new trial after *Brady* evidence "carried within it the potential . . . for the . . . discrediting . . . of the police methods employed in assembling the case").

Rule 17(c) early-return subpoenas serve to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). The Supreme Court's seminal decision in *United States v. Nixon*, 418 U.S. 683, 699-700 (1974), established that early-return subpoenas are appropriate where the moving party demonstrates: (1) relevancy; (2) admissibility; and (3) specificity. Courts in the Second Circuit have consistently applied this test for early-return pretrial subpoenas.  *United States v. Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017) (citing *Nixon*, 418 U.S. at 700)), *overruled on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018); *United States v. Seabrook*, No. 16-CR-467, 2017 WL 4838311, at *1 (S.D.N.Y. Oct. 23, 2017).

Although several district courts in the Second Circuit have held that a Rule 17(c)(1) early-return subpoena cannot be used to obtain evidence or information before trial that *solely* will be used for impeachment at trial,[1] a defendant seeking such impeachment

---

[1] *See, e.g., United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995); *but see United States v. Shinderman*, 432 F. Supp.2d 157, 160 (D. Me. 2006) (disagreeing with *Cherry* and holding that impeachment evidence is subject to a Rule 17(c)(1) early-return subpoena).



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

evidence nevertheless may still subpoena such evidence or information before trial and examine it *after* a witness subject to such impeachment has testified for the prosecution at trial. *See United States v. Cuthbertson,* 630 F. 2d 139, 144 (3d Dist. 1980). In the District Court case *United States v. James,* the court noted.

> Rule 17(c) permits a defendant to subpoena materials that may be used to impeach a witness for the prosecution. *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir.1980) (citing *United States v. Liddy*, 354 F. Supp. 208, 210, 212 (D.D.C.1972) (denying motion to quash Rule 17(c) subpoena for statements in "all documents, notes, tape recordings and writings" in witness' possession that "may be admissible as impeachment evidence"); *United States v. Carter*, 15 F.R.D. 367 (D.D.C.1954)). "However, because such statements ripen into evidentiary material for purposes of impeachment only if and when the witness testifies at trial, impeachment statements, although subject to subpoena under rule 17(c), generally are not subject to production and inspection by the moving party prior to trial." *United States v. Cuthbertson*, 630 F.2d at 144 (citing *United States v. Nixon*, 418 U.S. 683, 701 (1974)). "Statements made by prospective witnesses ... may ripen into evidentiary material for purposes of impeachment ... only if and when[ ] the witness who has made the statement takes the stand and testifies. The defendant only then is entitled to inspect [these] statements...." *United States v. Palermo*, 21 F.R.D. 11, 13 (S.D.N.Y.1957) (citing cases).
>
> The government argues that the Court's ruling in *United States v. Nixon*, 418 U.S. at 701–02, precludes defendants from subpoenaing material for impeachment purposes prior to trial. (Govt's. Motion to Quash at 4). The Court in Nixon pronounced that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Id*. However, courts have held that the *Nixon* test does not apply "where, as here, the district court has modified the subpoena to preclude any pretrial production to or inspection by the moving party." *United States v. Cuthbertson*, 630 F.2d at 145. Indeed, in support of its statement, the *Nixon* court itself cited *United States v. Carter*, 15 F.R.D. at 371, which allowed the defendants to inspect government witnesses' prior statements, obtained by Rule 17(c) subpoena, after those witnesses in fact testified at trial.

*United States v. James*, 2007 WL 914242, at *29 (magistrate judge's report and recommendation), *adopted by Id.* at *2 (district court's order) (E.D.N.Y. Mar. 21, 2007).



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

B.     Rule 17(c) Subpoenas to Filmmakers

As this Court is no doubt aware, Netflix released a film called *Orgasm Inc.: The Story of OneTaste* ("the film"). The film focused largely on Defendants and included interviews with government witnesses or references to government witnesses. It first aired on November 5, 2022.

Much of the video content of the film was obtained from Chris Kosley who stole the video footage from OneTaste; that same stolen video footage was produced to the government in this case.[2] The only scenes alleging any criminality in the film derive from Autymn Blanck reading "journals" purported to have been authored by her sister Ayries and constituting "contemporaneous" accounts of her despair after fleeing OneTaste. We now know that these journals were fabricated for Netflix and *not* contemporaneous accounts of the days following her departure from OneTaste. Autymn was paid $25,000 for this material along with other content that was obtained from a hard-drive that Ayries Blanck gave to her sister.[3] Kosley was also paid for providing the stolen video footage to the filmmakers, the same stolen footage that the government intends to present at the upcoming trial.

Some communications suggest involvement by FBI agents in the production of the film and the filmmakers' role in assisting the FBI investigation of Defendants. Just by way of example, on February 9, 2021, a text message reveals that Kosley messaged Gibson to let her know that the FBI had contacted him. When Kosley expressed concern about speaking with the FBI, Gibson reassured him that there was no harm in speaking to the FBI. It is unclear why Gibson took it upon herself to provide legal advice to Kosley or why she reassured him that there was no harm in speaking to the FBI. One reasonable inference is that the FBI was consulting and collaborating with the Netflix filmmakers.

On February 22, 2021, another participant in the film, Audrey Wright told Chris Kosley that Sarah Gibson wanted to film her [Wright's] end of a conversation with the FBI. [Ex. A] Discovery production reveals that Wright was interviewed by agents McGinnis and Sheehan by telephone on March 15, 2023. The contents of that interview as reflected

---

[2] https://www.nbcnews.com/news/us-news/lawsuit-asks-netflix-release-film-orgasmic-meditation-misappropriated-rcna55379
[3] The full contents of this hard-drive have been concealed from the defense since April 2024 and is the subject of a motion to reconsider this Court's denial of Defendants' motion seeking production of a clone of the hard-drive. [ECF Dkt. No 288 and 295]



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

in a 302 largely mirror Wright's statements as depicted in the film, meaning the film *did* appear to capture Wright's conversations with the agents. Additionally, a scene in the film shows Wright[4] writing the name McGinnis on a piece of paper. Attorneys for Netflix also confirmed in a March 3, 2024 declaration filed in OneTaste Inc's defamation claim against Netflix that Audrey Wright's words in the film were "spoken by Audrey Wright during a phone call with an FBI agent investigating …OneTaste"[ECF Dkt. No. 105 at p.5]



  Defendants previously raised the issue of McGinnis's involvement in the Netflix film almost a year ago. [ECF Dkt. No. 105] The government responded in what has become a predictably dismissive manner, stating unequivocally that McGinnis had "no involvement with the film or any other news or media report about OneTaste." [ECF Dkt. No. 100] With all respect to the prosecutors in this case, defendants do not share their view of McGinnis's veracity. McGinnis is an agent who, *inter alia,* suggested that witnesses disband their email accounts, directed witnesses to evade civil discovery, obtained critical evidence without inventorying it into a chain of custody for months, used a private Gmail account for communications with one or more witnesses, and concealed exculpatory material that would have discredited the Blanck's journals months ago. This is all in addition to his misconduct of directing another witness to provide stolen attorney-client

---

4 [redacted]



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

privileged documents to him on a thumb drive that has since gone missing[5] (material that was never provided to a filter team) and plainly relied on to build a fabricated case against the Defendants.[6] To be clear, this information has only come to light through the investigation of dogged defense counsel – not because *Brady* obligations were adhered to. Defendants will no longer rely on the prosecutor's representations if their source is McGinnis or the Blanck sisters. Defendants are entitled to obtain evidence that would determine whether the Agent McGinnis or the FBI consented to its conversation with Audrey Wright that was depicted in the film. The Rule 17(c) subpoenas would unearth definitive information on this point.

Select email communications reveal that days after the Netflix film premiered, Blanck contacted McGinnis to tell him that OneTaste had sued her for breach of contract. [ECF Dkt. No. 96] Blanck told McGinnis that she had obtained the information from Ellen Huet, the Bloomberg journalist who had written highly negative, and false, articles about OneTaste. McGinnis clearly knew who Huet was. Prior to a meeting with EDNY prosecutors on November 29, 2022, OneTaste counsel was instructed to come prepared to discuss allegations in the media, specifically including Bloomberg and the BBC. It is simply not believable that prosecutors did not discuss the investigation or that the FBI did not collaborate with the filmmakers and journalists.

There is more. On March 9, 2023, Ayries Blanck shared the fabricated type-written journal entries with McGinnis to both his FBI email and his personal Gmail account. At least one of the journal sets was finalized on Autymn Blanck's google drive to which Sarah Gibson had editing privileges. Incredibly, both sets of journals were sent to McGinnis, and he was afforded editing privileges. After receiving the journals sets at his Gmail account, McGinnis shared them to his FBI email account as an editor to the journal sets. To this day, it is unclear who is responsible for removing a heading from Journal Sets 1 "Scene One: Darkness" which is reflected on the type-written version of the document that was

---

[5] The government again asks the Defendants to accept their bald representation that this never happened despite the fact that the witness provided a Declaration swearing it did. Defendants cannot accept the prosecutors' assertion where Defendants have shown that McGinnis had a pattern of obtaining evidence (seemingly without the knowledge of the prosecutors) and kept it in his personal possession without charging it into evidence. *See* [ECF Dkt. No. 295]

[6] Although this Court has largely rejected this assertion, it never held a hearing on the matter. Defendants do not accept the prosecution's factual assertions about what McGinnis did or did not do and neither should this Court given all that has transpired. This Court should conduct a hearing into misconduct as was requested months ago.



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

produced in the civil case but disappeared from the same document produced by the government in the criminal case.

As the foregoing shows, there are strong ties between the filmmakers, government witnesses, and government personnel (agents, prosecutors, or others). Defendants now seek leave to issue Rule 17(c) subpoenas for the following material from the filmmakers.

(1) Any records in filmmakers' possession (including any memoranda; contracts; letters; notes; or emails, texts, and other electronic or written communications between any Netflix employees or independent contractors who worked on Orgasm Inc., including but not limited to Sarah Gibson and Stuart Schwartz, two of the producers) concerning the handwritten or electronic version of Ayries Blanck's purported diary;

(2) any records (as defined above) in the filmmakers' possession concerning the FBI's investigation of OneTaste or the Defendants;

(3) any records (as defined above) in filmmakers possession concerning referrals of people with knowledge about OneTaste or the Defendants to the FBI (referrals made by Netflix employees or independent contractors who worked on the documentary);

(4) any records (as defined above) or unedited video footage in Netflix's possession concerning the on-camera interview of Audrey Wright talking to an unidentified FBI agent (as shown in the documentary);

(5) any records (as defined above) in filmmakers' possession concerning communications between any federal prosecutors working on the investigation of OneTaste or the Defendants and Sarah Gibson, Stuart Schwartz, or any other Netflix employee or independent contractor who worked on the documentary; and

(6) any records (as defined above) or unedited video footage in Netflix's possession concerning the filming of Autymn Blanck (when she read from the purported diary entries)

B.   Rule 17(c) Subpoenas to Bloomberg

Defendants also seek leave to issue subpoenas to Bloomberg for the same reasons



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

identified *supra*.[7] Specifically, Defendants' proposed subpoena to Bloomberg, L.P. (d/b/a Bloomberg Media Group or Bloomberg Businessweek) seeks records of any communications concerning OneTaste between any member of the prosecution team (including prosecutors and law enforcement officers, such as FBI agents) and any employee or independent contractor of Bloomberg, including Ellen Huet, the author of two articles about OneTaste published on www.bloomberg.com in 2018.[8] The second such article indicates such communications occurred.[9]

In addition, the Defendants seek records from Bloomberg concerning the following statements in its original 2018 article:

(1) "[F]ew [former OneTaste] members say they were forced to do something [when] they explicitly refused . . . ."[10]

---

[7] The central allegation in the Bloomberg article was the story of Ayries Blanck. Indeed, in an interview with the government in November 2024 Blanck ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

[8] *See* Ellen Huet, *The Dark Side of the Orgasmic Meditation Company*, https://www.bloomberg.com/news/features/2018-06-18/the-dark-side-of-onetaste-the-orgasmic-meditation-company (June 18, 2018); Ellen Huet, *FBI Is Probing OneTaste, a Sexuality Wellness Company*, https://www.bloomberg.com/news/articles/2018-11-13/fbi-is-probing-onetaste-a-sexuality-wellness-company (Nov. 13, 2018).

[9] As stated in the second article: "In recent months, agents from the New York field office of the FBI have sought out and interviewed multiple people associated with OneTaste, said the people, who asked not to be identified because they are not authorized to speak about the process." Ellen Huet, *FBI Is Probing OneTaste, a Sexuality Wellness Company*, https://www.bloomberg.com/news/articles/2018-11-13/fbi-is-probing-onetaste-a-sexuality-wellness-company (Nov. 13, 2018).

[10] Ellen Huet, *The Dark Side of the Orgasmic Meditation Company*, https://www.bloomberg.com/news/features/2018-06-18/the-dark-side-of-onetaste-the-orgasmic-meditation-company (June 18, 2018).



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

(2) Statements by former OneTaste participants in which they said that they were not forced to stay with OneTaste and, on their own volition, discontinued their association with OneTaste.[11]

C.   Rule 17(c) Subpoenas to Reed Smith

Defendants are also entitled to communications between Ayries Blanck's civil attorneys, Reed Smith, and FBI agents and/or prosecutors. Defendants are aware that such communications exist, in part, because the government is copied on communications between Blanck's prior civil attorneys and because Autymn Blanck's attorney Randy Lopez was in close communication with Agent McGinnis, including emailing with Agent McGinnis about where to send the journals and hard drive on April 11, 2024, informing McGinnis that they were en route and confirming that McGinnis had received the package

---

[11] For instance, the following two passages appear in the original 2018 article:

> "Michal and her parents began to argue more about OneTaste, especially when she told them she'd be marrying a fellow member—the one who'd been helping pay for her classes. Around the same time, Michal's OneTaste life started to break down. ***Her closest co-worker left the company, and Michal began to think of leaving as the right, albeit terrifying, move***. She regularly woke up screaming from nightmares. Eventually, ***Michal persuaded her husband to leave OneTaste with her in September 2015***, shortly after their wedding. . . .
>
> "On top of everything else, fleeing OneTaste can be brutally lonely. Laurie, the nurse, spent months on disability after leaving and moved to Boulder, Colo. She's in the process of divorcing a man she met and married in OneTaste. Tayeb divorced Cherwitz after he left and is trying to rebuild his relationship with his son, who's now 13. "There's just a lot of confusion and pain and anger," he says. "I leveraged myself financially, emotionally. I was married. I was all into this thing. When it doesn't work out, it's devastating.""

*See* Ellen Huet, *The Dark Side of the Orgasmic Meditation Company*, https://www.bloomberg.com/news/features/2018-06-18/the-dark-side-of-onetaste-the-orgasmic-meditation-company (June 18, 2018).



303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

[ECF Dkt. No 296]. Such communications are not privileged and may contain relevant information about the fabricated journals and other evidence.

Notably, since the government conceded that the journals were fabricated, Reed Smith has indicated that it intends to withdraw as Blanck's counsel and counsel for Autymn Blanck has filed a motion to withdraw from the civil litigation.

D.   The Material Sought Is Relevant, Admissible, and Unavailable from Other Sources.

The requested records will be relevant at trial because they likely contain evidence that calls into question the "integrity of the investigation" including by providing information about the interactions between government personnel (like McGinnis), former or current witnesses like Ayries Blanck, her sister Autymn, former OneTaste associates (including Audrey Wright and Chris Kosley) and the filmmakers/Bloomberg journalists. Assuming *arguendo* that this Court were to deem any such records as solely "impeachment" evidence, then this Court still should grant this motion (while limiting the defense's review of the records until after certain witnesses testify, including McGinnis who will be called in Defendants' case in chief since the government has indicated it will not call him.

The requested records will be admissible as substantive evidence at trial because they support the defense's challenge to the "integrity" of the investigation in this case. *See Kyles v. Whitley*, *supra*. At the very least, the records likely will provide a basis to impeach certain witness – a fundamental right which the Defendants possess under the Sixth Amendment's Confrontation Clause.

The requested information is not protected by any journalistic privilege. As an initial matter, the documentary is not "journalism." Instead, the "documentary" was clearly designed to **make** news, not report on news. It was a biased and misleading portrayal of OneTaste – based in significant part on a fictitious diary supposedly written by Ayries Blanck in 2015 but actually written by multiple people (including a filmmaker Gibson) in 2022 – rather than an objective, truthful portrayal of newsworthy events. *See Chevron Corp. v. Berlinger*, 629 F.3d 297, 308 (2d Cir. 2011) ("The privilege is designed to support the press in its valuable public service of seeking out and revealing truthful information."). Even assuming *arguendo* that the film qualifies as "journalism," none of the requested materials fall within any journalistic privilege. Instead, the requested materials concern (1) communications with government officials for the purpose of causing a criminal investigation or prosecution (as opposed to receiving legitimate, confidential journalistic



**Bonjean Law Group, PLLC**

303 Van Brunt Street, 1st Floor
Brooklyn, New York 11231

53 W Jackson Blvd, Suite 315
Chicago, Illinois 60604

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

source material); (2) Gibson's role in the creation of the purported 2015 diary of Ayries Blanck (which, as proved in prior filings, was created several year later – including during the production of the documentary); and (3) the involvement of FBI Agent McGinnis (and any other member of the prosecution team) in the production of the documentary.

Finally, even assuming *arguendo* that any of the requested materials fall within a journalistic privilege concerning confidential source material, the Defendants are entitled to relevant the filmmakers/journalist records under Second Circuit precedent. *See United States v. Cutler*, 6 F.3d 67, 71 (2d Cir.1993) (where a party seeks confidential material from a journalist, disclosure should be ordered upon a clear and specific showing that the information is: (1) highly relevant and material, (2) necessary to the maintenance of the party's legal position, and (3) not obtainable from other available sources); *see also United States v. Treacy,* 639 F.3d 32, 42 (2d Cir. 2011). The Defendants' defense turns in part on the integrity of the government's investigation which was incited and based on the unreliable work of film makers and unethical journalists.

The request is narrowly tailored and does not amount to a "fishing expedition." Instead, it is a targeted request for specific, relevant evidence related to the filmmakers and Bloomberg's involvement with prosecution witnesses and members of the prosecution team.

Lastly, The records have not been produced as pretrial discovery by the prosecution in this case and do not appear to available any other source.

For the foregoing reasons, Defendants should be granted leave to issue pre-trial Rule 17(c) subpoenas.

Respectfully submitted,

/s/JENNIFER BONJEAN
*One of the attorneys for Nicole Daedone*
Bonjean Law Group, PLLC
303 Van Brunt Street, 1st Floor
Brooklyn, NY 11231
718-875-1850